UNITED STATES OF AMERICA
Before The
SECURITIES AND EXCHANGE COMMISSION

ADMINISTRATIVE PROCEEDING
File No. _____

In the Matter Of )
)
Subpoenas Issued Pursuant to )
ROYAL DUTCH/SHELL TRANSPORT )
SECURITIES LITIGATION )
Civ. Action 04-CV-375 (D.N.J.) )
)

RECEIVED
MAY 1 1 2006
OFFICE OF THE SECRETARY

**PETITION FOR REVIEW**

Pursuant to 17 C.F.R. § 201.430, Petitioner Sir Philip B. Watts, by his undersigned counsel, hereby submits his Petition for Review of the April 27, 2006 decision by the Office of the General Counsel (the "General Counsel"). In that decision, the General Counsel declined to authorize testimony requested in validly issued subpoenas, which were directed to the U.S. Securities and Exchange Commission (the "SEC"), pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and individual SEC employees James Murphy, Ron Winfrey, and Roger Schwall (collectively, the "SEC employees"). For the reasons articulated below, Watts requests that the Commission reverse the General Counsel's decision and authorize the depositions. A copy of the General Counsel's decision is attached hereto as Exhibit A. The subpoenas are attached as Exhibit B.

I.   **Background**

Watts served subpoenas for depositions and documents on the SEC and the SEC employees on February 8, 2006. The deposition subpoenas seek testimony pertaining to the following topics: (1) the SEC's interpretation and application of the terms "proved oil and gas

reserves," "reasonable certainty," and "reasonable doubt," as set forth in Regulation S-X, 17 C.F.R. § 210.4-10 ("Rule 4-10") and the Staff Outline;[1] and (2) communications between the SEC and oil and gas industry members and participants concerning these terms in Rule 4-10 and the Staff Outline. (See Ex. B.)

The General Counsel did not immediately issue a decision on whether to allow testimony pursuant to the subpoenas. Rather, over the next several months, counsel for Watts corresponded with the SEC in an effort to reach agreement on the scope of the document subpoenas and promptly responded to the SEC's requests for clarification regarding the deposition subpoenas. (See Ex. C, Letters between the SEC and counsel.)

On April 27, 2006, the General Counsel issued a decision declining to allow testimony by the SEC pursuant to Rule 30(b)(6) or testimony by the SEC employees. (See Ex. A.) The General Counsel articulated three reasons for declining to authorize testimony: (1) the Rule 30(b)(6) deposition subpoena to the SEC is invalid because a non-party federal government agency is not a "person" for the purpose of Federal Rule of Civil Procedure 45 and therefore is not subject to subpoena under that rule (see id. Ex. A at 2-3); (2) the testimony requested pursuant to the subpoenas to the SEC and the SEC employees is protected by the deliberative process privilege (see id. at 3-5); and (3) the testimony constitutes an undue burden for the SEC (see id. at 2, 3). None of these reasons justify a refusal to produce testimony pursuant to validly issued subpoenas. Consequently, the decision of the General Counsel should be reversed.

---

[1] As defined in the subpoenas, the "Staff Outline" refers to the following documents posted on the SEC website, www.sec.gov: (1) *Division of Corporation Finance: Current Accounting and Disclosure Issues* (June 30, 2000); (2) *Current Issues and Rulemaking Projects* (Nov. 14, 2000); and (3) *Division of Corporation Finance: Frequently Requested Accounting and Financial Reporting Interpretations and Guidance* (Mar. 31, 2001), and any subsequent amendments or versions of these documents. All defined terms relating to the subpoenas, if not separately defined in this Petition, are defined in the subpoenas attached as Exhibit B.

## II. Grounds for Review

### A. Rule 45 of the Federal Rules of Civil Procedure Applies To Non-Party Governmental Agencies, Including The SEC.

In its decision, the General Counsel declined to authorize testimony pursuant to Rule 30(b)(6) on the ground that the SEC cannot be subpoenaed under Rule 45. (See Ex. A at 2-3.) The General Counsel's position that the SEC is not a person under Rule 45, and is therefore exempt from responding to a Rule 45 subpoena, is contrary to relevant case law, the premise of the SEC's own regulations, and the plain language of the Federal Rules of Civil Procedure.

