UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In re:

ROYAL DUTCH/SHELL TRANSPORT
SECURITIES LITIGATION

Case No. 1:06-mc-00248
(Kollar-Kotelly, J.)

**MEMORANDUM OF SIR PHILIP B. WATTS IN OPPOSITION TO THE SECURITIES
AND EXCHANGE COMMISSION'S MOTION FOR A STAY**

Sir Philip B. Watts opposes the Securities and Exchange Commission's ("SEC") motion to stay this proceeding. The SEC's motion is a strikingly perfunctory paper that offers literally no justification for the SEC's request. Far from justifying the "extraordinary" remedy of a stay, it does not even bother to cite a single statute or case. It should be summarily denied.

I.     PRELIMINARY STATEMENT

Watts is the former Chairman of the Committee of Managing Directors of Royal Dutch/Shell Transport & Trading, now known as Royal Dutch Shell plc ("Shell"). He is a defendant in a securities class action pending against Shell and others in the United States District Court for the District of New Jersey. The plaintiffs in that litigation allege that Shell fraudulently overstated the volume of its "proved" oil and natural gas reserves by booking reserves that did not comply with SEC regulations. In support of that charge, the plaintiffs rely heavily on the SEC Staff's interpretation of SEC Rule 4-10, which governs reporting of oil and gas reserves. See 17 C.F.R. § 210.4-10. The Staff expressed this interpretation in materials called the "Staff Outline." Although the Staff Outline purported to provide informal guidance, rather than state a rule, the Staff treated the Staff Outline as enforceable law in its own right. See Memorandum in Support of Motion to Compel ("Def. Mem.") at 2-4.

Watts disputes the enforceability of the Staff Outline and plaintiffs' reliance thereon in the underlying class action litigation, in which plaintiffs assert that Shell's proved reserves did not comply with SEC Rule 4-10. In contrast, Watts contends that Shell's proved reserves complied with Rule 4-10, that he reasonably relied on Shell's proved reserves reporting processes, and that he reasonably believed that Shell's proved reserves complied with Rule 4-10. See id.

To advance his defense in the litigation, Watts issued the Rule 45 subpoena that is the sole subject matter of the proceeding in this Court. That subpoena requires the SEC to produce a witness or witnesses for a Rule 30(b)(6) deposition relating to the SEC Staff's informal amendment of Rule 4-10 through the Staff Outline, and the Staff's treatment of the Staff Outline as governing law. (See Def. Mem., Ex. A.)

When Watts served the subpoena for the Rule 30(b)(6) deposition, he also served the SEC with four other subpoenas that are not before this Court: a document subpoena and three subpoenas seeking testimony from specific employees. When the SEC was served with these subpoenas, its General Counsel refused to authorize any testimony. (See Ex. A, April 27, 2006 letter from Richard Humes to Joseph I. Goldstein.) The SEC did produce some documents, but it did not agree to comply with the subpoena duces tecum. Watts then filed the motion in this Court to compel compliance with the subpoena for the Rule 30(b)(6) deposition. Out of an abundance of caution, pursuant to the SEC's Touhy regulations (17 C.F.R. § 201.430), Watts filed a Petition for Review asking the SEC Commissioners to reverse the General Counsel's refusal to authorize compliance with the deposition subpoenas. (See SEC Br., Ex. A.) Such parallel filings are common. See, e.g., Yousuf v. Samantar, 2005 WL 1523385, *1 (D.D.C. May 3, 2005) (addressing motion to compel documents from the State Department and

noting that plaintiff also filed a request for documents pursuant to the State Department's <u>Touhy</u> regulations).

Watts' motion to compel explains in detail the relevance of the information requested in the Rule 30(b)(6) deposition subpoena. Specifically, it is important to Watts' defense to develop information about how the Staff Outline changed the requirements governing the reporting of oil and gas reserves. Evidence that the Staff Outline changed those requirements supports Watts' position that Shell reported its reserves appropriately under the pre-Staff Outline reporting regime, and therefore supports his position that there was no fraud. The basis for the Staff Outline, including the terms it uses, is of central relevance to Watts' defense. Testimony on these topics can be obtained only from the SEC. <u>See</u> Def. Mem. at 5-6.

