UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | : |
| ROYAL DUTCH/SHELL TRANSPORT | : |
| SECURITIES LITIGATION | : Case No.1:06-mc-00248 (Kollar-Kotelly, J.) |
| | : |

## OPPOSITION OF SECURITIES AND EXCHANGE COMMISSION
## TO MOTION OF SIR PHILIP B. WATTS TO COMPEL
## COMPLIANCE WITH RULE 45 SUBPOENA

Philip Watts' motion to compel compliance with a subpoena to the Securities and

Exchange Commission ("SEC" or "Commission") seeking testimony should be denied because

he has not followed the proper means for seeking testimony from the staff of a government

agency. When a litigant is seeking testimony from a government employee, the litigant must rely

on review under the Administrative Procedure Act ("APA") rather than on a motion to compel

pursuant to Rule 45. Here, that means Watts must seek review of the SEC's decision in the court

of appeals pursuant to Section 25(a) of the Securities Exchange Act of 1934 ("Exchange Act"),

15 U.S.C. 78y(a).

Even if review on the merits were appropriate in this Court, review should be of the

SEC's decision, and that decision should be reviewed under the APA standard. *See* 5 U.S.C.

706. The SEC's decision easily satisfies that standard. Indeed, even if *de novo* review were

appropriate, Watts' motion should be denied because he has not provided any justification for

seeking testimony from SEC staff. The information he is seeking is primarily protected by the

deliberative process privilege because he wants to question SEC staff about their deliberations as

they wrote, edited and applied various rules and other documents.[1]  Any non-privileged

information he seeks is available in documents produced by the SEC or from parties in the

underlying litigation.  If depositions like the ones Watts seeks were allowed to proceed, the SEC

and many other governmental agencies would be overwhelmed by the task of having staff who

have no first-hand knowledge of the facts appear at depositions in private actions instead of

conducting the agencies' work.

## BACKGROUND

**A.      Watts' Subpoenas to the SEC and its Staff**

In February 2006, Watts, a defendant in a private securities class action captioned *Royal*

*Dutch/Shell Transport Securities Litigation*, No. 04-cv-374 (D.N.J.), served five subpoenas

seeking information from the Commission.  *See* SEC Exhs. A - E.  He served two subpoenas

directly on the Commission, one seeking documents and the other seeking testimony pursuant to

Rule 30(b)(6) of the Federal Rules of Civil Procedure.  *See* SEC Exhs. A and B.  He also served

subpoenas on three staff members in the SEC's Division of Corporation Finance, Roger Schwall,

James Murphy, and Ronald Winfrey.  *See* SEC Exhs. C - E.  Schwall is the Assistant Director in

the Division's Office of Natural Resources and Food.  Murphy and Winfrey are petroleum

engineers on Schwall's staff.  Each of those subpoenas sought both documents and a deposition.

The document requests to the SEC and to the three individuals are identical.  *See* SEC

Exhs. B - E.  The requested documents include "[a]ll documents concerning the term 'proved oil

---

[1] The SEC's Secretary has executed a declaration stating that the Commission has formally asserted the deliberative process privilege.  SEC Exh. J.

and gas reserves' set forth in Rule 4-10, subsections (a)(2)-(4)"[2] and "[a]ll documents concerning the section entitled 'Definition of Proved Reserves' set forth in the Staff Outline."[3] *Id.*. The document subpoenas also seek all communications between the Commission or its staff and any oil and gas company, including Shell, or anyone with a relationship with the oil and gas industry regarding Rule 4-10, the Staff Outline, or Statement of Financial Accounting Standards No. 69 ("SFAS 69"). *Id.* The subpoenas ask for all responsive documents without any date limitation for most documents. *Id.* Rule 4-10 has been in effect for approximately 30 years.

The Rule 30(b)(6) request, which is the only issue in Watts' motion to compel, lists the topics of inquiry, and those topics closely correspond to the documents sought in the document subpoenas. *See* SEC Exh. A. The list is extremely broad and seeks information about staff deliberations. Among the information he seeks is the following:

> 1. The definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10, subsections (a)(2)-(4), including:
>
>> a. The drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4).
>>
>> b. Any actual or contemplated amendment or modification of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.
>
> . . .
>
> 3. The section entitled "Definition of Proved Reserves" set forth in the Staff

---

[2] Rule 4-10 is an SEC rule codified at Regulation S-X, 17 C.F.R. 210.4-10.

[3] Watts used the term Staff Outline to refer to three documents posted on the SEC website: (1) Division of Corporation Finance: Current Accounting and Disclosure Issues, (2) Current Issues and Rulemaking Projects, and (3) Division of Corporation Finance: Frequently Requested Accounting and Financial Reporting Interpretations and Guidance.

