Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

v.

**SUBPOENA IN A CIVIL CASE**

RECEIVED FEB 0 8 2006 OFFICE OF THE SECRETARY

Case Number:[1] 04-374 (JAP)
United States District Court for the District of New Jersey

TO: United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION Mayer Brown Rowe & Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>04/03/2006 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6). These matters are identfied in Attachment A.

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Sir Philip Watts  /s/ signature | DATE<br>Feb 7, 2006 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Joesph I. Goldstein, Esq.    Mayer Brown Rowe & Maw LLP    (202)263-3344<br>1909 K Street, NW<br>Washington, DC 20006 | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.  "Communication(s)" shall refer to any conversation(s), meeting(s), correspondence, electronic mail ("email"), facsimile(s), telephone call(s), and any other form of oral or written communication by which information may be conveyed.

2.  "Concerning" means relating to, referring to, discussing, evidencing, reflecting, pertaining to, describing, constituting, in connection with, or commenting on, in whole or in part. A document that "concerns" a subject need not discuss that subject exclusively; it is enough that the document mentions that subject.

3.  "Documents" are defined to have the same meaning and be equal in scope to the usage of the term in Rule 34(a) of the Federal Rule of Civil Procedure, as well as "writings" as defined by Rule 1001(a) of the Federal Rules of Evidence, and shall include all records and other tangible forms of expression in your actual or constructive possession, custody, or control, including, but not limited to, drafts, encryptions, final or finished versions, originals, copies or annotated copies, backup copies, backup logs, identical copies from different files, however and by whomever created, compiled, produced, sent, received, dated, used, maintained or stored (manually, mechanically, electronically, or otherwise), and including, but not limited to, books, papers, writings, recordings, illustrations, charts, lists, numerical data, encryption keys, decryption keys, graphs, graphics, pictures, symbolic representations, files, notes, transcriptions, offers, solicitations, audio and video recordings, email, email headers, word processor documents, hypertext (text containing HTML, SGML, XHTML, DHTML, XML, or any other text formatting, markup, and/or control tags), website data, database files, electronic

newsletters, computer data, confirmations, reports, presentations, memoranda, opinions, information, packages, journals, ledgers, worksheets, telegrams, telexes, faxes, wire messages, telephone bills, messages, logs, notes or minutes of conversations or meetings, contracts, agreements, proposals, advice, letters of intent, calendars, date books, diaries, schedules, agendas, time tables, itineraries, travel logs, account statements, bank statements, financial analysis, financial and marketing reviews, press releases, news stories, summaries, budgets, invoices, bills, records of billings, wire transfers, drafts of money, records of payment, checks, tape recordings, or information stored on hard disk, diskette, CD-ROM, DVD or other disc, microfilm, magnetic tape, microfiche, any electronic media, any magnetic media, any laser media, or any other storage device.

4.  "KPMG" shall refer to KPMG International and all of its successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on its behalf.

5.  "Oil and gas company" shall refer to any corporation, association or other entity engaged in "oil and gas producing activities" as defined in Rule 4-10(a)(1).

6.  "Person" shall mean any natural person, corporation, firm, partnership, association or other business, governmental or legal entity, and includes anyone acting on behalf of any of the foregoing.

7.  "Proved oil and gas reserves" shall include the terms "proved oil and gas reserves" and "proved reserves" set forth in Rule 4-10(a)(2) and the Staff Outline, "proved developed oil and gas reserves" and "proved developed reserves" set forth in

Rule 4-10(a)(3) and the Staff Outline, and "proved undeveloped oil and gas reserves" and "proved undeveloped reserves" set forth in Rule 4-10(a)(4) and the Staff Outline.

8. "PwC" shall refer to PricewaterhouseCoopers International Limited and all of its successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on its behalf.

9. "Rule 4-10" shall refer to Rule 4-10, Regulation S-X, 17 C.F.R. § 210.4-10, "Financial accounting and reporting for oil and gas producing activities pursuant to the Federal securities laws and the Energy Policy and Conservation Act of 1975."

10. "SEC" shall refer to the United States Securities and Exchange Commission and all of its Commissioners, divisions, groups, committees, officers, directors, employees, agents, staff, and persons acting on its behalf.

11. "SFAS 69" shall refer to Statement of Financial Accounting Standards No. 69, "Disclosures about Oil and Gas Producing Activities."

12. "Shell" shall refer to The Royal Dutch Petroleum Company NV and/or The "Shell" Transport and Trading Company, p.l.c. and all of their successors, predecessors, subsidiaries, related corporations, affiliates, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on their behalf.

13. "Staff Outline" shall refer to the following documents posted on the SEC website, www.sec.gov: (a) "Division of Corporation Finance: Current Accounting and Disclosure Issues," dated June 30, 2000, (b) "Current Issues and Rulemaking Projects," dated November 14, 2000, and (c) "Division of Corporation Finance: Frequently Requested

Accounting and Financial Reporting Interpretations and Guidance," dated March 31, 2001, and any subsequent amendments or versions of these documents.

14. "And" and "or" shall be construed both conjunctively and disjunctively.

15. "Including" shall mean including, but not limited to.

16. The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other, as appropriate in the context.

## TOPICS OF INQUIRY

1. The definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10, subsections (a)(2)-(4), including:

    a. The drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4).

    b. Any actual or contemplated amendment or modification of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

2. The definition or interpretation of the terms "reasonable certainty," "reasonable doubt," and "reasonably certain" set forth in Rule 4-10, subsections (a)(2)-(4), including:

    a. The drafting, editing, review, approval or application of the definition or interpretation of the terms "reasonable certainty," "reasonable doubt," and "reasonably certain" set forth in Rule 4-10(a)(2)-(4).

    b. Any actual or contemplated amendment or modification of the definition or interpretation of the term "reasonable certainty," "reasonable doubt,"

4

and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

3. The section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including:

    a. The drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in the Staff Outline.

    b. Any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the term "proved oil and gas reserves."

4. The section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including:

    a. The drafting, editing, review, approval or application of the definition or interpretation of the terms "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in the Staff Outline.

    b. Any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the terms "reasonable certainty," "reasonable doubt" and "reasonably certain."

5. All communications with any oil and gas company concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

6. All communications with Shell and its external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

7. All communications with any analyst, researcher, commentator, professional association, or any other person employed in, associated with, or reporting on the oil and gas industry, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

8. All communications with members of any law firms, accounting firms, engineering firms, consulting firms, and external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

9. The subject matter of all documents produced by the SEC in response to the subpoena issued by attorneys for Sir Philip Watts in this Action.