

**MAYER
BROWN
ROWE
& MAW**

April 6, 2006

VIA FACSIMILE AND OVERNIGHT MAIL

Kathleen Cody, Esq.
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel (202) 263-3000
Main Fax (202) 263-3300
www.mayerbrownrowe.com

**Joseph I. Goldstein**
Direct Tel (202) 263-3344
Direct Fax (202) 263-5344
jgoldstein@mayerbrownrowe.com

Re:   In re Royal Dutch/Shell Transport Securities
      Litigation, Civil Action No. 04-cv-374 (D.N.J.)

Dear Ms. Cody:

I am writing this letter in response to the production by the U.S. Securities and Exchange Commission ("SEC") received on Tuesday, April 4, 2006, in relation to the subpeonas served on the SEC and three individual SEC Division of Corporation Finance ("CorpFin") employees, Messrs. Schwall, Murphy, and Winfrey.

As we have explained throughout our correspondence regarding our subpoenas to the SEC, the information sought in our subpoenas is relevant to the multi-billion dollar class action in which our client has been named as a defendant. The definitions of the terms "proved oil and gas reserves" and "reasonable certainty" as set forth in SEC Rule 4-10, Regulation S-X, are integral to Shell's recategorization of proved reserves announced on January 9, 2004 and subsequent restatements that precipitated the present litigation. SEC comment letters, notes of meetings and presentations, and other oral and written communications with the oil and gas industry are relevant to the industry's understanding of the definitions in Rule 4-10.

During a telephone conversation with Mr. Morse and Ms Latimer of this office on April 4, you represented that the documents produced to us on that day constitute the SEC's complete production.

## I.   Deficiencies in Production

As you know, in our March 1 and March 21, 2006 letters, we expressly reserved, and continue to reserve, our right to seek all of the documents and testimony described in the subpoenas. However, in an effort to respond to the SEC's objections that the subpoenas were overbroad and unreasonable, we agreed to the SEC's production of documents limited to Categories 5, 6, 7, and 8, constituting communications between the SEC and third parties regarding the definitions of "proved oil and gas reserves" and "reasonable certainty" as set forth in SEC Rule 4-10 and the

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody, Esq.
April 6, 2006
Page 2

SEC Staff Outline (as these terms are defined in the subpoenas). The SEC's production is inadequate.

### A. "Written" Communications

In your March 20 letter, the SEC agreed to "provide written communications, including comment letters, other correspondence, and e-mails between the SEC staff" and Shell, its auditors, or the twenty-five third parties identified in our March 1 letter to you. We did not agree that the SEC could limit communications to "written" communications and not produce any writings reflecting other communications.

Our subpoenas defined the term "communications" as "any conversation(s), meeting(s), correspondence, electronic mail ("email"), facsimile(s), telephone call(s), and any other form of oral or written communication by which information may be conveyed." In our March 21 letter, we took issue with your limitation of communications between the SEC and Shell and its external auditors to the same ten-year period to which we agreed, as an initial matter, to limit our request regarding communications with the identified third parties. We did not agree to a limitation of the definition of the term "communications."

### B. Time Limitation on Communications With Shell

In your March 20 letter you limited production of communications between the SEC and Shell or its external auditors to a ten-year period because a longer period would be "unduly burdensome." In our March 21 letter, we rejected this contention and explained that it is our understanding that CorpFin maintains files organized by the name of the public entity as to which CorpFin Staff reviews filings and issues comment.

It would not be "unduly burdensome" to produce communications between the SEC and Shell or its external auditors from such files since December 27, 1978, the date Rule 4-10 was enacted. We asked that, should CorpFin not maintain its files in such a manner, the SEC inform us of this fact, describe the filing system that is employed, and explain why it would be unduly burdensome to search for documents responsive to Category 6 of the subpoena to the SEC. You have not responded.

We continue to require production of all communications between the SEC and Shell or its external auditors regarding terms contained in SEC Rule 4-10 and the SEC Staff Outline.

### C. Telephone Logs and Notes

It is our understanding that CorpFin maintains detailed logs and notes of telephone conversations and meetings with third parties. No logs or notes reflecting comments by SEC Staff to third parties regarding filings with the SEC were produced. Please either confirm that CorpFin does not maintain such records, or produce all such records concerning Shell, its external auditors, or any of the twenty-five third parties listed in our March 1 letter.

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody, Esq.
April 6, 2006
Page 3

### D. Communications "Between" the SEC and Others

The production fails to comply with the SEC's agreement to produce communications "between" the SEC and other parties as identified in your March 20 letter. Your letter stated that, with respect to comment letters, the SEC would "limit[] our search to our electronic system, and it is possible that some letters were not properly uploaded onto that system." This response is inadequate and incomplete. We understand that CorpFin maintains paper files of its comment letters, responses to comment letters, and other communications in addition to electronic files. Please either advise us that CorpFin does not maintain such files or produce responsive documents contained in those files.

The production included some of the SEC's comment letters but failed to include any responses to those letters or any other communications to the SEC authored by Shell, Shell's external auditors, or the identified third parties. Certain of the SEC's comment letters to Shell and other registrants included in the production reference letters sent by Shell and other registrants to the SEC but the SEC did not produce these letters. For example, an April 15, 2003 letter from Mr. Schwall to the Chief Financial Officer of BP p.l.c. states, "We have reviewed BP p.l.c.'s 3-20-03 letter . . ." but the April 4 production did not include the referenced BP letter.

