UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| ROYAL DUTCH/SHELL TRANSPORT SECURITIES LITIGATION | ) ) ) ) ) | D.C. M.C. 06-00248 (Kollar-Kotelly, J.) |

**REPLY OF SIR PHILIP B. WATTS IN SUPPORT OF HIS
MOTION TO COMPEL COMPLIANCE BY THE
SECURITIES AND EXCHANGE COMMISSION WITH RULE 45 SUBPOENA**

Joseph. I. Goldstein (D.C. Bar No. 412240)
Andrew J. Morris (D.C. Bar No. 411865)
Adriaen M. Morse, Jr. (D.C. Bar No. 483347)
Aimée D. Latimer (D.C. Bar No. 476693)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1101

*Counsel for Sir Philip B. Watts*

# TABLE OF CONTENTS

**Page**

I.    THE TOUHY ARGUMENT FUNDAMENTALLY MISREADS THE SEC'S
TOUHY REGULATION, THE HOUSEKEEPING STATUTE, AND THE
GOVERNING CASE LAW ............................................................................ 2

    A.    The Sole Issue In This Matter Is A Subpoena For One Rule 30(b)(6)
Deposition Of The SEC Itself ........................................................ 2

    B.    The Touhy Argument Is An Afterthought, Concocted After The D.C.
Circuit Rejected The SEC's Previous Procedural Objection .................. 2

    C.    By Its Plain Language, The SEC's Touhy Regulation Does Not Permit
The SEC To Refuse To Comply With Subpoenas Of The Agency Itself ........... 3

    D.    Touhy And Its Progeny Explain The Distinction, Codified In The SEC
Regulation, Between Subpoenas of Agencies And Subpoenas of
Subordinate Employees ................................................................ 5

        1.    Interpreting the housekeeping statute, Touhy and its progeny
repeatedly emphasize that an agency does not have the authority to
refuse to comply with a subpoena of the agency itself ......................... 5

        2.    The SEC's limited housekeeping authority over subpoenas of
subordinate SEC employees should not be distorted to give the
SEC authority over deposition subpoenas of the agency..................... 9

        3.    The Opposition's parade-of-horribles argument cannot give the
SEC authority not stated in the SEC's Touhy regulation, or even
granted by the housekeeping statute ................................................ 10

II.   THE OPPOSITION FAILS TO JUSTIFY ITS BLANKET ASSERTION OF THE
DELIBERATIVE PROCESS PRIVILEGE................................................................ 10

    A.    This Court Should Review The SEC's Substantive Objections Under The
Rule 45 Standard, Not Under The Deferential APA Standard ...................... 11

    B.    The Opposition Does Not Discharge Its Burden To Show That The
Deliberative-Process Privilege Applies To Any, Much Less To All, Of
The Deposition Topics ................................................................ 12

        1.    The Opposition Misreads The Deposition Notice ................................... 12

        2.    The Opposition Obscures The Prerequisites For The Privilege............... 14

        3.    The Opposition Does Not Support Its Assertion Of The Privilege ......... 15

    C.    The Opposition Fails To Rebut Watts' Contention That, If This Qualified
Privilege Did Apply, The Strong Relevance Of The Information At Issue
Would Override It ........................................................................ 19

    D.    The Privilege Argument Cannot Justify A Categorical Refusal To Appear
For The Deposition ...................................................................... 19

i

## TABLE OF CONTENTS

**Page**

III.    THE SEC FAILS TO ARTICULATE ANY SPECIFIC GROUND FOR ITS
OBJECTION THAT THIS SINGLE DEPOSITION WOULD BE
EXCESSIVELY BURDENSOME ................................................................................ 20

.

Watts' opening Memorandum repeatedly challenged the SEC to provide specifics to support the aggressive, blanket positions it takes. At every turn, the Opposition of the Securities and Exchange Commission To Motion Of Sir Philip B. Watts to Compel Compliance With Rule 45 Subpoena ("Opposition") fails to respond to the challenge. This failure marks each of the Opposition's three parts.

First, the Opposition advances an entirely new procedural objection: that the only permissible means for obtaining testimony from the SEC is through the agency's Touhy regulations rather than through Federal Rule of Civil Procedure 45. Previously, the SEC's only procedural objection had been that that Rule 45 does not apply to the SEC because the government is not a "person;" after the SEC made this objection, however, the District of Columbia Circuit rejected it in Yousuf v. Samantar, No. 05-5197, 2006 WL 1651050, at *8 (D.C. Cir. Jun. 16, 2006).

So the SEC Staff formulated what it calls its "Touhy" argument. But the new objection is misnamed, because it has no basis in the SEC's Touhy regulation. That is why, as we point out below, the Opposition conspicuously avoids discussing the regulation's specific language. In contrast, this Reply embraces that language, because it shows beyond dispute that the SEC does not have the authority to refuse to comply with valid subpoenas issued by this Court. The underlying statute and the long line of Touhy case law unambiguously confirm our point.

Second, the Opposition tries to defend a blanket assertion of the deliberative process privilege. But it provides only a vague, general discussion that is difficult to connect with the specifics of the proposed deposition. This discussion is the antithesis of the specific showing that Rule 45 requires of a party making a privilege objection. As we explain, with specificity, the topics described in the Rule 30(b)(6) notice are not covered by this privilege.

1

Third, the Opposition reasserts the SEC's categorical burdensomeness objection. Our opening Memorandum challenged the SEC to articulate a specific basis for this objection, but the Opposition fails to respond. It discusses the general undesirability of burdening the government, but fails to provide any support for its protest that this deposition is burdensome – much less for the contention that the deposition should be forbidden outright.