First, the District of Columbia Circuit Court of Appeals has acknowledged the SEC's obligation to respond to subpoenas issued pursuant to Rule 45. See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341-42 (D.C. Cir. 1984) (implicitly recognizing that governmental agencies are subject to Rule 45, and remanding case for a determination of whether subpoenas directed to the SEC and CFTC sought privileged documents); see also Linder v. Calero-Portocarrero, 251 F.3d 178, 180 (D.C. Cir. 2001) (explaining that "sovereign immunity does not insulate the federal government from complying with a Rule 45 subpoena").[2]

Second, the SEC's own regulations reflect the SEC's acknowledgement that such subpoenas are valid. See 17 C.F.R. § 200.30-14(f) (2006) (delegating to the General Counsel the authority to "[a]pprove non-expert, non-privileged, factual testimony by present or former staff members . . . when validly subpoenaed; and assert governmental privileges on behalf of the Commission in litigation where the Commission appears as a party or in response to third party

---

[2] Watts is aware of the pending appeal before the District of Columbia Circuit Court of Appeals on the issue of whether a government agency is a "person" that may be served with a subpoena under Rule 45. Yousuf v. Samantar, No. MISC. 05-110 (RBW), 2005 WL 1523385 (D.D.C. May 3, 2005), on appeal, Civil Action No. 05-5197 (D.C. Cir.). Watts believes the Court will confirm the longstanding view that government agencies may be subpoenaed in accordance with Rule 45.

subpoenas").

Finally, the General Counsel's interpretation of Rule 45 is inconsistent with the plain language of Rule 30(b)(6), which states that "[a] party may in the party's notice and in a subpoena name as the deponent a . . . governmental agency . . . ." Fed. R. Civ. P. 30(b)(6).

### B. The Testimony Requested Is Not Covered By The Deliberative Process Privilege.

The General Counsel also declined to authorize testimony by the individual SEC employees, or by the SEC pursuant to Rule 30(b)(6), because the requested testimony is purportedly protected by the deliberative process privilege. (See Ex. A at 2-5.) This position is contrary to the relevant authority and, indeed, to the General Counsel's conduct in this matter.

When asserting the deliberative process privilege, the SEC bears the burden of establishing that the requested information comprises opinions, recommendations and deliberations that are part of a process by which government decisions and policies are formulated. See, e.g., NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975); Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1203-04 (D.C. Cir. 1991). To discharge that burden, the SEC must show that the information was predecisional, or "generated before the adoption of an agency policy," and deliberative, in that it "reflects the give-and-take of the consultative process." Tax Analysts v. I.R.S., 117 F.3d 607, 616 (D.C. Cir. 1997) (emphasis in original).

The testimony Watts seeks—mainly, SEC Staff explanations and interpretations of Rule 4-10 (see Ex. B., Topics 1-4, Rule 30(b)(6) deposition subpoena)—consists of postdecisional information that is not subject to the deliberative process privilege. Further, there is no dispute that the privilege does not apply to third party communications identified in Topics 5-8 of the Rule 30(b)(6) deposition subpoena. This includes communications between the SEC Staff and oil and gas companies, Shell's external auditors, and analysts in the oil and gas industry about

the Staff's interpretation of Rule 4-10. Such communications are neither predecisional nor deliberative, and therefore, fall outside the privilege. The General Counsel recognized this when it authorized the production of documents pursuant to Watts' document subpoena to the SEC on this very topic: comment letters sent to certain oil and gas companies reflecting communications with the SEC Staff. (See Ex. C.) These comment letters evidence written communications between SEC Staff and third parties. Watts is entitled to obtain testimony about these and other communications with third parties on the same issues. This information, undisputedly discoverable when contained in the documents that the SEC produced, is not privileged when it is in the form of testimony.

### C. Permitting The Requested Testimony Would Not Constitute An Undue Burden.

The General Counsel argued that providing the requested testimony would constitute an undue burden. This finding ignores the fact that the categories of testimony that Watts requests are narrow, consisting of nine discrete topics relevant to the underlying class action litigation. (See Ex. B.)

The General Counsel's decision does not take into account that, through correspondence with the SEC, Watts has significantly narrowed the scope of the document requests to accommodate the SEC's stated concerns about the breadth of the subpoenas and the burdensomeness of producing the requested documents. The General Counsel did not choose to adopt a similar approach with respect to the deposition subpoenas to reasonably limit the scope of the requested testimony. (See Ex. C.) In negotiating the scope of the document subpoenas, Watts agreed to limit temporarily the scope of communications to those that took place over the past 10 years rather than the last 30 years, and the scope of third parties to which the requests applied to 25 enumerated entities rather than all entities that communicated with the SEC. (See

Ex. C-2, March 1, 2006 Letter from Joseph I. Goldstein to Kathleen Cody, at 4-5.) Watts made other similar accommodations while reserving his right to obtain all of the requested information at a later date. (See id. at 6 (specifying details about the subject matter of requested testimony); see Ex. C-10, April 6, 2006 Letter from Joseph I. Goldstein to Kathleen Cody at 5 (same); see Ex. C-4, March 21, 2006 Letter from Joseph I. Goldstein to Kathleen Cody, at 3 (same)). As a result of this correspondence, the SEC produced documents and the parties are continuing to discuss the production of additional documents. (See generally Ex. C)

Based on the positive results of the parties' negotiation of the document production, it is likely that the parties could have reached a similar agreement with respect to the scope of responsive deposition testimony. Because the General Counsel characterized the testimony as unduly burdensome, without any supporting explanation, Watts could not make any proposal to address the General Counsel's concerns about the scope of the deposition testimony. Rather than barring all testimony, as the General Counsel has done, the Commission should allow the requested depositions and permit the parties to reach an arrangement concerning the scope of questioning.