The SEC's motion to stay does not dispute that Watts properly filed his motion to compel in this Court in accordance with the Federal Rules of Civil Procedure. Instead, the SEC suggests that this matter should be put on hold because the Commissioners' decision on the Rule 30(b)(6) deposition might render this case "moot." But this could happen only if the Commissioners reverse the General Counsel's decision and permit the Rule 30(b)(6) deposition to go forward, and the SEC's motion emphasizes that this is unlikely. The SEC's motion re-asserts the SEC's substantive opposition to the deposition subpoena, contending that the deposition is "unnecessary" and seeks testimony that is categorically "protected by the deliberative process privilege." <u>See</u> SEC Br. at 2.

The SEC also conspicuously fails to say when it will decide whether to provide the testimony that is the subject of the action in this Court. This is especially notable given that the SEC General Counsel's office is responsible for both responding to Watts' Motion to Compel and advising the Commission on the Petition. (<u>See</u> Ex. B, Decl. of Brian Barcikowski at ¶ 3

(explaining that he telephoned the SEC Office of the Secretary regarding the status of the Petition and was informed that the Petition was "under advisement with" the General Counsel's office).) Applicable SEC regulations impose no scheduling requirements on the SEC regarding the review of such petitions, which is discretionary. See 17 C.F.R. § 201.430. In sum, although Watts needs the testimony at issue for his defense in litigation that is moving forward, the SEC seeks a stay that would extend indefinitely.

## II.     ARGUMENT

### The SEC Has Offered Literally No Authority And Made No Showing To Warrant The "Extraordinary" Grant Of A Stay

The SEC's sole rationale is that "Watts is simultaneously seeking the same relief on the same grounds in two forum[s]." (Opp. Br. at 3.) This is factually incorrect and legally irrelevant. It is factually incorrect because the so-called second "forum" is the SEC itself – the same party that is before this Court. This is not a matter where two independent forums are considering the same facts; it is a matter where the party to a Rule 45 subpoena issued from this Court wants more time to decide whether it will comply with the subpoena.

Even if the SEC qualified as a "second forum", the SEC's rationale is legally irrelevant because it has nothing to do with the governing law. A stay is an "extraordinary" and "exceptional" remedy, Judicial Watch, Inc. v. National Energy Policy Dev. Group, 230 F. Supp. 2d 12, 14 (D.D.C. 2002), and as the moving party, the SEC bears the burden to justify this "extraordinary" measure. Id., quoting Summers v. Howard University, Civ. Action No. 02-7069, 2002 WL 31269623, at *1 (D.C. Cir. Oct. 10, 2002) (explaining that the moving party must satisfy "stringent standards" when seeking a stay). But the SEC does nothing to discharge this burden.

Indeed, the SEC's "Statement of Points and Authorities" cites not a single authority. This

failure alone should dictate denial of the motion. The SEC does not, for example, point to any statute indicating that Watts' motion to enforce a subpoena should be stayed so that the SEC can decide whether to comply with it. (The Supreme Court found this absence of statutory authority dispositive in Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 90 (1991), where it rejected a requested stay of federal court litigation pending an "administrative agency" determination because there was no indication that "Congress intended" a stay of the litigation pending a final administrative agency decision.) Nor does the SEC suggest that any other doctrine warrants a stay.