Outline, including:

> a. The drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in the Staff Outline.

> b. Any actual or contemplated amendment or modification of the Staff Outline's definition or interpretation of the term "proved oil and gas reserves."

. . .

5. All communications with any oil and gas company concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

. . .

7. All communications with any analyst, researcher, commentator, professional association, or any other person employed in, associated with, or reporting on the oil and gas industry, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10 (a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

. . .

SEC Exh. A.

The deposition subpoenas to the staff do not identify the scope of the testimony sought from the staff. However, in correspondence with the Commission, Watts' counsel has said the depositions will cover the following areas:

- Their knowledge of documents produced by the SEC in response to the SEC subpoenas, and their involvement in responding to or drafting these documents;

- Their knowledge of and involvement in the Staff Outline, as defined in

4

Categories 3 and 4 of the individual subpoenas [which seek all documents concerning the section of the Staff Outline entitled "Definition of Proved Reserves"];

• Any presentations or other communications between Messrs. Schwall, Murphy, or Winfrey, and firms or other individuals in the oil and gas industry concerning the topics identified in Categories 5 through 8 of the individual subpoenas [which seek all communications with third parties regarding Rule 4-10, the Staff Outline, and SFAS 69].

Declaration of Andrew J. Morris filed with Watts' Motion to Compel ("Morris Decl."), Exh. S at 6. Thus, both the Rule 30(b)(6) subpoena and the individual subpoenas seek information about the staff's interpretation of Rule 4-10 and of the Staff Outline and information about communications with third parties on those subjects.

**B.     The SEC's Response to the Subpoenas and Watts' Administrative Challenge**

After Watts narrowed the scope of documents he seeks from the SEC, the SEC agreed to provide, and has provided or is in the process of providing, most of the documents in the narrowed request – primarily comment letters discussing the provisions in which Watts is interested from the last ten years.[4]    *See* SEC Exhs. F (3/20/06 letter from SEC counsel to Watts' counsel) and G (4/3/06 letter from SEC counsel to Watts' counsel); *see also* Morris Decl., Exh. F.

After Watts had received the comment letters the SEC agreed to provide, he declined to provide any additional information about the scope of the testimony he sought and asked for a final determination as to whether the SEC would provide any testimony pursuant to either the

---

[4] The only group of documents that the SEC is not providing are communications between SEC staff and Shell that pre-date January 1, 1996. The SEC, however, has said it will provide those documents if Watts will pay for the cost of finding those documents. *See* Morris Decl., Exh. F.

Rule 30(b)(6) request or the subpoenas to individuals. *See* Morris Decl., Exh. P at 3; *see also*

SEC Exh. H (4/6/06 letter from Watts' counsel to SEC counsel).

Watts sought such a determination because the SEC's regulations (like regulations of

many other federal agencies) provide procedures that apply when litigants in actions to which the

agency is not a party seek to subpoena information from the agency or its employees. These

regulations are commonly called *Touhy* regulations, named after a case in which the Supreme

Court held that government employees could not be compelled to respond to a subpoena when

the government had a regulation that withdraws from employees the power to respond to the

subpoena. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467-69 (1951). Under the

relevant regulation, if, in litigation to which the Commission is not a party, a Commission

employee receives a subpoena seeking non-public or confidential information, the Office of the

General Counsel, pursuant to delegated authority,[5] considers the subpoena and "authorize[s] the

disclosure of non-expert, non-privileged, factual staff testimony and the production of non-

privileged documents when validly subpoenaed." *See* 17 C.F.R. 200.735-3(b)(7)(iii). If

disclosure is not authorized, the employee must decline to provide the information. 17 C.F.R.

200.735-3(b)(7)(ii).[6] Under the SEC's regulations, actions made pursuant to delegated authority

---

[5] The Commission has delegated to the General Counsel the authority to "[a]pprove non-expert, non-privileged, factual testimony by present or former staff members, and the production of non-privileged documents, when validly subpoenaed; and assert governmental privileges on behalf of the Commission in litigation where the Commission appears as a party or in response to third party subpoenas." 17 C.F.R. 200.30-14(f). This authority has been sub-delegated to the Associate General Counsel for Litigation and Administrative Practice.

[6] Section 735-3(b)(7)(ii), (iii) provides,

(ii) Except where the Commission or the General Counsel, pursuant to delegated authority, has previously granted approval or in relation to a Commission

may be reviewed by the Commission, and seeking review of delegated authority "is a prerequisite to the seeking of judicial review of a final order entered pursuant to such an action." 17 C.F.R 201.430; *see also* 5 U.S.C. 704 ("Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section . . . *unless the agency requires by rule and provides that the action meanwhile is inoperative*, for an appeal to superior agency authority." (emphasis added)). Review of final orders of the Commission is available exclusively in courts of appeals pursuant to Section 25(a) of the Exchange Act, 15 U.S.C. 78y(a).