It is our understanding that, in addition to the paper files of communications maintained by CorpFin Staff, correspondence from registrants related to filings with the SEC must be electronically filed on the non-public section of the SEC's Edgar system as required by Subparts 232.100 and 232.101 of Regulation S-T. Please either confirm that the SEC does not maintain such records electronically and in paper form or produce all responsive documents, both from paper files and the SEC's electronic systems, including the non-public section of Edgar.

### E. Documents in the Possession of SEC Employees

The April 4 production includes presentation slides used by Mr. Murphy at Society of Petroleum Engineers ("SPE") conferences in 2000 and 2002 and certain email communications of Messrs. Schwall, Murphy and Winfrey.[1] In your February 22 letter, the SEC took the position that all documents responsive to our subpoenas in the possession of Messrs. Schwall, Murphy, and Winfrey are SEC documents rather than personal documents. Please confirm that SEC CorpFin employees have searched for responsive documents, whether maintained at home or on SEC premises, and no additional responsive documents exist.

### F. Letter Pertaining to the Gulf of Mexico

We note that CorpFin has made available on its website a "Letter to Companies with Oil and Gas Operations in the Gulf of Mexico", dated April 15, 2004, and authored by Mr. Schwall. We

---

[1] It appears unlikely that not one SEC employee, whether presenting at and/or attending SPE conferences, other conferences, or attending meeting with registrants, made any notes of comments or questions, made drafts of outlines, or generated other similar materials responsive to our subpoenas.

Kathleen Cody, Esq.
April 6, 2006
Page 4

understand that this letter was sent to Shell and other third parties listed in our March 1 letter. However, neither this letter nor any related communications (which pertain to the application of SEC Rule 4-10's "proved reserves" definition) was produced. Please produce this document and any related communications.

### G. The SEC's assertions of privilege

Your April 4 letter stated that, with respect to comment letters included in the production, the SEC "redacted language from a few of the comment letters that is privileged and confidential." Your letter further represented that the redacted language "does not pertain to the topics in which you are interested." As you know, relevance is not a basis for redacting documents under Rule 45. Moreover, comment letters are communications with third parties. Assuming that the redacted information was privileged in the hands of the SEC, any such privilege was consciously waived when the SEC transmitted the information to a third party. Please produce unredacted versions of these documents. Alternatively, please provide a privilege log identifying the redacted communications so that we may determine the basis for your assertions of privilege.

The SEC continues to assert various privileges without identifying specific documents and the privileges asserted as to each document. As we noted in our March 1 and March 21 letters, this is inadequate. Pursuant to Federal Rule 45(d)(2), please produce a privilege log explaining the nature of any privileges the SEC intends to assert as to each responsive document. This log should include the date, author, and recipient of each document withheld, as well as a general statement of the nature of each document and the basis for the privilege on which the document was withheld.

## II.    30(b)(6) Depositions

Our subpoenas to the SEC included Federal Rule 30(b)(6) subpoenas seeking testimony regarding two subjects: (1) the process by which the SEC gathered, collected, and produced documents responsive to the document subpoena and (2) the definition or application of certain terms referenced in SEC Rule 4-10, SFAS 69, and the SEC Staff Outline and all communications with third parties regarding the definition or interpretation of such terms.

We have explained the relevance of this testimony in our March 1 and March 21 letters and repeated it herein. You have not responded to our comments. Please provide a response or, in the alternative, designate a deponent (or deponents) to testify regarding the identified subject matters.

## III.    Individual Depositions

Our subpoenas to Messrs. Schwall, Murphy, and Winfrey sought documents and testimony concerning Rule 4-10, the SEC Staff Outline, and these individuals' communications to the oil and gas industry regarding the application of Rule 4-10 and certain definitions contained therein. Your February 22nd letter cited to the SEC's regulations requiring permission from the General

Kathleen Cody, Esq.
April 6, 2006
Page 5

Counsel for SEC employees to provide testimony and requested more information regarding the scope of each deposition and the relevance of such testimony.

Your April 4 letter accompanying the production requested that, once we have reviewed the produced documents, we submit additional information in support of our request for testimony from the three SEC employees that would be forwarded to the General Counsel along with the information in our March 21 letter in order for the General Counsel to make a decision regarding our request.

We intend to depose Messrs. Schwall, Murphy, and Winfrey on the issues and topics identified in our March 1 and 21 letters. The SEC's production to date has been so inadequate that it is difficult to provide greater specificity than has already been provided as to particular documents or subjects for testimony. However, in addition to the topics we previously identified, we intend to ask these employees about certain of their emails and other communications produced to us on April 4, the SPE conferences at which they communicated their interpretations to oil and gas industry members, including the 2000 and 2002 SPE conferences regarding which the SEC has produced Mr. Murphy's slides, and communications with Shell and other oil and gas companies regarding Rule 4-10 and the SEC Staff Outline.

## IV.   Conclusion

These are serious issues and we expect that the SEC will respond to our subpoenas in good faith and not arbitrarily limit the scope of the requested documents. As we have stated in this letter and our other correspondence, we reserve our rights to enforce production of documents as requested in the subpoenas although we have attempted to reach compromise in order to accommodate some of the objections the SEC has asserted to complying fully with the subpoenas' terms. We would prefer to proceed in a cooperative manner to obtain the relevant documents.

We look forward to receiving responses to the issues we have identified above and the production of additional responsive documents. Please provide a response no later than Monday, April 10, 2006.

Sincerely,

Joseph I. Goldstein

cc:   Andrew J. Morris
      Adriaen M. Morse Jr.
      Aimée D. Latimer