## I.     THE **TOUHY** ARGUMENT FUNDAMENTALLY MISREADS THE SEC'S **TOUHY** REGULATION, THE HOUSEKEEPING STATUTE, AND THE GOVERNING CASE LAW

### A.     The Sole Issue In This Matter Is A Subpoena For One Rule 30(b)(6) Deposition Of The SEC Itself

The Opposition begins by blurring the scope of this dispute. It dedicates pages to discussion of subpoenas that are not at issue here, in particular to three subpoenas of specific SEC employees. Opposition ("Opp.") at 2-8. But the only subpoena before this Court is one for the Rule 30(b)(6) deposition of the SEC, and the only procedural issue is whether the SEC can refuse to comply with a valid subpoena issued to it by this Court.

### B.     The **Touhy** Argument Is An Afterthought, Concocted After The D.C. Circuit Rejected The SEC's Previous Procedural Objection

When the SEC wrote to Watts to state its objections to the subpoena for the Rule 30(b)(6) deposition, it objected that the subpoena was invalid on the ground that the SEC is not a "person" under Federal Rule of Civil Procedure 45. See Memorandum of Law of Sir Philip B. Watts in Support of His Motion to Compel Compliance by the Securities and Exchange Commission with Rule 45 Subpoena ("Mem.") Ex. O at 2; see also Mem. Ex. Q at 2-3.[1] Then, on June 16, 2006, in

---

[1]        In a letter to Watts from Kathleen Cody, dated February 22, 2006, the only objections expressed to the Rule 30(b)(6) deposition were that the deposition was invalid because the government is not a "person" under Rule 45 of the Federal Rules of Civil Procedure, that the subpoena was unduly burdensome, and that the information was protected by substantive privileges such as the deliberative process privilege. (See Ex. O at 2.) Similarly, in the other letter that summarized the SEC's objections, the SEC objected to providing testimony on the same grounds, and did not assert an objection on Touhy grounds as to the 30(b)(6) depositions. (See Ex. Q at 2-3.) The section of

2

Yousuf v. Samantar, the D.C. Circuit rejected the "person" argument.[2]  2006 WL 1651050, at *8.

The court explained that Rule 45 is "so simple that it [does] not need any discussion." Id. at *1.

Because the government nonetheless had repeatedly contested the Rule's applicability, the court

criticized what it called "the creativity of the United States when faced with a subpoena duces

tecum issued in a case to which it is not a party." (Id. at *1 (internal quotations and citation

omitted)).

 Yousuf thus eliminated the SEC's only objection to the procedure by which Watts

brought the SEC before this Court.  But the SEC now has come up with a new argument: that the

subpoena has no effect because, all along, Watts should have proceeded under the SEC's Touhy

regulations.  The SEC's contention seems to be that, even though the SEC is subject to subpoena

under Rule 45 (see Yousuf, 2006 WL 1651050, at *8), the SEC's own regulations trump Rule 45

and empower the SEC to refuse to appear.  Opp. at 9-10.  As we now explain, this is just the kind

of "creative" argument to avoid the effect of a plainly stated text that the court criticized in

Yousuf.

### C.    By Its Plain Language, The SEC's Touhy Regulation Does Not Permit The SEC To Refuse To Comply With Subpoenas Of The Agency Itself

 Because the SEC Touhy regulation is the sole basis of this objection, the analysis should

begin with that regulation.  The Opposition, however, never considers the regulation at all,

---

the letter discussing the Rule 30(b)(6) deposition states only that the SEC objected to the deposition on the ground that it was unduly burdensome and that it sought information protected by the deliberative process privilege.  See id.
[2]      Notably, the court's reasoning tracked that advanced in our opening Memorandum, in which we explained why this objection should be rejected.  For example, Yousuf held that the government has been held to be a "person" under the Federal Rules of Civil Procedure under "every Rule thus far litigated." Yousuf, 2006 WL 1651050, at *1; see the same argument in Mem. at 12.  Yousuf also stated that (i) Rules 45 and 30 must be read in pari materia because this reading "aligns the interpretation of Rule 45 with that of every other rule in which the word person means more than simply a natural person" (Yousuf, 2006 WL 1651050, at *7); (ii) the interpretive presumption is inapplicable because the legislative history and context of the Federal Rules interpreting the government as a "person" displaced it (Yousuf, 2006 WL 1651050, at *5); and (iii) the use of "person" to include the government was the most consistent usage of the word (Yousuf, 2006 WL 1651050, at *8 (citing the district court opinion in In re Vioxx Prods. Liab. Litig., MDL 1657, 2006 WL 784878, *4 (E.D.La. March 15, 2006)).  Watts' Memorandum made these same arguments.  See Mem. at 17, n.5; id. at.13-14; id. at 11.

3

tellingly tucking the critical language into a footnote. Opp. at 6 n.6. The Opposition therefore

conspicuously dodges the threshold inquiry raised by the <u>Touhy</u> objection: whether the

regulation, by its terms, limits Rule 45's effectiveness for subpoenas issued to the agency.

The reason for this omission becomes clear as soon as one reads the regulation. It states

that "any <u>officer, employee or former officer or employee</u> who is served with a subpoena

requiring the disclosure of confidential or non-public information or documents shall, unless the

Commission or the General Counsel . . . authorizes the disclosure of such information or

documents, respectfully decline to disclose the information or produce the documents called for."