It is well-settled that absent extraordinary circumstances, none of which are present here, courts will allow a deposition to proceed. See, e.g., Flanagan v. Wyndham Int'l Inc., 231 F.R.D. 98, 102 (D.D.C. 2005) ("The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances."); see also Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001) (same); Alexander v. FBI, 186 F.R.D. 60, 64 (D.D.C. 1998) (same). In this case, the General Counsel has not suggested how the alleged burden of the depositions requested is in any way extraordinary. Nor has the General Counsel met its burden of establishing that the alleged undue burden of providing testimony for a deposition outweighs

the deponent's need for the information and its relevance. See Flanagan, 231 F.R.D. at 102-103 ("[C]ourts generally employ a balancing test, weighing the burdensomeness to the moving party against the . . . need for and relevance of, the information being sought."); see also Jennings, 201 F.R.D. at 275 ("[C]ourts apply a balancing test weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial"). Instead, the General Counsel articulated a boilerplate response that fails to provide any details explaining why these particular depositions would be particularly burdensome. (See Ex. A at 2-3.) Such conclusory statements are insufficient to establish that the depositions would create an undue burden. See Jennings, 201 F.R.D. at 275 (declining to prohibit a deposition where the party seeking a protective order relied on speculative, conclusory, and non-specific claims).

In contrast, in his communications with the SEC, Watts established in concrete terms why the testimony is relevant. (See, e.g., Ex. C-2, March 1, 2006 Letter from Joseph I. Goldstein to Kathleen Cody.) For example, in counsel's letter to Kathleen Cody dated March 1, 2006, Watts explained with great specificity the relevance of the testimony:

> The SEC's interpretation of its rules, and communications with third parties regarding these interpretations, are at the heart of the allegations in the underlying class action litigation . . . A primary issue in the litigation is whether defendant Royal Dutch Shell's ("Shell") supplemental information on proved oil and gas reserves ("proved reserves"), which Shell disclosed in annual SEC filings, complied with Rule 4-10's definition of proved reserves. . . .
>
> It is [Watts'] position in the class action litigation that this Staff Outline impermissibly modified Rule 4-10 and did not comply with the requirements of the Administrative Procedures Act. In 1998, the SEC hired two petroleum engineers, Messrs. Murphy and Winfrey. Over the last eight years, Messrs. Murphy and Winfrey, as well as Mr. Schwall, communicated interpretations of Rule 4-10 by the SEC staff to members of the oil and gas industry. (internal citation omitted) . . . It is [Watts'] contention that this modification caused Shell to recategorize proved reserves in 2004, which in turn precipitated the underlying class action litigation.

(See id. at 4.)

The SEC comment letters produced by the General Counsel support Watts' defense in the class action that Shell's restatement was caused by CorpFin Staff's changing interpretation and application of Rule 4-10. (See, e.g., Ex. D, April 28, 2006 Letter from Joseph I. Goldstein to David L. Peavler at 4-6 and Exs. 6, 9-10.) Testimony from the SEC and the SEC employees is necessary to establish that the Staff modified Rule 4-10 through the Staff Outline and communications with oil and gas industry participants. (See id.)

The requested deposition testimony is aimed at proving these contentions in the class action litigation. The testimony is necessary, relevant and outweighs any potential burden the SEC faces in making these witnesses available for depositions. The General Counsel's argument that the depositions are unduly burdensome should be rejected.

### III. Conclusion

For the reasons articulated above, Watts respectfully requests that the SEC review and reverse the decision of the General Counsel refusing to permit the testimony of the SEC and the SEC employees pursuant to the deposition subpoenas.

May 11, 2006

Respectfully Submitted,

_____
Joseph I. Goldstein
Andrew J. Morris
Adriaen M. Morse Jr.
Aimée D. Latimer
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202-263-3000
Facsimile: 202-263-3300

*Counsel for Sir Philip B. Watts*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2006, I caused the foregoing Petition for Review and Index of Exhibits to Petition for Review to be served by hand delivery on:

Nancy M. Morris, Esq.
Secretary
United States Securities and Exchange Commission
100 F Street NE
Washington, DC 20549-9612

/s/ Sharan E. Lieberman
Sharan E. Lieberman
Mayer Brown Rowe & Maw LLP
1909 K Street, NW
Washington, D.C. 20006-1101
Email: alatimer@mayerbrownrowe.com