      This failure is not surprising. We are aware of no authority remotely suggesting that federal litigation should be stayed so that the defendant itself – here, the SEC – can decide whether to provide the relief the plaintiff seeks. Even if this were a case where an independent forum – that is, a decision maker other than the SEC itself – also was considering the issue pending before this Court, the SEC could not satisfy the stiff requirements for a stay. Courts in such cases courts reject stay motions absent a special showing not present here. See, e.g., Reiman v. Smith, 12 F.3d 222, 223 (D.C. Cir. 1993) (stating that courts will grant a stay or dismissal of federal court proceedings when there is parallel state court action only under "exceptional" circumstances); Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (ruling that petitioners failed to "justify the court's exercise of such an extraordinary remedy"); Johns v. Rozet, 770 F. Supp. 11, 14 (D.D.C. 1991) (citation omitted) (noting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

      Nor does the SEC suggest that the continuance of this action would present a hardship. By comparison, Watts would be harmed if the Court were to grant the SEC's motion, because

Watts would be precluded indefinitely from pursuing his rights and remedies under the Federal Rules until the SEC decides to address the Petition. In effect, the Court would be giving the SEC the power to delay *ad infinitum* its internal review process, and to avoid having to respond to the current federal action. It would enable the SEC, rather than this Court, to decide whether to comply with this Court's subpoena, and to decide the applicability of the deliberative-process privilege to this matter. The SEC suggests no legal basis for granting it this power.

The SEC's motion also refutes its own assertion that this proceeding might become moot because the SEC might decide to comply with the subpoena. In its motion, the SEC staunchly reasserts the reasons that the Petition should be, and likely will be, denied by the SEC. (Opp. Br. at 2.) (Planned Parenthood of Metro. Washington, D.C., Inc. v. Horner, 694 F. Supp. 970, 970 n.1 (D.D.C. 1986), illustrates the reason why a mootness argument carries no weight when it is unlikely that the petitioner will prevail in the parallel proceeding even where, unlike in this case, two truly independent forums are considering the same facts.) In sum, the SEC seeks to delay this proceeding until it makes its own decision whether to comply with this Court's subpoena, then returns to this Court and begins the process of opposing Watts' motion to compel. That outcome would be unfair and, as indicated by the SEC's failure to make any legal argument at all, contrary to law.

## III.   CONCLUSION

For the foregoing reasons, Watts respectfully requests that the Court deny the SEC's motion for a stay.

Dated:

                                      Respectfully Submitted,

                                      _____

                                      Joseph I. Goldstein
                                      Andrew J. Morris
                                      Adriaen M. Morse Jr.
                                      Aimée D. Latimer
                                      MAYER, BROWN, ROWE & MAW LLP
                                      1909 K Street, N.W.
                                      Washington, DC 20006-1101
                                      Telephone: 202-263-3000
                                      Facsimile: 202-263-3300

                                      *Counsel for Sir Philip B. Watts*

A



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
OFFICE OF THE GENERAL COUNSEL
WASHINGTON, D.C. 20549**

FACSIMILE COVER SHEET

THIS TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR EXEMPT FROM DISCLOSURE. IF THE READER OF THIS NOTICE IS NOT THE INTENDED RECIPIENT OR AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMISSION TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE AND AWAIT INSTRUCTIONS FOR HANDLING THE TRANSMISSION. THANK YOU.

<u>Please deliver immediately</u>                                April 27, 2006

To: Joseph I. Goldstein

Fax: 202-263-5344

From: Kathy Cody

Phone: 202-551-5126

Fax: (202) 772-9263

Total Number of Pages (including cover sheet): 6

Remarks:

If the complete transmission is not received, please call the sender as soon as possible.

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

April 27, 2006

**VIA FACSIMILE AND FEDERAL EXPRESS**

Joseph I. Goldstein, Esq.
Mayer Brown Rowe & Maw, LLP
1909 K Street, N.W.
Washington, D.C. 20006
Facsimile No. (202) 263-5344

    Re: In re Royal Dutch/Shell Transport Securities Litigation, 04-cv-374 (D.N.J.)

Dear Mr. Goldstein:

    I have reviewed the correspondence between you and Kathleen Cody of my staff regarding your request to depose representatives of the Securities and Exchange Commission ("SEC" or "Commission") pursuant to Fed. R. Civ. P. 30(b)(6) and three employees from the SEC's Division of Corporation Finance (Roger Schwall, James Murphy, and Ronald Winfrey).[1] As indicated in Ms. Cody's April 21, 2006 letter to you, your request for testimony was referred to me for a decision on whether that testimony would be authorized in accordance with the SEC's regulations. For the reasons that follow, the Commission objects to those depositions, and we hereby notify you that this testimony is not authorized.