On April 27, 2006, the Office of the General Counsel, acting pursuant to delegated authority, found that the depositions would not be appropriate under the Commission's rules. *See* Morris Decl., Exh. Q. The decision explained that testimony could not be approved unless it is not privileged and is validly subpoenaed. *See* 17 C.F.R 200.735-3(b)(7)(iii). Moreover, to be validly subpoenaed, the requirements of Rule 45 must be satisfied. *See* Morris Decl., Exh. Q at

---

administrative proceeding or a judicial proceeding in which the Commission, or a present or former Commissioner, or present or former member of the staff, represented by Commission counsel, is a party, any officer, employee or former officer or employee who is served with a subpoena requiring the disclosure of confidential or non-public information or documents shall, unless the Commission or the General Counsel, pursuant to delegated authority, authorizes the disclosure of such information or documents, respectfully decline to disclose the information or produce the documents called for, basing his or her refusal on this paragraph.

(iii) Any member, employee or former member or employee who is served with such a subpoena not covered by the exceptions in paragraph (b)(7)(ii) of this section shall promptly advise the General Counsel of the service of such subpoena, the nature of the information or documents sought, and any circumstances which may bear upon the desirability in the public interest of making available such information or documents. The Commission or the General Counsel, pursuant to delegated authority, shall authorize the disclosure of non-expert, non-privileged, factual staff testimony and the production of non-privileged documents when validly subpoenaed.

7

1-2. The decision found that those requirements were not met for the following reasons:

- The two subpoenas to the SEC are not valid because Rule 45 does not allow subpoenas to non-party federal government agencies. *Id.* at 2.

- The 30(b)(6) subpoena seeking testimony about the document production is unduly burdensome because staff has provided detailed information about the document production and would continue to respond to reasonable inquiries. *Id.* at 2.

- The 30(b)(6) subpoena regarding Rule 4-10 seeks information protected by the deliberative process privilege because it seeks non-public information about communications and deliberations within the SEC. It also creates an undue burden to the extent it seeks information about communications with third-parties because those communications are contained in the documents already produced, and the staff does not have any additional information about the content of communications with third parties. *Id.* at 2-4.

- The subpoenas to individuals, like the 30(b)(6) subpoena regarding Rule 4-10, seek information that is either protected by the deliberative process privilege or unduly burdensome to provide because it is entirely duplicative of the information in the document production. *Id.* at 4-5.

On May 11, 2006, pursuant to 17 C.F.R. 201.430, Watts filed a petition with the SEC seeking review by its Chairman and Commissioners of the above-referenced decision by its Office of General Counsel. *See* SEC Exh. I (Watts' Petition to SEC). The Commission has not yet taken action on that petition.

**C.    Watts' Motion to Compel**

On May 26, 2006, while his petition for review was pending before the Commission, Watts filed his motion to compel with this Court. The motion pertains only to the request under Rule 30(b)(6) for the SEC to designate a staff member to testify. In his motion, Watts makes the same arguments as those advanced in his petition for review pending before the SEC's Chairman and Commissioners.

8

## ARGUMENT

**I.    The Motion to Compel Should Be Denied Because Watts Must Rely on APA Review, Not on a Motion to Compel.**

Watts improperly seeks to compel testimony from Commission staff by bringing a motion to compel pursuant to Rule 45 of the Federal Rules of Civil Procedure in district court.[7] The D.C. Circuit has held that when the government is not a party to the litigation, a litigant seeking testimony from staff in a governmental agency must comply with the agency's *Touhy* regulations and then, if necessary, challenge any agency decision in a proceeding under the APA. *Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996). The Court said, "neither state-court nor Federal Court litigants may obtain a subpoena *ad testificandum* against an employee of a Federal Agency that has enacted a *Touhy* regulation. . . . In that situation, the litigant must proceed under the APA, and the Federal Court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." *Id.* In light of that holding, this Court has denied motions to compel testimony from employees of government agencies and has required the litigants to proceed under the APA." *Truex v. Allstate Ins. Co.*, No. 05-0439, 2006 WL 241228, at *3-4 (D.D.C. Jan. 26, 2006); *Ho v. United States*, 374 F. Supp 2d 82, 83 (D.D.C. 2005); *Lerner v. D.C.*, No. Civ. A. 00-1590, 2005 WL 2375175, at *3 (D.D.C. Jan. 7, 2005). To seek APA review of an SEC decision, Watts must bring an action in the court of appeals pursuant to Section 25(a) of the Exchange Act, 15 U.S.C. 78y(a), because the APA provides that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court