17 C.F.R. § 200.735-3(b)(7)(ii) (emphasis added).

This regulation does nothing more than, consistent with <u>Touhy</u>, prescribe how SEC

employees should respond to subpoenas directed at them. The regulation indicates that, where

subordinate SEC employees are subpoenaed to disclose "confidential or non-public information

or documents," the SEC reserves for itself the right to make disclosures or assert objections and

privileges with regard to its own information or documents. The regulation decidedly does not

authorize the SEC to refuse to comply with subpoenas directed to <u>the agency itself</u>.

That should end the matter. Like Rule 45, this language is "so simple that it [does] not

need any discussion." <u>Yousuf</u>, 2006 WL 1651050, at *1. Apparently the SEC has thought the

same, since it has never before (based on our research) made this argument. Nonetheless, the

Opposition now tries to distort the regulation to reach for this new authority, by devoting pages

to blurring the distinction between subpoenas of agencies and subpoenas of individuals. We

therefore explain this distinction in more detail. We put the SEC regulation into the context of

the relevant authorizing statute, which is called the housekeeping statute, and of the authorities

that construe that statute, which begin with the Supreme Court's decision in <u>Touhy v. Ragen</u>.

This discussion shows that there is no possible excuse for the Opposition's effort to ignore the difference between subpoenas directed to individual employees and subpoenas to the agency. That difference is the central divide that runs through the Touhy line of cases.

     **D.**    **Touhy And Its Progeny Explain The Distinction, Codified In The SEC Regulation, Between Subpoenas of Agencies And Subpoenas of Subordinate Employees**

        **1.**    **Interpreting the housekeeping statute, Touhy and its progeny repeatedly emphasize that an agency does not have the authority to refuse to comply with a subpoena of the agency itself**

      The distinction between a subpoena of a subordinate agency employee and a subpoena of the agency itself originates in the housekeeping statute, which is the source of authority for the SEC's Touhy regulation. 17 C.F.R § 200.735-3(b)(7)(ii), (iii). The Supreme Court first explained the distinction in Touhy v. Ragen, 340 U.S. 462, 463, 472 (1951), where it interpreted the then-applicable version of the housekeeping statute. That statute authorized agencies "to prescribe regulations, not inconsistent with the law, for the . . . custody, use, and preservation of the records, papers, and property appertaining to it." 5 U.S.C. § 22 (current version at 5 U.S.C. § 301). Touhy involved a regulation that the Department of Justice had promulgated pursuant to the housekeeping statute. Like the SEC regulation at issue in our case, that regulation authorized the Attorney General to make the decision about how a Department of Justice employee, if subpoenaed, would respond. The dispute in Touhy arose when a third party subpoenaed a specific FBI agent, and the Attorney General instructed the agent not to produce the requested records. 340 U.S. at 463-464.

      Touhy therefore addresses the "narrow" circumstance in which a "subordinate" employee is individually subpoenaed and the employee's superior, acting pursuant to a housekeeping regulation, instructs the employee not to produce documents. 340 U.S. at 463, 472. In such a case, Touhy held, the regulation shields the employee from being held in contempt. Id. at 469-

70.  That is, any contempt proceeding would be against the agency itself.  The Supreme Court specifically stated that <u>Touhy</u> "raise[d] no question as to the power of the Attorney General himself to make such a refusal." <u>Id.</u> at 467.  The case merely acknowledged an agency's ability to coordinate its employees' responses to subpoenas by making a "centralizing determination" about those responses. <u>Id.</u> at 468.

Justice Frankfurter wrote separately in order to emphasize this limitation.  340 U.S. at 470 (Frankfurter, J. concurring).  "[T]o avoid future misunderstandings," Justice Frankfurter stressed that the agency power acknowledged in <u>Touhy</u> was limited to subpoenas of subordinates, and stated that "there is not a hint in [relevant authority] that the Government can shut off an appropriate judicial demand for such papers." <u>Id.</u> at 472.  The department itself still could "be reached by legal process." <u>Id.</u>

Justice Frankfurter was prophetic, because agencies soon began "invoking [the housekeeping statute] as a source of authority to withhold information from the public." <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 310 (1979).  As a result, "Congress [became] concerned that the statute had been 'twisted from its original purpose as a 'housekeeping statute' into a claim of authority to keep information from the public." <u>In re Bankers Trust Co.</u>, 61 F.3d 465, 470 (6th Cir. 1995) (citations and internal quotation marks omitted) (cited with approval in <u>Houston Business Journal v. Office of the Comptroller of the Currency</u>, 86 F.3d 1208, 1212 (D.C. Cir. 1996)).  In 1958, "[t]o correct the situation, Congress amended the housekeeping statute by adding the following sentence: This section does not authorize withholding information from the public or limiting the availability of records to the public.  5 U.S.C. § 301." <u>In re Bankers Trust Co.</u>, 61 F.3d at 470.

When the Supreme Court addressed the amended statute, it echoed its earlier <u>Touhy</u>

decision by emphasizing that the statute "merely gives department heads authority to regulate

within their departments the way in which requests for information are to be dealt with – for

example, by centralizing the authority to deal with such requests in the department head."

<u>Chrysler Corp.</u>, 441 U.S. at 310 (quoting H.R. Rep. No. 1461, 85th Cong., 2d Sess., 7 (1958)).