    Pursuant to SEC regulations, SEC staff must receive SEC authorization before they may testify as to matters learned during their Commission employment. The relevant regulation provides:

> Any member, employee or former member or employee who is served with such a subpoena not covered by the exceptions in paragraph (b)(7)(ii) of this section shall promptly advise the General Counsel of the service of such subpoena, the nature of the information or documents sought, and any circumstances which may bear upon the desirability in the public interest of making available such

---

[1] That correspondence includes: letters from Ms. Cody to you dated February 22, 2006, March 3, 2006, March 20, 2006, April 3, 2006, and April 21, 2006; letters from you to Ms. Cody dated March 1, 2006, March 6, 2006, March 16, 2006, March 21, 2006, March 29, 2006, April 6, 2006, April 12, 2006, April 19, 2006, and April 24, 2006; two letters from you to Brian G. Cartwright dated April 21, 2006; and the five subpoenas you served on the SEC that are described above.

Joseph I. Goldstein, Esq.
April 27, 2006
Page Two

>  information or documents. The Commission or the General Counsel, pursuant to
>  delegated authority, shall authorize the disclosure of non-expert, non-privileged, factual
>  staff testimony and the production of non-privileged documents when validly
>  subpoenaed.

17 C.F.R. 200.735-3(b)(7)(iii). Thus, the General Counsel or his delagatee may authorize testimony from the staff only if it is not privileged and validly subpoenaed. The testimony you seek requires disclosure of privileged information. Moreover, testimony is not validly subpoenaed unless all requirements of Rule 45 of the Federal Rules of Civil Procedure are satisfied, including the requirement that the subpoena not cause an undue burden.

**Rule 30(b)(6) Subpoena Regarding Response to Document Request**

You have served a subpoena on the SEC seeking testimony about how the SEC gathered the documents responsive to your document subpoena. As Ms. Cody advised you in her February 22, 2006 letter, that subpoena is not valid because you cannot subpoena a non-party federal government agency to give testimony or produce documents in a civil action because it is not a person as defined by Rule 45 of the Federal Rules of Civil Procedure. *See Yousuf v. Samantar*, 2005 WL 1523385 (D.D.C. May 3, 2005); *United States of America v. Gabelli*, 2005 WL 2375173 (D.D.C. May 3, 2005); *Lerner v. District of Columbia*, 2005 WL 2375175 (D.D.C. Jan. 7, 2005). Moreover, such testimony is unnecessary and consequently unduly burdensome because you have had extensive correspondence with Ms. Cody concerning your document subpoena to the SEC, and Ms. Cody has provided detailed information about the steps the SEC has taken and is continuing to take to respond to the subpoena. Moreover, we will continue to respond to reasonable inquiries regarding the document production.

**Rule 30(b)(6) Subpoena Regarding Rule 4-10**

You have also served a subpoena seeking a deposition from a staff member designated by the SEC regarding internal SEC deliberations relating to Rule 4-10 of Regulation S-X, 17 C.F.R. 210.4-10) (Topics 1-2); internal deliberations relating to documents you refer to as the Staff Outline (Topics 3-4);[2] communications with third parties regarding Rule 4-10 (Topics 5-8); and the subject matter of documents produced in response to another subpoena served in this matter (Topic 9). This subpoena, like your other subpoena to the Commission, is not valid because the

---

[2] You have included the following documents in the definition of "Staff Outline": (a) Division of Corporation Finance: Current Accounting and Disclosure Issues, dated June 30, 2000; (b) Current Issues and Rulemaking Projects, dated November 14, 2000; and (c) Division of Corporation Finance: Frequently Requested Accounting and Financial Reporting Interpretations and Guidance, dated March 31, 2001, and any subsequent amendments or versions of these documents.

Joseph I. Goldstein, Esq.
April 27, 2006
Page Three

SEC is not a person subject to Rule 45.