---

[7] We no longer contend that Rule 45 does not authorize subpoenas to the government. *See Yousuf v. Samantar*, No. 05-5197 (D.C. Cir. June 16, 2006).

specified by statute." 5 U.S.C. 703.  Watts must await the Commission's decision on his petition

for review before seeking that review because, as discussed above, the Commission's regulations

require Watts to appeal to the Commission before seeking judicial review.  *See* 5 U.S.C. 704

(requiring review by superior agency authority when required by rule and action is stayed); 17

C.F.R. 201.430(c) (Commission review of action taken pursuant to delegated authority is a

prerequisite to judicial review).[8]

Watts is apparently attempting to avoid the teachings in these cases by seeking to compel

compliance with a request to designate under Rule 30(b)(6) served on the Commission rather

than by seeking to compel compliance with subpoenas served directly on three individuals.

Thus, even though Watts' Rule 30(b)(6) request to the Commission appears to seek exactly the

same testimony Watts is seeking through his subpoenas to three individuals, and would likely

result in testimony from the same individuals, Watts is moving to compel compliance only with

Rule 30(b)(6).[9]

Watts is presumably relying on precedent that says motions to compel compliance by

agencies with subpoenas *duces tecum* can be brought pursuant to Rule 45.  *See Linder v. Calero-*

---

[8]  The D.C. Circuit's decision in *Yousuf* is not to the contrary.  In *Yousuf*, the Court said a letter from counsel for the Department of State was final agency action, but it appears that the government was not contending that the Department of State required an appeal of that decision before judicial review was available.  *Yousuf*, slip op. at 4-5.  The Court said only that it was not necessary to wait for resolution of a document request made pursuant to the Department of State's *Touhy* regulations that was parallel to but separate from the subpoena.  *Id.* at 3, 5.

[9]  Watts, however, has sought a Commission decision applicable to all testimony subpoenas, and has appealed a decision made pursuant to delegated authority without in any meaningful way distinguishing between the subpoenas to the individuals and the subpoena to the Commission.  *See* SEC Exh. I.  Thus, he has implicitly acknowledged that the subpoenas serve identical purposes and can be handled through administrative procedures.

*Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001) (discussing application of Rule 45 to

document subpoena). Watts' motion should be denied because his Rule 30(b)(6) subpoena

should be treated like other subpoenas seeking testimony from employees of government

agencies, not like a document subpoena to an agency. Treating a Rule 30(b)(6) subpoena

differently than a subpoena to an individual employee would lead to the odd result that

subpoenas seeking identical testimony are subject to different procedures and different standards

of review.

Also, allowing agencies to make the initial decision about having employees testify and

then subjecting that decision to APA review is the best means for protecting agencies from the

often heavy burden of having their staff distracted from governmental functions by repeated

demands for testimony. Governmental entities, unlike other types of entities, would easily be

overwhelmed by demands for depositions. Because the government applies statutes, implements

regulations, and develops policies that are subject to litigation, litigants are often anxious to

question agency staff to obtain information that may give them bases for arguing about the proper

application of those statutes, regulations, and policies – or for arguing that other persons subject

to the same statutes, regulations, or policies were or were not acting similarly. Thus, just as

Watts would like to uncover every detail about what staff at the Commission thought about Rule

4-10 and its implementation, other litigants would like to uncover similar details about whatever

statutes, regulations, or policies they happen to be litigating about.

*Touhy* regulations allow agencies to regulate requests for testimony so that they and their

staffs are not unnecessarily diverted from their statutorily mandated functions. *See Boron Oil*

*Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (*Touhy* regulations' purpose is to "conserve

11

governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business"). Agencies can evaluate the need for testimony about the matters they regulate and the burden imposed on the agency by the requests received. If agencies could protect their staff from being subject to testimony only by following Rule 45 and filing a motion to quash every time testimony is sought, agencies would face unnecessarily burdensome procedures.[10] Moreover, agencies will gain no real relief from the burden of providing testimony if, as Watts suggests, government staff must appear and submit themselves to a deposition before a court can make a determination about whether a subpoena is proper. Such a procedure works when subpoenas are to persons with possible first-hand knowledge of the facts underlying the litigation, not where, as here, the litigant is seeking to glean details about how staff (not the Commission) interprets a regulation. Because agencies need to identify and prevent unduly burdensome testimony, parties, like Watts, should not be able to circumvent the procedures applicable to subpoenas to individual government employees seeking testimony by serving a request under Rule 30(b)(6) on the Commission.