This Circuit has repeatedly made the same point.  <u>See</u>, <u>e.g.</u>, <u>Houston Business Journal</u>, 86 F.3d at

1212 ("[n]either the Federal Housekeeping Statute nor the <u>Touhy</u> decision authorizes a federal

agency to withhold documents from a federal court") (citing <u>Exxon Shipping</u>, 34 F.3d 774, 777-

778 (9th Cir. 1994), and <u>In re Bankers Trust Co.</u>, 61 F.3d at 69-71); <u>In re Comm. For Nuclear</u>

<u>Responsibility</u>, 463 F.2d 788, 793 (D.D.C. 1971) (stating that to remove any "doubt" that courts

can demand the production of evidence from agencies, "Congress amended 5 U.S.C. [§ 301]").

        This Circuit also has repeatedly reaffirmed the <u>Touhy</u> distinction between subpoenas of

agencies and subpoenas of individuals.  For example, in <u>Committee For Nuclear Responsibility,</u>

<u>Inc. v. Seaborg</u>, the court noted again that agency <u>Touhy</u> authority applies only to "subordinate"

officials.  463 F.2d at 793.  The court therefore rejected the same argument that the SEC now –

over thirty years later – makes in our case: that "the court has no judicial authority to require the

production of the documents in possession of an executive department, once the head of the

department filed its claim of privilege." <u>Id.</u> at 792.  The court reminded the government to the

contrary: that the housekeeping statute merely "permit[s] centralization of responsibility in a

department whether to claim a privilege." <u>Id.</u> at 793.  Accordingly, the court held, "the claim of

privilege is one for consideration by the court." <u>Id.</u>; <u>see also</u> <u>Yousuf</u>, 2006 WL 1651050, at *8

(noting that "<u>Touhy</u> assumed that a federal agency could be subject to a third-party subpoena");

<u>Houston Business Journal</u>, 86 F.3d at 1212-13 (the "court cannot enforce a subpoena against an

employee of the federal governmental agency when the agency has validly enacted a [Touhy

regulation]" but "a federal court litigant can seek to obtain the production of documents from a

federal agency by means of a federal subpoena").  For other examples of the numerous decisions

enforcing subpoenas against federal agencies, see Linder v. Calero-Portocarerro, 251 F.3d 178,

180 (D.C. Cir. 2001) (holding that several federal agencies could be compelled to respond to a

subpoena); Northrop Corp. v. McDonnell Douglass Corp., 751 F.2d 395, 399 n.2 (D.C. Cir.

1984) (confirming the court's longstanding power to enforce a subpoena directed to the

Department of Defense and the Department of State); Friedman v. Bache Halsey Stuart Shields,

Inc., 738 F.2d 1336, 1346 (D.C. Cir. 1984) (reversing denial of motion to compel testimony and

documents from the Commodities and Futures Trading Commission and the Securities and

Exchange Commission); Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762, 765,

771 (D.C. Cir. 1965) (reversing district court's determination that a subpoena of documents

directed to a representative of the Attorney General should be quashed); Freeman v. Seligson,

405 F.2d 1326, 1334-35, 1348-49 (D.C. Cir. 1968) (affirming district court's finding that

Secretary of Agriculture could be compelled to appear for an examination and produce

documents pursuant to a subpoena duces tecum).

     The Opposition ignores this abundant authority, just as it ignores the language of the

regulation it purports to rely on.  Instead, it cites a footnote in Houston Business Journal (Opp. at

9), which states that "neither state-court nor Federal Court litigants may obtain a subpoena ad

testificandum against an employee of a federal agency that has enacted a Touhy regulation."

Houston Business Journal, 86 F.3d at 1213 n.4 (emphasis added).  But this sentence, with its

limitation to agency "employee[s]," only reinforces Watts' contention that the SEC's Touhy

regulations apply only to subpoenas of individual employees, not to subpoenas of the agency itself.

This extensive body of Touhy law articulates and explains the precise distinction between agency and individual subpoenas that the SEC embodied in its Touhy regulation. This body of law, which begins with the housekeeping statute itself, also shows that even if the SEC purported to promulgate a regulation that would permit it to refuse depositions naming the agency itself, such a regulation would be invalid. The SEC simply does not have the authority that the Opposition claims.

> **2.    The SEC's limited housekeeping authority over subpoenas of subordinate SEC employees should not be distorted to give the SEC authority over deposition subpoenas of the agency**

The central distinction in the Touhy line of cases is between subpoenas of agencies and subpoenas of individuals. The Opposition proposes to ignore this distinction and introduce a new one: between subpoenas ad testificandum and subpoenas duces tecum. The proposal is somewhat confusing, but it apparently is as follows: Even though the SEC's Touhy regulation provides no authority to refuse to comply with subpoenas of the agency itself (whether for testimony or documents), the SEC's "housekeeping" authority over subpoenas of subordinate individuals should be expanded to encompass subpoenas of the agency itself – but only if the agency subpoena is for testimony. Opp. at 10-11. As the Opposition puts it, a testimonial subpoena of the agency "should be treated like other subpoenas seeking testimony of employees of government agencies, not like a document subpoena to an agency." Opp. at 11 (emphasis added). Under this theory, however, the SEC still would not have authority to refuse to comply with Rule 45 subpoenas if those subpoenas seek documents.