In any event, the testimony you seek is both privileged and unduly burdensome. First, Topics one through four of your subpoena specifically seek information that is protected by the deliberative process privilege.[3] That privilege protects all agency deliberations that are predecisional. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132 (1975). The privilege applies to deliberations leading up to any decisions made by agency staff, not only to deliberations preceding decisions regarding rules and orders. *See, e.g., Mead Data Central v. United States*, 566 F.2d 242 (D.C. Cir. 1977) (decision regarding agency's position on specific contract negotiation). Testimony regarding the drafting, editing, review, approval, or application of Rule 4-10 and the Staff Outline are protected because those are deliberations that led to decisions regarding what would and would not be included in the rule and other documents. Similarly, testimony regarding contemplated changes or modifications to Rule 4-10 or the Staff Outline would concern deliberations leading to decisions regarding changes or modifications.

You have not provided any information that would suggest that you could overcome the privilege based on a showing of need. Your March 1, 2006 letter to Ms. Cody states that you are seeking discovery from the SEC staff to prove that the Staff Outline and communications between the SEC and third parties impermissibly modified Rule 4-10, causing Shell to recategorize proved reserves in 2004 and precipitating the underlying class action. That statement does no more than establish that the Staff Outline and communications of which Shell was aware may be relevant to your case because Shell may have relied on them.[4] However, staff deliberations that have never been made public or communicated to third parties are not relevant to that issue. Not only were they necessarily irrelevant to any action that Shell took, but preliminary staff views do not reveal any SEC position or practice; the deliberative process privilege protects those views because they do not determine any agency position. *See* 17 C.F.R.

---

[3] The testimony you seek would also reveal information protected by the attorney-client and law enforcement privileges and by the work product doctrine to the extent it involves communications between the staff and the Commission and to the extent it relates to ongoing SEC investigations.

[4] Of course, even their relevance is limited. Staff opinions "do not constitute an official expression of the [SEC's] views." 17 C.F.R. 202.1(d). Similarly, statements of SEC staff are not statements of the SEC, which acts as a collegial body through its Chairman and Commissioners. *See, e.g., SEC v. National Student Mktg Corp.*, 68 F.R.D. 157, 160 (D.D.C. 1975); *Pennzoil Co. v. DOE*, 680 F.2d 156, 161-62 (Temp. Emer. Ct. App. 1982). SEC Rule 4-10 and SFAS 69 say what they say; staff statements and opinions do not change their terms.

Joseph I. Goldstein, Esq.
April 27, 2006
Page Four

202.1(d).[5]

Second, to the extent you are seeking communications between SEC staff and third parties that would not be privileged, you have already obtained all information the SEC has through your document subpoenas, and staff cannot provide any further information about the content of those communications beyond what is in the documents produced. To the extent you seek testimony about why the staff said certain things in those communications or what certain statements mean, that testimony, like the testimony you seek in Topics one through four would be protected by the deliberative process privilege.

Third, with respect to Topic 9, you either have or can receive all documents produced by the SEC in response to the subpoena issued by attorneys for Sir Philip Watts in your class action litigation, and testimony is not necessary to describe those documents.

**Subpoenas to Messrs. Schwall, Murphy, and Winfrey**

With respect to your subpoenas to Messrs. Schwall, Murphy, and Winfrey, they appear to be seeking essentially the same privileged information as you seek through your 30(b)(6) subpoena regarding Rule 4-10.[6] In your March 1, 2006 letter to Ms. Cody, you identified three potential areas of testimony for the three individuals, though you did not limit the proposed testimony to those topics. The topics are: (1) their knowledge of documents produced by the SEC in response to the SEC document subpoena, and their involvement in responding to or drafting these documents, (2) their knowledge of and involvement in the Staff Outline, as defined in categories 3 and 4 of their subpoenas, and (3) any presentations or other communications between them and firms or other individuals in the oil and gas industry concerning the topics identified in categories 5 through 8 or the subpoenas to Messrs. Schwall, Murphy, and Winfrey.[7]

---

[5] Indeed, even courts considering whether an agency action is proper will not look at the types of information you seek. Judicial review of agency action is confined to the existing administrative record. 5 U.S.C. 706 (providing that in reviewing agency action, "the court shall review the whole record or those parts of it cited by a party"); *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *USA Group Loan Servs., Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996).