Although the D.C. Circuit has not required full APA review when litigants subpoena documents from government agencies, document subpoenas are often more likely to lead to clearly relevant evidence than staff testimony, and production of documents often interferes less with government functions than testimony. In any event, the fact that a Rule 30(b)(6) request, like a document subpoena, can be served directly on an agency provides no principled basis for

---

[10] Also, in cases like this one where the court issuing the subpoena is not the court where the litigation is pending, the agency will likely have more information than the court has about the relevance of the testimony to the underlying litigation.

treating a Rule 30(b)(6) request like a document subpoena. It is the nature of the agency's

decision and decision-making process, not the identity of the person who happens to receive the

subpoena that is relevant. Thus, Watts' motion to compel should be dismissed for failure to

comply with applicable APA procedures.

**I.      Watts Is Not Entitled to any Testimony from Commission Staff.**

        As explained above, a motion to compel asking this Court to make a *de novo* decision

regarding the propriety of testimony is not appropriate here. However, even if it were proper to

address the merits in this Court and before a Commission decision on Watts' petition for review,

review should be under the APA standard of review. *See* 5 U.S.C. 706. Indeed, the D.C. Circuit

has just stated, in the context of a subpoena *duces tecum*, that "an agency's refusal to comply

with a subpoena constitutes 'final agency action . . . ripe for . . . review under the APA.'" *Yousuf*

*v. Samantar*, No. 05-5197 (D.C. Cir. June 16, 2006) (quoting *COMSAT Corp. v. Nat'l Sci.*

*Found.*, 190 F.3d 269, 275 (4th Cir. 1999)); *see also Barnett v. Illinois State Bd. of Illinois*, No.

02 C 2401, 2002 WL 1560013, at *1 (N.D. Ill. July 2, 2002) (considering  motion to compel

30(b)(6) deposition from an agency using an arbitrary and capricious standard).  Nonetheless,

regardless of the applicable standard of review, Watts is not entitled to the testimony he seeks

from Commission staff.  Under Rule 45 of the Federal Rules of Civil Procedure, a court may

quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected

matter and no exception or waiver applies," or "subjects a person to undue burden." Rule

45(c)(3)(A)(iii), (iv).  All the testimony Watts seeks is either privileged or unduly burdensome to

provide, and, consequently, his subpoena should be quashed.

A.     **Much of the Testimony Watts Seeks From the SEC Is Protected by the Deliberative Process Privilege.**

1.     **Watts is seeking predecisional deliberations.**

The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. *NLRB v. Sears,* 421 U.S. 132 (1975). Specifically, three policy purposes consistently have been held to constitute the bases for this privilege: (1) to encourage open, frank discussions within agencies and between agencies on matters of policy; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See, e.g., Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 772-73 (D.C. Cir. 1978) (*en banc*).

Logically flowing from the foregoing policy considerations is the privilege's protection of the "decision-making processes of [and between] government agencies." *Sears*, 421 U.S. at 150. The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Enviro Tech Intem., Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001)).

The discovery Watts seeks would intrude on privileged matters because his requests

specifically seek staff deliberations. Although in his motion, he refers generally to his desire to obtain (1) the definition and interpretation of terms in Rule 4-10 and the Staff Outline and (2) SEC communications with third parties relating to Rule 4-10 and the Staff Outline (Watts Br. at 21-22), the topics listed in the subpoena make clear he is not seeking only established definitions and interpretations. Each "topic of inquiry" in the subpoena regarding definitions and interpretations says that Watts intends to inquire about "[t]he drafting, editing, review, approval or application of the definition or interpretation" of certain terms and about "[a]ny actual or contemplated amendment or modification of the definition or interpretation" of those terms. Morris Decl., Exh. A at 4-5. Also, Watts has never limited his topics regarding communications to the communications themselves or assured that he will not ask about deliberations regarding those communications. *See* Morris Decl., Exh. A at 5-6 & Exh. P at 3; SEC Exh. H at 4-5.[11]

Thus, Watts is necessarily seeking staff deliberations. Because he wants to know how definitions were developed and how the staff decided on certain applications, he is seeking deliberations that precede the decisions about what the definitions and interpretations should be. Similarly, if he wants to know why or how the staff decided to include certain matters in comment letters, he is seeking deliberations that precede the decision of what to include in those comment letters. Watts provides no argument to the contrary.