This proposed distinction lacks the slightest basis in the law. The Opposition does not even try to cite authority for it. In fact, the proposal conflicts with the SEC Touhy regulation, the

housekeeping statute, and relevant case law. The SEC's regulation does not distinguish between subpoenas <u>duces tecum</u> and <u>ad testificandum</u>. It does, of course, draw exactly the line that the Opposition wants to ignore – the limitation of the agency's housekeeping authority to subpoenas of individuals. 17 C.F.R. § 200.735-3(b)(7)(ii). Likewise, the housekeeping statute does not remotely suggest that an agency has the authority to refuse to comply with subpoenas of the agency – whether the subpoenas are for testimony or for documents. Nor does the Opposition's novel distinction find a trace of support in the numerous cases enforcing subpoenas against agencies. Quite the opposite. Case after case states, without qualification, that the government itself is subject to subpoena. <u>See</u>, <u>e.g.</u>, <u>Yousuf</u>, 2006 WL 1651050, at *8; <u>Linder</u>, 251 F.3d at 181. At least one case, <u>Exxon Shipping</u>, 34 F.3d at 779 (relied on <u>in Houston Business Journal</u>, 86 F.2d at 1212), specifically compels several federal agencies to comply with subpoenas for testimony. The indisputable point of <u>Touhy</u> and its progeny is that federal agencies, whether responding to subpoenas of documents or testimony, cannot refuse to comply with Rule 45 subpoenas.

### 3.   The Opposition's parade-of-horribles argument cannot give the SEC authority not stated in the SEC's Touhy regulation, or even granted by the housekeeping statute

The SEC Opposition also makes a standard "parade-of-horribles" argument, warning vaguely that, if the Court allows this one deposition, it will open the floodgates and permit a tidal wave of subpoenas to overwhelm the government. <u>See</u> Opp. at 11-13. This argument is misplaced, because a plea for expanded agency authority is properly made to Congress. A parade-of-horribles scenario cannot create agency authority where there simply is none. This argument is no more than another expression of the burdensomeness argument that we address below, in part III.

## II.    THE OPPOSITION FAILS TO JUSTIFY ITS BLANKET ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE

The Opposition has staked out the most aggressive possible position on the deliberative process privilege, seeking to avoid even appearing for a deposition. Such aggressiveness contrasts sharply with the Opposition itself, which is vague in the extreme. This evasiveness is inappropriate when a party is asserting a privilege, because Rule 45 requires that a privilege assertion "be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed. R. Civ. P. 45(d)(2). This burden is even higher where a party seeks to avoid a deposition entirely. For this "extraordinary" relief (see Mem. at 28-29), the SEC must show "that it is impossible for [Watts] to ask the [deponent] a single question that has the reasonable likelihood of leading to the discovery of admissible evidence." U.S. v. Motorola, Inc., No. Civ.A.94-2331 TFH/JMF, 1999 WL 552558, at *2 (D.D.C. May 27, 1999).

As we understand it, the Opposition's basic argument is that the Rule 30(b)(6) deposition notice seeks only two categories of information, and that under the SEC's view of the law, both are entirely privileged. According to the Opposition, the two categories are staff deliberations, which the Opposition never defines, and hypothetical guidance, which the Opposition describes as "agency guidance or interpretation even when the agency has not developed any such guidance and interpretation." Opp. at 18. As we now explain, the Opposition seriously misunderstands both the nature of the Rule 30(b)(6) notice and the narrow scope of the deliberative-process privilege.

### A.    This Court Should Review The SEC's Substantive Objections Under The Rule 45 Standard, Not Under The Deferential APA Standard

First, however, it is necessary to correct the Opposition's contention that this Court should review the SEC's refusal to comply with the subpoena only under the limited "arbitrary

and capricious" standard of review set out in section 706 of the Administrative Procedures Act

("APA"), 5 U.S.C. § 706.  The SEC bases this contention on a reference to the APA in Yousuf,

Opp. at 13 (internal citations omitted), but that reference has nothing to do with the standard for

district court review of Rule 45 subpoenas.  (The reference in Yousuf related to whether the

Department of State's denial of the plaintiff's request for documents constituted a final agency

decision.  Yousuf, 2006 WL 1651050, at *2.)  In fact, Yousuf did not use the APA standard of

review, and the D.C. Circuit has repeatedly rejected the Opposition's argument that a deferential

standard should apply.  See, e.g., Linder, 251 F.3d at 181 (expressly rejecting the argument that

the district court should review agency objections pursuant to section 706 of the APA).  As the

Houston Business Journal court summarized preceding decisions, "this court has held that the

district court owes no deference to the [agency head] in ruling on whether . . . documents are

covered by [a privilege]."  86 F.3d at 1212.  This is because "the ultimate determination of []

privilege remains with the courts."  In re Comm. For Nuclear Responsibility, 463 F.2d at 793;

see also Schreiber v. Society for Savings Bancorp, Inc., 11 F.3d 217, 220 (D.C. Cir. 1993) (cited

with approval in Linder and Houston Business Journal, and explaining that if "the agency fails to

establish the privilege with respect to the subpoenaed material, then the documents must be

produced").  This also is consistent with Federal Rule of Evidence 501 which states that

"privileges of a . . . government . . . shall be governed by the principles of common law as they

may be interpreted by the courts of the United States."  Fed. R. Evid. 501.

**B.      The Opposition Does Not Discharge Its Burden To Show That The Deliberative-Process Privilege Applies To Any, Much Less To All, Of The Deposition Topics**

**1.      The Opposition Misreads The Deposition Notice**

Because the Opposition so thoroughly confuses the subject matter of the proposed

deposition, we first clarify the deposition notice.  That notice identifies the following categories

of information: (1) the "definition or interpretation" of specific terms in SEC Rule 4-10, (2) the "definition or interpretation" of specific terms in the Staff Outline, and (3) communications between the SEC and third parties regarding Rule 4-10 and the Staff Outline. <u>See</u> Mem. at 7, 21-22 and Ex. A thereto.