[6] I have not determined whether these subpoenas were validly issued (apart from the fact that they are unduly burdensome) because such a determination is not necessary here.

[7] These broad categories provide little guidance as to what you would actually ask, but you have declined our request that you put in writing your proposed questions for the witnesses.

Joseph I. Goldstein, Esq.
April 27, 2006
Page Five

    The first two categories appear to seek primarily information protected by the deliberative process privilege. That is, they appear to seek predecisional deliberations regarding communications with third parties and the Staff Outline. While the subpoenaed persons may also have knowledge that is not privileged, that knowledge will not include anything that is not evident from documents, including Rule 4-10, the Staff Outline, and the documents produced by the SEC. The third category also seeks only information from the face of documents produced to – or available to – you or privileged deliberations. As explained above, you have provided no reason for us to believe that you could overcome the deliberative process privilege by showing a sufficient need for the information you seek. Thus, I will not authorize Messrs. Schwall, Murphy, and Winfrey to testify pursuant to the subpoenas you have served on them.

**Conclusion**

    Weighing these facts and given that you have not met the standard provided in 17 C.F.R. 200.735-3(b)(7)(iii), at this time Messrs. Schwall, Murphy, and Winfrey are not authorized to provide deposition testimony in the above-captioned case. In addition, for the same reasons, I will not authorize the testimony you seek in Rule 30(b)(6) depositions.

                                          For the Commission
                                          pursuant to delegated authority,

                                          Richard M. Humes
                                          Associate General Counsel

B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
In re:                              )
                                    )   Case No. 1:06-mc-00248
ROYAL DUTCH/SHELL TRANSPORT         )   (Kollar-Kotelly, J.)
SECURITIES LITIGATION               )
                                    )
_____ )

### DECLARATION OF BRIAN BARCIKOWSKI
### IN SUPPORT OF MEMORANDUM OF SIR PHILIP B. WATTS
### IN OPPOSITION TO THE SECURITIES AND EXCHANGE
### COMMISSION MOTION FOR STAY

I, Brian Barcikowski, hereby declare as follows:

1.   I am a paralegal with the law firm of Mayer, Brown, Rowe & Maw LLP, 1909 K Street, Washington, D.C. 20006.

2.   On May 30, 2006, I telephoned the Office of the Secretary ("Secretary's Office") of the Securities and Exchange Commission ("SEC"). The purpose of my telephone conversation was to determine the status of the Petition for Review ("Petition") of a decision made by the SEC General Counsel. The Petition was filed in the Secretary's Office on behalf of Sir Philip B. Watts on May 11, 2006.

3.   The woman who answered the telephone at the Secretary's Office placed me on hold for a few moments to obtain information about the Petition. When she returned to the telephone, she informed me that the Petition was "under advisement" with the Office of the SEC General Counsel. I asked her when a decision on the Petition might be made. I also asked if there was any schedule or timeline by which the SEC would respond to the Petition. The woman on the telephone told me that she did not have this information.

4.      I telephoned the SEC Secretary's Office on several other occasions to determine the status of the Petition. Each time I spoke with the same woman. During our telephone conversation on May 31, 2006, I asked to speak to someone who might have more information about the Petition and any decisions that might be made by the Commission. I was asked to telephone her later in the day, to give her time to find a contact person for me. When I did call her, I was told that she could not provide me with a contact person because the SEC considers any such contact to be an ex parte communication. I was told to continue telephoning the Secretary's Office periodically to see if a decision had been made by the SEC.

5.      I telephoned the SEC Secretary's Office on June 5, 2006. The woman who answered the telephone told me that the SEC would contact Mr. Watts' attorneys after the Commissioners had made a decision on the Petition.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: June 12, 2006

_____
Brian Barcikowski.

2