Watts' primary argument is that the information he is seeking in this case is analogous to

---

[11] If Watts agrees to limit his deposition to interpretations and definitions that the Commission or staff have definitively established and to the substance of communications with third parties, the deliberative process privilege may not be applicable. However, in that case, as discussed below, Watts already has the information he is seeking (in the Staff Outline and documents produced by the SEC), and seeking depositions serves no purpose other than placing an undue burden on the SEC.

the memoranda at issue in *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997), and *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).[12]  That contention is baseless.  Those cases both concerned memoranda issued to provide guidance to staff about the application of laws or regulations and were treated by staff as statements of the agency's legal position; they were not deliberations preceding an agency decision.[13]

    In *Tax Analysts*, the court considered Field Service Advice Memoranda ("FSAs") prepared by the Office of the Chief Counsel for the IRS.  Attorneys prepared FSAs in response to requests from field personnel for legal guidance, usually in connection with a specific taxpayer.  *Id.* at 609.  A primary purpose of FSAs is ensuring that field personnel apply the law correctly and uniformly.  *Id.*  FSAs are not formally binding on field personnel, but they are held in high

----

    [12] Watts also incorrectly claims that the deliberative process privilege ceases to apply once the SEC staff issued the Staff Outline.  Watts Br. at 21, 23-24.  To the contrary, information protected by the deliberative process privilege "remain[s] privileged even after the decision to which it pertain[s] may have been effected, because disclosure at any time could inhibit the flow of advice, including analysis, reports, and expression of opinions within the agency."  *Federal Open Market Committee of the Federal Reserve System v. Merrill*, 443 U.S. 340, 359-60 (1979).

    [13] Watts also contends that courts have allowed deposition testimony regarding staff interpretations and guidelines.  Watts Br. at 25.  However, the two cases he cites are easily distinguishable.  Initially, in both cases, the agency that received the subpoena was the defendant in the case.  Moreover, in one case, *Eugene Burger Management Corp. v. HUD*, 192 F.R.D. 1, 3-4, 9 (D.D.C. 1999), the person from whom a deposition was sought had filed a factual declaration in support of an agency motion, and his testimony was sought on the same matter that was included in the declaration.  The court allowed some inquiry regarding the facts on which a letter was based because the letter explained an agency decision that the plaintiff was challenging.  In the second case, *Doe v. District of Columbia*, 230 F.R.D. 47, 51 (D.D.C. 2005), the court refused to apply the deliberative process privilege in one situation solely because the privilege was not properly asserted.  However, the plaintiff said the testimony he sought was limited to asking the witness to "identify the regulations he or she deals with on a daily basis."  *Id.*  In another situation, the court found simply that any inquiry about policies and practices was limited to inquiries about contracts and agreements and would not extend to any privileged processes, so the inquiries were clearly permissible.  *Id.* at 53.

regard and generally followed. *Id.* The court held that the FSAs were the type of "secret law"
that could not be withheld under the deliberative process privilege because "[t]hey contain the
answers of the national office of the Office of Chief Counsel to legal questions submitted by IRS
and Chief Counsel personnel in the field." *Id.* at 617. The court also stated that the deliberative
process privilege could not apply because the "FSAs are themselves statements of an agency's
legal position and, as such cannot be viewed as predecisional" and the FSAs "do not reflect the
'give and take' that characterizes deliberative materials." *Id.*

In *Coastal States*, the court considered "memoranda from regional counsel to auditors
working in . . . field offices, issued in response to requests for interpretations of regulations
within the context of particular facts encountered while conducting an audit of a firm." 617 F.2d
at 858. The court held these documents did not come within the deliberative process privilege
because they "were not suggestions or recommendations as to what agency policy should be . . . .
There is nothing subjective or personal about the memoranda; they are simply straightforward
explanations of agency regulations in specific factual situations." *Id.* at 868. Also, "these
opinions were routinely used by agency staff as guidance in conducting their audits, and were
retained and referred to as precedent." *Id.* at 869.

Watts' broad subpoena does not limit its scope to such information – and Watts does not
provide any reason to believe any such information exists that has not already been made public.
Instead, his subpoena seeks all deliberations, whether about drafts or reviews, and says nothing at
all about obtaining memoranda or guidelines used by staff to interpret or apply Rule 4-10. While
Watts seems to believe these cases mean he can ask staff for interpretations of Rule 4-10 and the
Staff Outline in depositions, they do not support any such claim. Memoranda that have been

prepared and finalized in an agency process are distinct from the views of individual staff

members, and anything staff says at a deposition about the interpretations that goes beyond what

is in the rule itself, in the Staff Outline, or in the comment letters does not represent an

established interpretation and is not analogous to the memoranda in *Tax Analysts* and *Coastal*

*States*.