Contrary to the SEC's characterizations, these topics do not primarily involve deliberations and hypothetical guidance. Sample questions that would be asked at the deposition include the following:

- Questions about the meaning of "frontier areas," a term that the Staff first introduced in the Staff Outline. (<u>See</u> explanation in Mem. at 3.) For example:

  - What is the source of the term "frontier areas?"

  - Has this term been used elsewhere, and if so where?

  - Did the special reporting requirements specific to "frontier areas" exist before the Staff issued the Staff Outline?

  - If so, what was their source?

  - To what companies has the Staff applied this requirement?

  - Why were each of those considered frontier areas?

- Parallel sets of questions addressing other requirements introduced by the Staff Outline, such as the requirement for a "signed sales contract" and for "official government approvals." <u>See</u> Mem. at 3.

- Questions about specific oil and natural gas fields such as Kashagan:

  - Identify the specific facts that supported the decisions of whether the booking of proved reserves at Kashagan by companies including ExxonMobil, Total and Shell complied with Rule 4-10?

  - Why did the SEC Staff withdraw its objections to the booking of proved reserves by other oil and gas companies who booked reserves from Kashagan?

These questions implicate neither the letter nor the spirit of the deliberative-process privilege, as we now explain.

## 2.    The Opposition Obscures The Prerequisites For The Privilege

The Opposition appears to misunderstand the governing law.  It never actually addresses the requirements for the privilege, choosing instead to quote selectively from the Supreme Court's explanation that the privilege's "ultimate purpose" is "to prevent injury to the quality of agency decisions."  Opp. at 14 (quoting NLRB v. Sears, 421 U.S. 132, 151 (1975)).  Based on this background statement, the Opposition contends that the privilege protects all "staff deliberations."  Apparently – it is not clear – the SEC contends that all "staff deliberations" are inherently pre-decisional and therefore privileged.  The SEC also apparently contends (this too is unclear) that virtually all SEC activity constitutes "deliberations," and therefore, by definition, is privileged.  Opp. at 15-16. [3]

This thoroughly muddles the test for the privilege.  As we explained in our opening Memorandum (see citations in Mem. at 20-21), the SEC must establish that the requested information is "predecisional" and "deliberative." [4] Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997).  As we also explained, material is deliberative only if it "reflects the give-and-take of the consultative process."  Mem. at 20 (citation omitted).  The Opposition expands "deliberative" beyond recognition.  Although it never bothers to define the term or identify its requirements, it nonetheless suggests that the term encompasses everything that could be a topic of the deposition.  The Opposition equally obscures the meaning of "pre-decisional."  Again, the

---

[3]    See Opp. Br. at 15 (describing as pre-decisional all "deliberations that precede the decisions about what the definitions and interpretations should be"); Mem. at 3, Ex. Q (April 27, 2006 letter from Richard Humes to Joseph I. Goldstein (asserting the position that the deliberative process privilege "applies to deliberations leading up to any decisions made by agency staff, not only to deliberations preceding decisions regarding rules and orders")).

[4]    The SEC ignores these authorities, which squarely address the loss of pre-decisional status, and contends the opposite: that material cannot lose its protected status even if it becomes the basis of a decision.  The SEC supports this view with some language plucked from Federal Open Market Committee of the Federal Reserve System v. Merrill, 443 U.S. 340 (1979).  See Opp. at 16 n.12.  But this case does nothing to help the SEC; it does not even apply the deliberative process privilege.  It only notes, in deciding the scope of the "privilege for confidential commercial information," a hypothetical scenario in which pre-decisional deliberations do not lose their privileged status because they were not incorporated into the final agency decision.  443 U.S. at 359-360.

Opposition never says a word to define the term or identify what it requires, but still suggests

that all of the information at issue is pre-decisional.

The Opposition also ignores the repeated holdings that pre-decisional information loses

its privileged status if it becomes part of a final agency decision or policy. See citations in Mem.

at 23-24. For example, the Supreme Court held in Sears that, even though recommendations

made by NLRB attorneys initially were pre-decisional, that information lost its privileged status

because it was included in "Advice and Appeals Memoranda" that reflected final decisions by an

NLRB Committee regarding whether to file a complaint. Sears, 421 U.S. at 148. Other

authorities explain that "pre-decisional" information loses its protected status even absent the

"incorporation" found in Sears. Sears was "illustrative, not exhaustive, of the ways in which the

pre-decisional status . . . may be terminated for purposes of the deliberative process privilege."

SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1204 (D.C. Cir. 1991). Accordingly, the D.C.

Circuit has explained that materials lose their pre-decisional status whenever they form part of

the final decision, even if they are not actually incorporated into that decision. See also Coastal

States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) ("Finally, even if the

document is predecisional at the time it is prepared, it can lose that status if it is adopted,

formally or informally, as the agency position on an issue or is used by the agency in its dealings

with the public"); Eugene Burger Mgmt. Corp. v. U.S. HUD, 192 F.R.D. 1, 5 (D.D.C. 1999)

(information loses its pre-decisional status when "it memorializes or evidences the policy the

agency ultimately adopts on an issue or because the agency used the document in its dealings

with the public"). The deliberative-process privilege simply "cannot be used to shield the

reasoning behind a final governmental decision." Motorola, 1999 WL 552558, at *2.