      To the extent Watts is not seeking deliberations from his 30(b)(6) request to the

Commission, he is seeking something that it is impossible to provide:  a staff member who can

appear at a deposition and provide agency guidance and interpretation even when the agency has

not developed any such guidance and interpretation.  Watts points out that staff have given

speeches and sent e-mails in which they have provided some explanations of Rule 4-10 and the

Staff Outline, but those communications in no way suggest that the staff are articulating the

agency's interpretation and guidance.  Indeed, any staff who give speeches are required to state

that they are not speaking on behalf of the Commission.[14]  Moreover, the disclosure of some

limited information in a e-mail does not waive the SEC's ability to rely on the deliberative

process privilege.  *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("release of a

document only waives these privileges for the document or information specifically released, and

not for related materials").  The staff's willingness to provide assistance to third parties should

---

[14] Employees giving speeches must make the following disclaimer:

> The Securities and Exchange Commission, as a matter of policy, disclaims
> responsibility for any private publication or statement by any of its employees.
> The views expressed herein are those of the author and do not necessarily reflect
> the views of the Commission or of the author's colleagues upon the staff of the
> Commission.

17 C.F.R. 200.735-4(e)(2)(ii).

not be translated into a broad waiver of privilege, especially because Watts has never indicated or suggested that he was guided or influenced by the e-mails he provides or that they are related to the underlying litigation.

### 2. Watts' need for the information does not outweigh the government's interest.

Watts correctly states that the deliberative process privilege is qualified and consequently can be overcome in some situations. However, Watts' claim that staff testimony would be highly relevant and would provide information that is unavailable from any other source is baseless.

Watts provides two reasons for seeking testimony: (1) "to develop information about how the Staff Outline changed the requirements governing the reporting of oil and gas reserves," and (2) to inquire into differences between the treatment of different companies who had reserves in the same fields. Watts Br. at 5-6. Those reasons do not make internal staff deliberations relevant to the litigation. On the first issue, while the meaning and interpretation of Rule 4-10 and the Staff Outline may be relevant, their meaning and interpretation are not dependent on staff deliberations. Information available to Watts and to Shell will determine the meaning of Rule 4-10 and whether Shell appropriately applied it. On the second issue, Watts similarly does not show why staff deliberations are relevant to the different treatment that different companies received.[15] Even if the differing treatment is relevant, it is the underlying facts and the

---

[15] Of course, he does not clearly identify any differing treatment. Because staff reviewing filings and issuing comment letters review disclosures without investigating underlying facts a comment letter saying a disclosure was appropriate in no way establishes that a company was not engaging in fraud. *See, e.g.*, Section 26 of the Exchange Act, 5 U.S.C. 78z ("No action or failure to act by the Commission . . . in the administration of this title shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein, nor shall such action or failure to act with regard to any statement or report filed with or examined by such authority pursuant to

disclosures the companies made that is relevant, not staff deliberations.

Thus, Watts has not shown that he needs from the SEC anything more than the Staff Outline and the documents that the SEC has already provided in response to Watts' subpoena.

> **3.     The SEC is appropriately asserting the deliberative process privilege before appearing at a deposition.**

Watts also contends that this Court should allow the deposition to proceed before it rules on the privilege issues, but such a procedure is unnecessary here. In this case, Watts' list of topics he seeks to address makes it abundantly clear that he is seeking information protected by the deliberative process privilege. If the SEC staff (not to mention staff of other agencies) were required to appear for deposition every time a litigant in a private action served a subpoena seeking clearly deliberative information and no factual information regarding the underlying litigation, the burden on the SEC would be immense. The SEC should not be required to submit to a frivolous quest for its deliberations when a court can rule without such a procedure. *See Doe v. District of Columbia*, 230 F.R.D. 47, 50 (D.D.C. 2005) (allowing defendant to object to deposition seeking privileged information before deposition occurred). Significantly, the SEC asked Watts to provide the questions he planned to ask, but he refused. *See* Morris Decl., Exh. S at 6. Here, it is clear Watts seeks deliberative materials, and the Court has more than enough information to deny Watts' motion.

> **B.     The Relevance of the Non-Privileged Information Watts Seeks Is So Limited that Requiring the Government to Provide Such Information Is Unduly Burdensome.**

The only non-privileged testimony that Watts seeks is testimony that would state the

---

this title or rules and regulations thereunder, be deemed a finding by such authority that such statement or report is true and accurate on its face or that it is not false or misleading.").

content and circumstances of communications between the SEC (or its staff) and third parties. However, the SEC has informed Watts that its staff does not have any recollection of any communications with third parties other than the communications contained in the documents it has produced. *See* Morris Decl. Exh. Q.[16]  In light of this explanation, Watts' statement that he needs discovery to learn about oral communications does not show any need.[17]  Moreover, Watts has not provided any justification for seeking oral testimony to supplement the documents already produced.[18]  Because information about any deliberations regarding the documents would

_____

[16]  Given that the SEC provided this explanation, it is not clear why Watts repeatedly states that the SEC did not provide an explanation. Similarly, Watts' suggestion that he was willing to discuss the scope of testimony but the SEC did not follow-up is not correct. The SEC did not issue a decision on whether to provide testimony until Watts said he was not going to provide any more information about the scope of the testimony he sought, and at that point he did not suggest any potential narrowing. Morris Decl., Exh. P at 3.