### 3.    The Opposition Does Not Support Its Assertion Of The Privilege

Although the Opposition never acknowledges any particular legal test for the privilege, it

still contends that every deposition question within the scope of the Rule 30(b)(6) notice would be objectionable. (Though at one point the SEC conceded that some unidentified portion of the deposition might be permissible. See, e.g., Mem. at 27 and Ex. Q thereto (discussing Watts' request for testimony regarding communications with third parties)).[5] The Opposition argues that cases such as Tax Analysts and Coastal States are irrelevant because they involve the production of documents, which embodied actual "guidance to staff" (Opp. at 16), rather than testimony, which the Opposition contends inevitably addresses "deliberations preceding an agency decision." Opp. at 16. Apparently, the Opposition contends that the proposed deposition topics seek only information that is "guidance and interpretation even when the agency has not developed any such guidance and interpretation" (Opp. at 18) – that is, Staff views on matters that address decisions that the Commission has not yet made. In support of this contention, the Opposition mischaracterizes the deposition topics as "the views of individual staff members." Opp. at 17-18.

It is precisely the objective of the deposition of the SEC to secure the SEC's evidence as to whether the Staff Outline represented "the views of individual staff members" or, rather, the SEC's guidance and interpretation as to the meaning of Rule 4-10 in a manner, and to obtain this evidence in a form that will allow it to be used in a trial of these issues. As explained in our opening Memorandum (at 3-5), during the same time period that the SEC Staff stated that the Staff Outline is not enforceable law, the Staff also cited the Outline – not Rule 4-10, but the

---

[5]    The SEC responded to this point by arguing in the Opposition that it had produced all documentary evidence of third party communications, and "the staff does not have any additional information about the content of communications with third parties." Opp. at 8. This is incorrect; after filing the Opposition, the SEC produced additional documents evidencing such communications, and Watts has since learned that there are other written communications between the SEC staff and third parties that have not been produced. See Ex. A (June 28, 2006 letter from Aimée D. Latimer to Kathleen Cody, Esq., SEC Assistant General Counsel). These errors describing the relevant material highlight the need for the Court's review of the SEC's objections pursuant to Rule 45. See supra section II.A.

Outline itself – as the source of obligations. The Complaint in the underlying class action likewise cited the Staff Outline as a source of reporting requirements. <u>See</u> Mem. at 3. Testimony about the source of the terms in the Outline and about how the Staff has applied the Outline – that is, about decisions already in the past – is not covered by deliberative process privilege. Watts needs this information so that he can make a record about the status of the Staff Outline and the source of the misconception that it constituted enforceable law and therefore changed the reporting requirements for oil and gas reserves. The SEC is the only possible source for this evidence.[6]

Moreover, the argument that depositions of an agency inherently seek information that is protected by the deliberative-process privilege conflicts sharply with the relevant law, including those authorities cited in our Memorandum that permit exactly such depositions. <u>See</u> Mem. at 25 (discussing <u>Doe v. District of Columbia</u>, 230 F.R.D. 47, 53 (D.D.C. 2005) and <u>Eugene Burger</u>, 192 F.R.D. at 9).

For example, in <u>Eugene Burger</u>, the court ordered a witness from the Department of Housing and Urban Development to answer questions about the interpretation and application of a document made public by the agency, because the document reflected "an explanation of the agency's decision at that point in the process" and "knowing the facts upon which [the decision] was based" would not implicate the privilege. 192 F.R.D. at 9. Likewise, in <u>Doe</u> this Court held that the District of Columbia Child and Family Services Agency could be questioned about

---

[6]       A deposition is necessary – SEC counsel's representations are insufficient. <u>See</u>, <u>e.g.</u>, <u>Investment Co. Institute v. Camp</u>, 401 U.S. 617, 627-28 (1971) ("'The courts may not accept appellate counsel's post hoc rationalizations for agency action . . . . For the courts to substitute their or counsel's discretion for that of the (agency) is incompatible with the orderly functioning of the process of judicial review.'") (citations omitted) (alterations in original).

its application of "policies and practices" to specific matters. 230 F.R.D. at 53.[7]  And in

Motorola, this Court ruled that a Rule 30(b)(6) deposition of the Department of Justice could

proceed, even though some of the deposition questions might be objectionable based on the

deliberative process privilege, because the deposition notice also sought non-privileged

information.  Motorola, 1999 WL 552558, at *2.

In sum, the Opposition does not begin to discharge its burden to establish the pre-

requisites for the deliberative process privilege, much less to show that every deposition question

within the scope of the notice would seek privileged information.  The Opposition's discussion is

simply devoid of specific arguments about the deposition topics at issue in this case.  The

Opposition repeatedly refers to "staff deliberations," but it never identifies a single

"deliberation" or says what anyone is deliberating about.  The Opposition makes the equally

global contention that all of the information at issue in this case is "pre-decisional," but again, it

never bothers to identify a single "decision."  Tested against the specificity required to establish

any privilege (see Fed. R. Civ. P. 45(d)(2)), and especially against the strict requirement for

avoiding a deposition outright (see Motorola, 1999 WL 552558 at *2), this kind of vague

discussion cannot begin to warrant a blanket refusal to appear at a deposition.

---

[7]     The Opposition argues that Eugene Burger and Doe are distinguishable because the government was a
defendant in each.  But the scope of the deliberative process privilege is the same whether or not the government is a
party.  The Opposition's additional efforts to distinguish Doe misread Watts' Memorandum and Doe itself.  Doe's
waiver discussion is entirely unrelated to the portion of the opinion cited by Watts. (The waiver discussion is at 230
F.R.D. at 51, while Watts' Memorandum also cited 230 F.R.D. at 53.)  And the Opposition does not dispute that the
Doe court permitted deposition questions as described in our opening Memorandum.  See Opp. at 16 n.13; Mem. at
25.