[17]  The cases Watts cites regarding the limits of an undue burden objection are not to the contrary. In two of the three cases, the depositions at issue were of persons with first-hand knowledge of facts relevant to the litigation, and the subpoenaed persons were not employees of government agencies. *See Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98 (D.D.C. 2005) (claim that person had provided all information she had in deposition in related litigation before litigation in which her deposition was being sought was filed was not sufficient basis for quashing subpoena); *Jennings v. Family Management*, 201 F.R.D. 272 (D.D.C. 2001) (allowing depositions of plaintiff and plaintiff's limited guardian who was also her lawyer). In the third case, plaintiffs in a case against the FBI had subpoenaed a former FBI agent who was "of the class of individuals who would likely possess information relevant to this lawsuit," though he had claimed in testimony before Congress that he had no knowledge or information pertaining to the case. The court allowed the plaintiffs to test that claim. *Alexander v. FBI*, 186 F.R.D. 60, 65 (D.D.C. 1998).

[18]  His citation to *In re PE Corp. Securities Litig.*, No. 3:00 CV 705 (D. Conn. April 8, 2005), does not help his case. In that case, plaintiffs in a securities class action sought to depose a government employee, Dr. Collins, who had factual information regarding the accuracy of statements in a registration statement. *Id.* at *2. The court, in allowing testimony, explained:

> Given the undisputed leading role Dr. Collins played in the discussions between the HGP and Celera, the deference shown to him by Drs. Waterston and Varmus when asked about key aspects of the December 29 meeting . . . and his

be privileged, Watts already has all the information he is entitled to obtain.   Oral testimony

would add nothing.

     Watts also ignores a central element of the SEC's objection on the grounds of undue

burden.  The burden on the SEC that would result if it allowed staff to be deposed every time a

litigant made a claim analogous to Watts' claim is great.  SEC regulations and policies are at

issue in countless private actions, and in many of those, one or more of the parties, like Watts,

would be interested in obtaining any information they could from the SEC about the regulations

or policies at issue.  The SEC, like other government agencies, should be protected from that

burden so that it can focus on its statutory duties.  *Cf. Johnson v. Bryco Arms*, 226 F.R.D. 441

(E.D.N.Y. 2005) (quashing subpoenas to ATF personnel where ATF was not a party to the case

and had provided documents from an investigation conducted by ATF that was relevant to case).

Allowing Watts to obtain a deposition would encourage many other litigants to subpoena SEC

employees and would also adversely affect the staff by causing them to believe that their

recollection of all their communications, and possibly related deliberations, were subject to

examination by third parties.

     Thus, the burden on the SEC is far greater than any need Watts has for the information he

seeks.

---

        participation in relevant discussions to which others were not privy, the plaintiffs
        have adequately demonstrated that Dr. Collins's deposition testimony is not in
        fact available through other means.

*Id.* at *5.  Here, in contrast, the comment letters and other documents provided by the SEC do
fully state what Watts could obtain in testimony.

**CONCLUSION**

For the reasons stated herein, Watts' motion to compel should be denied.

Respectfully submitted,

*Kathleen Cody*

MELINDA HARDY
Assistant General Counsel
D.C. Bar # 431906

KATHLEEN CODY
Senior Counsel
D.C. Bar # 412517

Counsel for SEC
100 F Street, N.E.
Washington, D.C. 20549-9612
Tel: 202-551-5126
Fax: 202-772-9263

June 16, 2006

23

## CERTIFICATE OF SERVICE

The undersigned certifies that, on June 16, 2006, I caused this electronically-filed

Opposition of Securities and Exchange Commission to Motion of Sir Philip B. Watts to Compel

Compliance with Rule 45 Subpoena to be served on counsel for Philip Watts via electronic mail:

> Joseph I. Goldstein, Esq.
> Mayer, Brown, Rowe & Maw LLP
> 1909 K Street, N.W.
> Washington, D.C. 20006-1101
> jgoldstein@mayerbrownrowe.com

*Kathleen Cody*
Kathleen Cody
Counsel for SEC


Dated: June 16, 2006