**C.      The Opposition Fails To Rebut Watts' Contention That, If This Qualified Privilege Did Apply, The Strong Relevance Of The Information At Issue Would Override It**

In our opening Memorandum, we explained why information about the SEC's Staff Outline and the SEC's inconsistent treatment of Shell is highly relevant.[8]  Mem. at 26.  The Opposition does not specifically dispute these points.  Instead it vaguely recasts all of the requested information as "staff deliberations," then protests, without explanation, that such "deliberations" are not relevant.  Opp. at 19-20.  The Opposition makes the equally empty assertion that "[i]nformation available to Watts and to Shell will determine the meaning of Rule 4-10 and whether Shell appropriately applied it."  Opp. at 19.  Again, however, the Opposition does not bother to identify this "information."  Nor does the Opposition say anything at all about the other side of the equation, by identifying a government interest that would be harmed by the deposition.  There is, therefore, nothing at all on the government-interest side of the scales.  As a result, even if the privilege applied, there is literally nothing in this record that could outweigh Watts' need for this information.

**D.      The Privilege Argument Cannot Justify A Categorical Refusal To Appear For The Deposition**

The Opposition's primary response to Watts' demonstration that this matter cannot be resolved in the abstract, based on the SEC's blanket assertion of privilege, is to assert that it is "abundantly clear" that all of the topics identified in the deposition notice consist entirely of privileged information.  Opp. at 20.  The Opposition even charges that Watts' decision to

---

[8]      In a footnote, the SEC contends that "differing treatment" does not exist where Shell and other companies booked reserves from the very same fields, but the SEC singled out Shell for enforcement action. Mem. at 19 n.15. This contention only serves to illustrate the unreasonableness of the Opposition's argument.  As explained in our opening Memorandum, comment letters signed by SEC Staff demonstrate that the SEC permitted oil companies to book reserves for particular oil fields, while at the same time, Watts and Shell have been accused of fraud because Shell booked reserves in the same fields.  See Mem. at 6.  The SEC's reason for such disparate treatment is highly relevant to Watts' defense in the underlying class litigation because it would help prove that not only was Shell's designation of certain oil and natural gas reserves not fraudulent, but also that it was consistent with similar bookings made by other oil and gas companies – bookings that were permitted by the SEC.  See id.

subpoena the SEC – in this action in which he faces huge liability for claims based primarily on SEC Staff pronouncements – is "frivolous." Id. That hyperbole is an example of protesting too much, a sign that the SEC has no substantive response. Indeed, it does not. First, even the SEC does not dispute that some of the topics covered by the deposition notice are not privileged. See, e.g., Mem. at 27 and Ex. Q thereto. Second, as explained above, the deposition will, at minimum, involve substantial questions about topics that are not privileged. There is no legal basis, and the Opposition cites none, for an argument that a party can avoid an entire deposition because some of the questions might seek information that is privileged.

## III.    THE SEC FAILS TO ARTICULATE ANY SPECIFIC GROUND FOR ITS OBJECTION THAT THIS SINGLE DEPOSITION WOULD BE EXCESSIVELY BURDENSOME

The Opposition does not dispute that, absent extraordinary circumstances, a court will allow a deposition to proceed. See Mem. at 28-29; Opp. at 21.[9] Nor does the Opposition dispute that the SEC has the obligation to establish burdensomeness. See citations in Mem. at 29. Nor, as just noted, does it dispute Watts' specific contentions that this information is highly relevant to his defense. Nor, finally, does the Opposition articulate specific grounds for its burdensomeness objection, as Watts challenged it to do. Mem. at 29. It merely protests that, in other cases, the SEC could be "overwhelmed by the task of having staff who have no first-hand knowledge of the facts" appear at depositions. Opp. at 2; see also Opp. at 11-13, 22. This says literally nothing suggesting it would be unduly burdensome to provide a deponent in this case.

---

[9]    The Opposition quibbles with the facts of the cases cited in our Memorandum, but we did not cite these cases for their facts. For example, it argues that these cases are distinguishable because the deponents were not government agencies. However, the SEC cited no case in which a lower standard was applied to a government agency. In fact, in Alexander v. FBI, 186 F.R.D. 60, 65 (D.D.C. 1998), the court reiterated that, even when the deponent was a representative of a government agency, the outright prohibition of a deposition would nonetheless be "extraordinary."

**Conclusion**

The SEC seeks to avoid appearing for a single deposition, and it asserts objection after objection, but the Opposition is unable to support a single one. The Opposition's new procedural objection, the Touhy argument, conspicuously lacks any basis in the SEC's own regulation or in the controlling case law. The SEC carries the burden with respect to all of its substantive objections, but the Opposition conspicuously fails to rise to Watts' challenge that it provide some specific ground for any of them.

For the reasons set out in that Memorandum and this Reply, Watts respectfully requests that his motion to compel be granted.

Respectfully submitted,

Joseph I. Goldstein (D.C. Bar No. 412240)
Andrew J. Morris (D.C. Bar No. 411865)
Adriaen M. Morse Jr. (D.C. Bar No. 483347)
Aimée D. Latimer (D.C. Bar No. 476693)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202-263-3000
Facsimile: 202-263-3300

*Counsel for Sir Philip B. Watts*