**B**

RECEIVED
U.S. COURT OF APPEALS
FOR THE D C CIRCUIT

IN THE

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

2006 AUG 24 PM 4: 15

FILING DEPOSITORY

---

PHILIP WATTS,  )
 )
   Petitioner  )
 )
   v.  )
 )
U.S. SECURITIES AND EXCHANGE  )
COMMISSION,  )
 )
   Respondent.  )
 )

No. _____

---

## PETITIONER'S MOTION FOR EXPEDITED REVIEW

Pursuant to D.C. Circuit Rule 27(f), Petitioner Sir Philip Watts ("Watts") respectfully moves the Court for expedited consideration of his Petition for Review of an Order ("Order") issued by the Securities and Exchange Commission ("SEC"). That Order refused to provide discovery in response to four deposition subpoenas served by Watts. (The Order is attached hereto as Exh. 1.)[1] As explained below, prompt resolution of this Petition is necessary so that the depositions at issue can take place before the close of relevant discovery in the underlying litigation. Watts is a defendant in that litigation, which is pending in the District of New Jersey and in which a putative class of securities plaintiffs seek damages in the billions of dollars. In addition, absent expedited review, this question of the SEC's legal obligation to provide certain discovery may routinely evade any review at all, thus immunizing the SEC from the judicial review provided by the Administrative Procedure Act.

---

[1] All citations to exhibits ("Exh.") refer to the Declaration of Andrew J. Morris, attached hereto.

Watts, therefore, asks that the Court set a briefing schedule that enables the Court to decide his petition on the merits no later than November 15, 2006.

## I.    THE UNDERLYING LITIGATION AND THE RELEVANT DEADLINES

1.    Watts is the former Chairman of the Committee of Managing Directors of Royal Dutch/Shell Group of Companies ("Shell"). Watts seeks the testimony at issue in connection with a securities-fraud action brought by a putative class of plaintiffs against Watts, Shell, and other defendants. *See* Exh. 2 (subpoenas directed at SEC and SEC employees); Exh. 3 (March 1, 2006 letter from Petitioner's counsel to SEC General Counsel's Office). The stakes in that litigation are extraordinarily high – well into the billions of dollars. *See* Exh. 3 at 4 (March 1, 2006 letter from Petitioner's counsel to SEC General Counsel's Office).

2.    In that lawsuit, which is pending in the United States District Court for the District of New Jersey, plaintiffs allege that Shell fraudulently overstated the volume of its "proved" oil and natural gas reserves by booking reserves that did not comply with SEC regulations or with informal guidance from the SEC Staff. *See* Exh. 3 at 4 (March 1, 2006 letter from Petitioner's counsel to SEC General Counsel's Office). The informal guidance at issue, called the "Staff Outline," added new reporting requirements beyond those contained in the relevant regulation (SEC Rule 4-10 (17 C.F.R. § 210.4-10)). *See id.* at 4-6. Watts therefore seeks discovery from the SEC and specific members of its Staff in order to establish that the Staff Outline supplemented the regulation; to learn the source of the additional requirements imposed by the Staff Outline; to clarify the Staff Outline's meaning; and to learn how the SEC has applied the Staff Outline to other companies. The SEC is the only possible source for this information.

2

3.      The relevant discovery cut-off is February 23, 2007, which is the final date for conducting depositions in preparation for a scheduled evidentiary hearing that will address class certification and certain other substantive issues. *See* Exh. 4 (Amended Joint Scheduling Order) at 11. The deadline for filing summary judgment motions that will address these issues, which include causation and scienter, is April 2, 2007. *Id.* at 11. In addition, on May 11, 2007, Watts' opposition to the plaintiffs' motion for class certification is due. *Id.* at 12. The extended evidentiary hearing will begin on May 29, 2007. *Id.* at 12.

## II.    THE SUBPOENAS AT ISSUE AND THE SEC ORDER

4.      On February 7, 2006, Watts served deposition subpoenas on the SEC and on three staff members specifically responsible for the Staff Outline. The subpoenas seek testimony pertaining to the SEC's interpretation and application of specific terms set forth in the regulation and the Staff Outline, including terms and reporting requirements not found in the regulation but introduced by the Staff in the Staff Outline. *See* Exh. 2 (subpoenas directed to SEC and SEC employees).

5.      On August 1, 2006, in response to the subpoenas (after certain internal proceedings), the SEC issued the Order. *See* Exh. 1 at 1 (Order). In short, the Order states that the SEC will not provide any testimony pursuant to the subpoena issued to the agency itself, nor will it permit any of the three subpoenaed staff members to provide testimony. The Order states that all of the testimony sought is protected by the deliberative-process privilege or is unduly burdensome. *Id.* at 1 (Order). Conspicuously, the Order does not identify the factual or legal basis for these conclusions. *Id.*

6.      Watts filed a Petition for Review with this Court on August 21, 2006.

## III.   GROUNDS FOR EXPEDITING CONSIDERATION OF WATTS' PETITION

7.     Absent expedited review, Watts will suffer irreparable harm in the conduct of the underlying litigation, and the public will suffer harm as well. *See* D.C. Cir. Rule 27(f); D.C. Circuit's Handbook of Practice and Internal Procedures at 33-34 (2006) ("Handbook"). Moreover, the SEC decision at issue is subject to substantial challenge. *See id.*

### A.     Irreparable Harm To Watts And Harm To The Public

8.     By February 27, 2006, Watts must complete depositions on issues including causation and scienter if he wishes to file a summary judgment motion in advance of the evidentiary hearing. Causation and scienter are, of course, issues that are central in the case, and the SEC's testimony is central to both issues.

9.     Unless this Court resolves Watts' Petition in time to enable him to conduct the depositions at issue before the February 2007 deadline, this Court's decision will come too late to serve its purpose. Watts will have lost the ability to rely on those depositions in his summary judgment motion or in his opposition to the plaintiffs' motion for class certification. In the context of this billion-dollar litigation, denying Watts evidence that is central to his defense constitutes irreparable harm, as well as "good cause" for expediting consideration of this matter.

10.    Distinct irreparable harm also arises from the fact that, if this Petition is not expedited, Watts will effectively be denied his right to challenge the SEC Order. More broadly, the "public" has "an unusual interest in prompt disposition" of this matter. *See* Handbook at 34. This is a dispute about a federal agency's obligation to comply with its legal obligations to make disclosures relevant to litigation. If such disputes are not reviewed on an expedited basis, they will tend to evade review entirely. The obvious effect would be, as a practical matter, to immunize the agency's conduct from review by the courts.

4

11.    On the other side of the equation, there is no possible prejudice to the SEC from expediting this matter. The SEC formulated its legal position at least by April 27, 2006, when the SEC General Counsel, pursuant to delegated authority, first asserted that the SEC is entitled to refuse to comply with the subpoenas. Moreover, as explained below, the record is minimal in size.

### B.    Why The SEC Order Is Subject To The Substantial Challenge

12.    The SEC's Order also is "subject to substantial challenge." Indeed, it is particularly vulnerable because it is a boilerplate document that recites a generalized refusal to provide the relevant discovery.

13.    The Order asserts the privilege in a single opaque sentence, stating that "because the categories of information Watts is seeking are necessarily deliberations leading to decisions, they come within the privilege. *See* Exh. 1 at 4 (Order). To makes sense of this sentence, it must be read together with the Order's "undue burden" objection (discussed below), which contends that all information at issue is protected by the deliberative-process privilege except that which the SEC has set out in written, public documents. The apparent rationale for the assertion of the deliberative-process privilege is that information not yet made public in written form might "lead[] to decisions" and therefore is protected by the privilege. Exh. 1 at 4 (Order). The SEC makes this assertion even if the information involves an existing agency policy or a past decision.

14.    In short, the Order divides the deposition topics into two parts, then states that each part is categorically protected from disclosure. According to the Order: (1) to the extent information is *not* already in writing in a public document, it is "predecisional" and, therefore, protected by the deliberative-process privilege; and (2) to the extent information *is* in writing in a

public document (and therefore is not privileged), it is protected from disclosure by the SEC's burdensomeness objection. Exh. 1 at 4 (Order).

15.    The Order flatly misreads the law of deliberative-process privilege. Information is not protected by the privilege if it is "post-decisional" in that it provides "reasons which did supply the basis for an agency policy actually adopted," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975), or it concerns an agency action that has had "real operative effect," *Renegotiation Board. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 186-87 (1975). It cannot reasonably be disputed that the Staff Outline reflects Agency "policy" and has had widespread "effect" in the oil and gas industry. Nor can it be disputed that the Staff Outline is having an "effect" on Watts, because the securities class-action plaintiffs make it central to their claims against him. *See* Exh. 3 at 4 (March 1, 2006 letter from Petitioner's counsel to SEC General Counsel's Office); Exh. 5 (April 28, 2006 letter from Petitioner's counsel to SEC). Nothing in the law remotely supports the SEC's blanket assertion of this privilege.

16.    The Order's assertion of the deliberative-process privilege is defective on its face for an additional reason. This privilege is a qualified one, so that Watts is entitled to the information if his need for it outweighs the government's need for secrecy. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984). Watts has carried his burden by making a record of his need for the evidence. The SEC, however, has not bothered to make any record of an agency interest in secrecy. In fact, the Order does not bother to address the relevant factors identified by this Court. *See, e.g., First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994). This failure even to make a proper record is typical of the Order's perfunctory character. This defect provides an independent basis for reversing the Order even if the privilege were to apply.

17.    The SEC's burdensomeness objection is equally erroneous. According to the Order, "allowing staff to appear for testimony would place an undue burden on the Commission *because Watts can better get the non-privileged information from documents . . . .*" Exh. 1 at 4 (Order) (emphasis added).

18.    This assertion makes no effort even to acknowledge the law governing burdensomeness objections. Nor does it bother to make a record about burden. Like the blanket assertion of the deliberative-process privilege, the burdensomeness objection constitutes nothing more than an agency's boilerplate, unsupported refusal to comply with the governing law.

### C.    The Extremely Limited Record and The Ease Of Review

19.    Reversing the SEC Order would not require detailed inquiry by this Court. Not only do the issues involve matters of law, as explained above, but the record is minimal. It consists entirely of: (1) the four subpoenas served by Watts; (2) the decision by the SEC's General Counsel's Office, acting pursuant to delegated authority, initially stating that the SEC will not provide testimony pursuant to the subpoenas: (3) Watts' petition for SEC review of the General Counsel's decision (along with exhibits consisting of correspondence between Watts and the SEC about discovery in this matter, and between the SEC and third parties about the Staff Outline); and (4) the SEC Order itself. Moreover, the only "factual" issue in this matter is the interpretation of the four deposition notices. Therefore, expedited review is particularly appropriate.

## CONCLUSION

For the foregoing reasons, Watts respectfully requests that the Court expedite its consideration of his Petition for Review, so that the Court decides the Petition on the merits, or summarily reverse the SEC Order, no later than November 1, 2006. This will enable the SEC to make its employees available for depositions not later than February 27, 2006.

Respectfully submitted,

Andrew J. Morris (D.C. Bar No. 411865)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, D.C. 20006-1101
(202) 263-3000

*Counsel for Sir Philip B. Watts*

Of Counsel
Joseph I. Goldstein
Adriaen M. Morse, Jr.
Aimée D. Latimer
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, D.C. 20006-1101
(202) 263-3000

August 21, 2006

8

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2006, I caused the foregoing Petitioner's Motion for

Expedited Review and all accompanying papers, to be served to the following by hand-delivery:

> Richard Humes
> Brian G. Cartwright
> Kathleen Cody
> United States Securities and Exchange Commission
> 100 F Street NE
> Washington, DC 20549-9612
>
> *Counsel for the SEC*

> Andrew J. Morris
> MAYER BROWN ROWE & MAW LLP
> 1909 K Street, NW
> Washington, D.C. 20006-1101

9

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

RECEIVED
U.S. COURT OF APPEALS
FOR THE D C CIRCUIT

2006 AUG 21  PH 4: 15

FILING DEPOSITORY

PHILIP WATTS,                          )
                                       )
          Petitioner                   )
                                       )
     v.                                )              No. _____
                                       )
U.S. SECURITIES AND EXCHANGE           )
COMMISSION,                            )
                                       )
          Respondent.                  )
                                       )

## DECLARATION OF ANDREW J. MORRIS

I, Andrew J. Morris, hereby declare as follows:

1. I am one of the attorneys representing Petitioner Philip B. Watts.

2. Attached to this declaration as Exhibit 1 is a true and correct copy of the Order issued by the Securities and Exchange Commission ("SEC") on August 1, 2006.

3. Attached to this declaration as Exhibit 2 are true and correct copies of the subpoenas served by Petitioner on the SEC and three of the agency's employees.

4. Attached to this declaration as Exhibit 3 is a true and correct copy of the March 1, 2006 letter from Petitioner's counsel to SEC General Counsel's Office.

5. Attached to this declaration as Exhibit 4 is a true and correct copy of the Amended Joint Scheduling Order of May 23, 2006 issued in *In Re Royal Dutch/Shell Transport Securities Litigation*, Civ. A. No. 04-374 (J. Pisano) (D.N.J.).

6. Attached to this declaration as Exhibit 5 is a true and correct copy of the April 28, 2006 letter from Petitioner's counsel to the SEC without the accompanying exhibits.

7. All of the attached Exhibits, except for Exhibit 1 (Order) and Exhibit 4 (Scheduling Order), are exhibits to Petitioner's Petition for SEC Review of May 11, 2006.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Andrew J. Morris

Executed:  August 21, 2006

# EXHIBIT 1

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT of 1934
Rel. No. 54259 / August 1, 2006

---

In the Matter of )
)
ROYAL DUTCH/ SHELL TRANSPORT )
SECURITIES LITIGATION, Civ. Action )
No. 04-CV-374 (D.N.J.) )

---

ORDER DENYING PETITION FOR REVIEW

Pursuant to Rule 431(b)(2) of the Rules of Practice,[1] it is ORDERED that the Petition for Review of Sir Philip B. Watts for review of the April 27, 2006 decision by delegated authority of the Office of the General Counsel ("Office") declining to authorize testimony requested in subpoenas issued to the Commission and to Commission staff (Roger Schwall, James Murphy, and Ron Winfrey) is hereby denied.

In February 2006, Watts served a subpoena on the Commission seeking testimony under the procedures described in Rule 30(b)(6) of the Federal Rules of Civil Procedure and also served subpoenas on Schwall, Murphy, and Winfrey, seeking testimony from each of them. On April 27, 2006, the Office notified Watts that it would not authorize testimony pursuant to any of those subpoenas. The Office first stated that the subpoena to the Commission was not valid because Rule 45 of the Federal Rules of Civil Procedure does not authorize subpoenas to federal government agencies. The Office also stated that all of the subpoenas sought information protected by the deliberative process privilege and that Watts had not shown that he could overcome that privilege. Finally, the Office stated that providing the testimony would be unduly burdensome because to the extent the subpoenas seek information about non-privileged communications, the staff had no recollection of the content of the communications beyond what was contained in documents the Commission had produced to Watts. In his Petition for Review, Watts contends that none of these reasons justifies a refusal to produce testimony pursuant to subpoenas.

---

[1] 17 CFR 201.431(b)(2).

In considering whether to accept or reject the Petition, Rule 411(b)(2) of the Rules of Practice[2] requires that the Commission determine whether:

(i) a prejudicial error was committed in the conduct of the proceeding; or

(ii) the decision embodies:

(A) a finding or conclusion of material fact that is clearly erroneous; or

(B) a conclusion of law that is erroneous; or

(C) an exercise of discretion or decision of law or policy that is important and that the Commission should review.

The Petition does not allege that any prejudicial error was committed in the conduct of the proceedings, and the Commission finds that no such prejudicial error occurred.

The Commission also finds that the Office's decision does not embody a finding of material fact that is clearly erroneous. The Office made the following findings of fact. The subpoenas seek testimony regarding the drafting, editing, review, approval, or application of Rule 4-10 of Regulation S-X, 17 C.F.R. 210.4-10 and of documents the petitioner refers to as the Staff Outline.[3] Also, the subpoenas seek testimony regarding contemplated changes or modifications to Rule 4-10 or the Staff Outline. Those categories of testimony would concern deliberations regarding what would and would not be included in the rule and other documents and deliberations leading to decisions regarding whether to make changes or modifications and, if so, what they should be. Watts did not establish that staff deliberations that have never been made public or communicated to third parties are relevant to the underlying litigation. Finally, to the extent Watts is seeking non-privileged information, primarily communications with third parties, the documents that the staff has agreed to produce reflect those communications, and the Petition does not provide any claim that the staff can provide the content of additional non-privileged communications. None of those findings of fact are clearly erroneous. Indeed, they are all fully supported by the record.

With respect to conclusions of law, after the Office declined to authorize the testimony, the United States Court of Appeals for the District of Columbia Circuit held that Rule 45 of the Federal Rules of Civil Procedure authorizes subpoenas to the government. *Yousuf v. Samantar*,

---

[2]  17 CFR 201.411(b)(2).

[3]  Petitioner includes the following documents in the definition of "Staff Outline": (a) Division of Corporation Finance: Current Accounting and Disclosure Issues, dated June 30, 2000; (b) Current Issues and Rulemaking Projects, dated November 14, 2000; and (c) Division of Corporation Finance: Frequently Requested Accounting and Financial Reporting Interpretations and Guidance, dated March 31, 2001, and any subsequent amendments or versions of these documents.

No. 05-5197 (D.C. Cir. June 16, 2006). Nonetheless, the Commission finds that the Office's remaining conclusions of law were correct and that they are sufficient to support its conclusions. The Office made the following conclusions of law. The subpoenas seek deliberations protected by the deliberative process privilege. That privilege protects predecisional deliberations, *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132 (1975), and because the categories of information Watts is seeking are necessarily deliberations leading to decisions, they come within the privilege.[4] Watts' reasons for seeking the deliberations are not sufficient to overcome the privilege because staff views are necessarily irrelevant to any action that Shell took, and preliminary staff views do not reveal any SEC position or practice. To the extent Watts is seeking information that is not privileged, allowing staff to appear for testimony would place an undue burden on the Commission because Watts can better get the non-privileged information from documents, including Rule 4-10, the Staff, Outline, and the documents produced to Watts by the Commission. None of those findings of fact are clearly erroneous. The Office properly found that the Commission's deliberative processes must be protected and that providing testimony can cause an undue burden on the Commission, and we fully support the Office's conclusions. Many litigants seek testimony from Commission staff, and if the Commission had to allow staff to appear in every case analogous to this one, the burden on the Commission's limited resources would be too great.

Finally, the Commission also finds that the Office's decision does not embody an exercise of discretion or a decision of law or policy that is important and that the Commission should review. Indeed, the Office has acted in furtherance of Commission policy by protecting predecisional deliberations and avoiding burdening staff with the obligation of providing testimony when staff likely have no non-privileged information that is not contained in documents that are public or that the Commission has agreed to produce.

Because Watts has not satisfied any of the factors in Rule 411(b)(2) of the Rules of Practice, his Petition for Review is denied.

By the Commission.

*Nancy M. Morris*

Nancy M. Morris
Secretary

---

[4] To the extent Commission releases or other documents released to the public by the Commission or its staff explain the drafting, editing, review, approval, or application of Rule 4-10 or the Staff Outline or any contemplated changes or modifications to Rule 4-10 or the Staff Outline, the information is not privileged. However, as the Office found, asking staff to provide testimony regarding information that is in publicly available documents is unnecessary and would place an undue burden on the Commission.

# EXHIBIT 2

ROBERTSON, FREILICH, BRUNO & COHEN, L.L.C.
William W. Robertson
Jeffrey A. Cohen
Owen J. McKeon
1 Riverfront Plaza, 4th Floor
Newark, New Jersey 07102
Telephone: 973-848-2100
Facsimile: 973-848-2138

MAYER, BROWN, ROWE & MAW LLP
Joseph I. Goldstein
Richard J. Morvillo
Bruce M. Bettigole
Adriaen M. Morse Jr.
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202-263-3000
Facsimile: 202-263-3300

*Counsel for Defendant Sir Philip Watts*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:                              ) | **CIVIL ACTION NO. 04-374 (JAP)** |
|                                     ) | |
| **ROYAL DUTCH/SHELL TRANSPORT** ) | **Notice of Subpoena** |
| **SECURITIES LITIGATION**            ) | |
|                                     ) | |

PLEASE TAKE NOTICE that pursuant to Rules 30, 34 and 45 of the Federal

Rules of Civil Procedure, Defendant Sir Philip Watts will take the deposition of James

Murphy. A subpoena directed to Mr. Murphy is enclosed. The deposition will take place

on April 10, 2006 at the offices of Mayer, Brown, Rowe & Maw LLP, 1909 K Street

NW, Washington, DC, 20006, or such other place and time as may be agreed to by the

parties, beginning at 10:00 a.m. and continuing from day-to-day until completed. The

deposition shall be recorded both by stenographic and videographic means.

The enclosed subpoena also seeks documents in the possession, custody or control

of Mr. Murphy.  The production of said documents will take place on February 22, 2006

at the officers of Mayer, Brown, Rowe & Maw LLP, 1909 K Street, NW, Washington,

DC 20006, or such other location as is mutually acceptable to the parties.

Dated: 2/7/06                   By: _____

                                    Joseph I. Goldstein
                                    Richard J. Morvillo
                                    Bruce M. Bettigole
                                    Adriaen M. Morse Jr.
                                    Mayer, Brown, Rowe & Maw LLP
                                    1909 K Street, N.W.
                                    Washington, DC 20006-1101
                                    Telephone: 202-263-3000
                                    Facsimile: 202-263-3300

                                    William W. Robertson
                                    Jeffrey A. Cohen
                                    Owen J. McKeon
                                    ROBERTSON, FREILICH, BRUNO & COHEN,
                                    L.L.C.
                                    1 Riverfront Plaza, 4th Floor
                                    Newark, New Jersey 07102
                                    Telephone: 973-848-2100
                                    Facsimile: 973-848-2138

                                    *Counsel for Sir Philip Watts*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2006, I caused the foregoing Sir Philip Watts' Notice of Subpoena to be served by electronic mail on:

| | |
|---|---|
| **Bernstein Liebhard & Lifshitz, LLP**<br>Stanley D. Bernstein, Esquire<br>Michael S. Bigin, Esquire<br>Keith M. Fleischman, Esquire<br>Jeffrey M. Haber, Esquire<br>Mark T. Millkey, Esquire<br>William A.K. Titelman, Esquire<br>10 East 40th Street<br>New York, New York 10016<br>Email: bernstein@bernlieb.com<br>       bigin@bernlieb.com<br>       fleischman@bernlieb.com<br>       haber@bernlieb.com<br>       millkey@bernlieb.com<br>       titelman@bernlieb.com | **Debevoise & Plimpton LLP**<br>David C. Ware, Esquire<br>Scott N. Auby, Esquire<br>Colby A. Smith, Esquire<br>555 13th Street, N.W.<br>Washington, D.C. 20004<br>Email: dcware@debevoise.com<br>       snauby@debevoise.com<br>       casmith@debevoise.com |
| **Foley & Lardner LLP**<br>Rebecca E. Wickhem, Esquire<br>Nancy J. Sennett, Esquire<br>777 East Wisconsin Avenue<br>Milwaukee, Wisconsin 53202<br>Email: rwickhem@foley.com<br>       nsennett@foley.com<br><br>Samuel J. Winer, Esquire<br>Washington Harbour<br>3000 K Street, N.W. Suite 500<br>Washington, D.C. 20007-5109<br>Email: swiner@foley.com | **Leboef, Lamb, Greene & MacRae LLP**<br>Ralph C. Ferrara, Esquire<br>Ann M. Ashton, Esquire<br>1875 Connecticut Avenue, N.W., Suite 1200<br>Washington, D.C. 20009-5715<br>Email: rferrara@llgm.com<br>       amashton@llgm.com<br><br>Jonathan Richman, Esquire<br>125 West 55th Street<br>New York, NY 10019<br>Email: jrichman@llgm.com |
| **Hogan & Hartson LLP**<br>W. Sidney Davis, Jr., Esquire<br>875 Third Avenue<br>New York, New York 10022<br>Emails: wsdavis@hhlaw.com | **Bressler, Amery & Ross, P.C.**<br>J. Michael Riordan, Esquire<br>325 Columbia Turnpike<br>Florham Park, New Jersey 07932<br>Email: mjriordan@bressler.com |
| **Robertson, Freilich, Bruno & Cohen, LLC**<br>William W. Robertson, Esquire<br>Jeffrey A. Cohen, Esquire<br>One Riverfront Plaza, 4th Floor<br>Newark, New Jersey 07102<br>Email: wrobertson@rfbclaw.com<br>       jcohen@rfbclaw.com | **Robinson & Livelli**<br>Donald A. Robinson, Esquire<br>Leda Dunn Wettre, Esquire<br>2 Penn Plaza East<br>Newark, New Jersey 07105<br>Email: drobinson@robinsonlivelli.com<br>       lwettre@robinsonlivelli.com |

**Hughes Hubbard & Reed LLP**
John N. Poulos, Esquire
Wilfred P. Coronato, Esquire
101 Hudson Street, Suite 3601
Jersey City, New Jersey 07302-3918
Telephone: 201-536-9220
Email: poulos@hugheshubbard.com
        coronato@hugheshubbard.com

Derek J.T. Adler, Esquire
William R. Maguire, Esquire
One Battery Park Plaza
New York, N.Y. 10004-1482
Phone: (212) 837-6000
Email: adler@hugheshubbard.com
        maguire@hugheshubbard.com

**Akin Gump Strauss Hauer & Feld LLP**
John Dowd, Esquire
Paul W. Butler, Esquire
Jeffrey M. King, Esquire
Evangeline C. Paschal, Esquire
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Email: pbutler@akingump.com
        jdowd@akingump.com
        jking@akingump.com
        epaschal@akingump.com

James L. Griffith, Jr., Esquire
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, Pennsylvania 19103
Email: jgriffith@akingump.com

**Linklaters**
James R. Warnot, Jr., Esquire
Michael J. Osnato, Jr., Esquire
1345 Avenue of the Americas, 19th Floor
New York, New York 10150
Telephone: 212-424-9000
Email: jim.warnot@linklaters.com
        mike.osnato@linklaters.com

**Lynch Keefe Bartels**
Attorneys at Law
John E. Keefe, Esquire
830 Broad Street
Shrewsbury, New Jersey 07702
Email: jekeefe@lmknet.com

Emily R. Hanks
Mayer Brown Rowe & Maw LLP
1909 K Street, NW
Washington, D.C. 20006-1101
Email: ehanks@mayerbrownrowe.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF  COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: James Murphy
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>04/10/2006 10:00 am |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See Attachment A

| PLACE   Mayer Brown Rowe Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>02/22/2006 |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Sir Philip Watts | DATE<br>Feb 7 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.      Mayer Brown Rowe & Maw LLP        (202)263-3344
                              1909 K Street, NW
                              Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE 2/08/06 @ 11:45 AM SERVED: | PLACE 100 F Street, NE Washington, DC 20549 |
|---|---|

| SERVED ON (PRINT NAME) Carnice Day, Automated Clerk of the Office of General Counsel | MANNER OF SERVICE Authorized to Accept |
|---|---|

| SERVED BY (PRINT NAME) Daniel F. Portnoy | TITLE Private Process Server |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___2/08/06___
                        DATE

SIGNATURE OF SERVER
Capitol Process Services, inc.
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER (202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

# ATTACHMENT A

**A.    Definitions**

1.    "Communication(s)" shall refer to any conversation(s), meeting(s), correspondence, electronic mail ("email"), facsimile(s), telephone call(s), and any other form of oral or written communication by which information may be conveyed.

2.    "Concerning" means relating to, referring to, discussing, evidencing, reflecting, pertaining to, describing, constituting, in connection with, or commenting on, in whole or in part. A document that "concerns" a subject need not discuss that subject exclusively; it is enough that the document mentions that subject.

3.    "Documents" are defined to have the same meaning and be equal in scope to the usage of the term in Rule 34(a) of the Federal Rule of Civil Procedure, as well as "writings" as defined by Rule 1001(a) of the Federal Rules of Evidence, and shall include all records and other tangible forms of expression in your actual or constructive possession, custody, or control, including, but not limited to, drafts, encryptions, final or finished versions, originals, copies or annotated copies, backup copies, backup logs, identical copies from different files, however and by whomever created, compiled, produced, sent, received, dated, used, maintained or stored (manually, mechanically, electronically, or otherwise), and including, but not limited to, books, papers, writings, recordings, illustrations, charts, lists, numerical data, encryption keys, decryption keys, graphs, graphics, pictures, symbolic representations, files, notes, transcriptions, offers, solicitations, audio and video recordings, email, email headers, word processor documents, hypertext (text containing HTML, SGML, XHTML, DHTML, XML, or any other text formatting, markup, and/or control tags), website data, database files, electronic newsletters, computer data, confirmations, reports, presentations, memoranda, opinions, information,

packages, journals, ledgers, worksheets, telegrams, telexes, faxes, wire messages, telephone bills, messages, logs, notes or minutes of conversations or meetings, contracts, agreements, proposals, advice, letters of intent, calendars, date books, diaries, schedules, agendas, time tables, itineraries, travel logs, account statements, bank statements, financial analysis, financial and marketing reviews, press releases, news stories, summaries, budgets, invoices, bills, records of billings, wire transfers, drafts of money, records of payment, checks, tape recordings, or information stored on hard disk, diskette, CD-ROM, DVD or other disc, microfilm, magnetic tape, microfiche, any electronic media, any magnetic media, any laser media, or any other storage device.

4.     "KPMG" shall refer to KPMG International and all of its successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on its behalf.

5.     "Oil and gas company" shall refer to any corporation, association or other entity engaged in "oil and gas producing activities" as defined in Rule 4-10(a)(1).

6.     "Person" shall mean any natural person, corporation, firm, partnership, association or other business, governmental or legal entity, and includes anyone acting on behalf of any of the foregoing.

7.     "Proved oil and gas reserves" shall include the terms "proved oil and gas reserves" and "proved reserves" set forth in Rule 4-10(a)(2) and the Staff Outline, "proved developed oil and gas reserves" and "proved developed reserves" set forth in Rule 4-10(a)(3) and the Staff Outline, and "proved undeveloped oil and gas reserves" and "proved undeveloped reserves" set forth in Rule 4-10(a)(4) and the Staff Outline.

2

8.    "PwC" shall refer to PricewaterhouseCoopers International Limited and all of its successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on its behalf.

9.    "Rule 4-10" shall refer to Rule 4-10, Regulation S-X, 17 C.F.R. § 210.4-10, "Financial accounting and reporting for oil and gas producing activities pursuant to the Federal securities laws and the Energy Policy and Conservation Act of 1975."

10.    "SEC" shall refer to the United States Securities and Exchange Commission and all of its Commissioners, divisions, groups, committees, officers, directors, employees, agents, staff, and persons acting on its behalf.

11.    "SFAS 69" shall refer to Statement of Financial Accounting Standards No. 69, "Disclosures about Oil and Gas Producing Activities."

12.    "Shell" shall refer to The Royal Dutch Petroleum Company NV and/or The "Shell" Transport and Trading Company, p.l.c. and all of their successors, predecessors, subsidiaries, related corporations, affiliates, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on their behalf.

13.    "Staff Outline" shall refer to the following documents posted on the SEC website, www.sec.gov: (a) "Division of Corporation Finance: Current Accounting and Disclosure Issues," dated June 30, 2000, (b) "Current Issues and Rulemaking Projects," dated November 14, 2000, and (c) "Division of Corporation Finance: Frequently Requested Accounting and Financial Reporting Interpretations and Guidance," dated March 31, 2001, and any subsequent amendments or versions of these documents.

3

**B.    Instructions**

1.    "And" and "or" shall be construed both conjunctively and disjunctively.

2.    "Including" shall mean including, but not limited to.

3.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other, as appropriate in the context.

4.    You are requested to produce all documents that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, partners, directors, officers, employees, attorneys, accountants, staff, representatives or agents, or any person that is subject to your custody or control.

5.    All documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container, unless that is not possible.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

6.    Documents shall be produced in such fashion as to identify the SEC department, branch or office in whose possession the documents were located and, when applicable, the person in whose possession the documents were found and the business address of each document's custodian.

**C.    Documents to be Produced**

1.    All documents concerning the term "proved oil and gas reserves" set forth in Rule 4-10, subsections (a)(2)-(4), including the following:

4

a.    All documents concerning the drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4).

b.    All drafts of Rule 4-10(a)(2)-(4).

c.    All documents concerning any actual or contemplated amendment or modification of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

d.    All documents concerning any public commentary during the rulemaking process that led to the SEC's adoption of Rule 4-10(a)(2)-(4), including any documents concerning the definition or interpretation of the term "proved oil and gas reserves."

e.    All documents, including letters, correspondence, communications, memoranda, speeches, presentations, or articles of any kind authored by or sent from or to the SEC, concerning the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

2.    All documents concerning the terms "reasonable certainty," "reasonable doubt," and "reasonably certain" set forth in Rule 4-10, subsections (a)(2)-(4), including the following:

a.    All documents concerning the drafting, editing, review, approval or application of the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4).

b.    All documents concerning any actual or contemplated amendment or modification of the definition or interpretation of the term "reasonable certainty," "reasonable

doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

    c.    All documents concerning any public commentary during the rulemaking process that led to the SEC's adoption of Rule 4-10(a)(2)-(4), including any documents concerning the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain."

    d.    All documents, including letters, correspondence, communications, memoranda, speeches, presentations or articles of any kind authored by or sent from or to the SEC, concerning the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

3.    All documents concerning the section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including the following:

    a.    All documents concerning the drafting, editing, review, approval, or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in the Staff Outline.

    b.    All drafts of the Staff Outline.

    c.    All documents concerning any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the term "proved oil and gas reserves."

    d.    All documents, including, letters, correspondence, communications, memoranda, speeches, presentations or articles of any kind authored by or sent from or to the

SEC, concerning the Staff Outline's definition or interpretation of the term

"proved oil and gas reserves."

4.    All documents concerning the section entitled "Definition of Proved Reserves" set forth

in the Staff Outline, including the following:

    a.    All documents concerning the drafting, editing, review, approval, or application

        of the definition or interpretation of the terms "reasonable certainty," "reasonable

        doubt" and "reasonably certain" set forth in the Staff Outline.

    b.    All documents concerning any actual or contemplated change or modification of

        the Staff Outline's definition or interpretation of the terms "reasonable certainty,"

        "reasonable doubt" and "reasonably certain."

    c.    All documents, including, letters, correspondence, communications, memoranda,

        speeches, presentations or articles of any kind authored by or sent from or to the

        SEC, concerning the Staff Outline's definition or interpretation of the terms

        "reasonable certainty," "reasonable doubt" and "reasonably certain."

5.    All documents concerning any communications with any oil and gas company

concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved

oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set

forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas

reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

6.    All documents concerning any communications with Shell and its external auditors,

including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or

interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable

7

See

doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

7.    All documents concerning any communications with any analyst, researcher, commentator, professional association, or any other person employed in, associated with, or reporting on the oil and gas industry concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

8.    All documents concerning any communications with members of any law firms, accounting firms, engineering firms, consulting firms, and external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

9.    All documents the SEC considered in drafting, editing, reviewing, approving, or applying the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline.

ROBERTSON, FREILICH, BRUNO & COHEN, L.L.C.
William W. Robertson
Jeffrey A. Cohen
Owen J. McKeon
1 Riverfront Plaza, 4th Floor
Newark, New Jersey 07102
Telephone: 973-848-2100
Facsimile: 973-848-2138

MAYER, BROWN, ROWE & MAW LLP
Joseph I. Goldstein
Richard J. Morvillo
Bruce M. Bettigole
Adriaen M. Morse Jr.
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202-263-3000
Facsimile: 202-263-3300

*Counsel for Defendant Sir Philip Watts*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | **CIVIL ACTION NO. 04-374 (JAP)** |
| | ) | |
| **ROYAL DUTCH/SHELL TRANSPORT** | ) | Notice of Subpoena |
| **SECURITIES LITIGATION** | ) | |
| | ) | |
| | ) | |

PLEASE TAKE NOTICE that pursuant to Rule 30, 34 and 45 of the Federal Rules of Civil Procedure, Defendant Sir Philip Watts will take the deposition of Roger Schwall. A subpoena directed to Mr. Schwall is enclosed. The deposition will take place on April 5, 2006 at the offices of Mayer, Brown, Rowe & Maw LLP, 1909 K Street NW, Washington, DC, 20006, or such other place and time as may be agreed to by the parties, beginning at 10:00 a.m. and continuing from day-to-day until completed. The deposition shall be recorded both by stenographic and videographic means.

The enclosed subpoena also seeks documents in the possession, custody or control

of Mr. Schwall. The production of said documents will take place on February 22, 2006

at the officers of Mayer, Brown, Rowe & Maw LLP, 1909 K Street, NW, Washington,

DC 20006, or such other location as is mutually acceptable to the parties.


Dated: 2/7/06                    By:  _____
                                      Joseph U Goldstein
                                      Richard J. Morvillo
                                      Bruce M. Bettigole
                                      Adriaen M. Morse Jr.
                                      Mayer, Brown, Rowe & Maw LLP

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

v.

### SUBPOENA IN A CIVIL CASE

Case Number: [1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: Roger Schwall
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 04/05/2006 10:00 am |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
See Attachment A

| PLACE  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 02/22/2006 |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant Sir Philip Watts    *Joesph I. Goldstein* | Feb 7, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.      Mayer Brown Rowe & Maw LLP      (202)263-3344
                              1909 K Street, NW
                              Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE 2/08/06 @ 11:45 AM<br>SERVED: | PLACE<br>100 F Street, NE<br>Washington, DC 20549 |
|---|---|

| SERVED ON (PRINT NAME)<br>Carnice Day, Automated Clerk of the<br>Office of General Counsel | MANNER OF SERVICE<br>Authorized to Accept |
|---|---|

| SERVED BY (PRINT NAME)<br>Daniel F. Portnoy | TITLE<br>Private Process Server |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    2/08/06
                     DATE

SIGNATURE OF SERVER

**Capitol Process Services, Inc.**
1827 18th Street, NW
ADDRESS OF SERVER Washington, DC 20009
(202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## ATTACHMENT A

**A.    Definitions**

1.      "Communication(s)" shall refer to any conversation(s), meeting(s), correspondence, electronic mail ("email"), facsimile(s), telephone call(s), and any other form of oral or written communication by which information may be conveyed.

2.      "Concerning" means relating to, referring to, discussing, evidencing, reflecting, pertaining to, describing, constituting, in connection with, or commenting on, in whole or in part. A document that "concerns" a subject need not discuss that subject exclusively; it is enough that the document mentions that subject.

3.      "Documents" are defined to have the same meaning and be equal in scope to the usage of the term in Rule 34(a) of the Federal Rule of Civil Procedure, as well as "writings" as defined by Rule 1001(a) of the Federal Rules of Evidence, and shall include all records and other tangible forms of expression in your actual or constructive possession, custody, or control, including, but not limited to, drafts, encryptions, final or finished versions, originals, copies or annotated copies, backup copies, backup logs, identical copies from different files, however and by whomever created, compiled, produced, sent, received, dated, used, maintained or stored (manually, mechanically, electronically, or otherwise), and including, but not limited to, books, papers, writings, recordings, illustrations, charts, lists, numerical data, encryption keys, decryption keys, graphs, graphics, pictures, symbolic representations, files, notes, transcriptions, offers, solicitations, audio and video recordings, email, email headers, word processor documents, hypertext (text containing HTML, SGML, XHTML, DHTML, XML, or any other text formatting, markup, and/or control tags), website data, database files, electronic newsletters, computer data, confirmations, reports, presentations, memoranda, opinions, information,

packages, journals, ledgers, worksheets, telegrams, telexes, faxes, wire messages, telephone bills,

messages, logs, notes or minutes of conversations or meetings, contracts, agreements, proposals,

advice, letters of intent, calendars, date books, diaries, schedules, agendas, time tables,

itineraries, travel logs, account statements, bank statements, financial analysis, financial and

marketing reviews, press releases, news stories, summaries, budgets, invoices, bills, records of

billings, wire transfers, drafts of money, records of payment, checks, tape recordings, or

information stored on hard disk, diskette, CD-ROM, DVD or other disc, microfilm, magnetic

tape, microfiche, any electronic media, any magnetic media, any laser media, or any other

storage device.

4.      "KPMG" shall refer to KPMG International and all of its successors, predecessors,

subsidiaries, related corporations, affiliates, network members, divisions, groups, committees,

principals, officers, directors, employees, agents, independent contractors, and persons acting on its

behalf.

5.      "Oil and gas company" shall refer to any corporation, association or other entity engaged

in "oil and gas producing activities" as defined in Rule 4-10(a)(1).

6.      "Person" shall mean any natural person, corporation, firm, partnership, association or

other business, governmental or legal entity, and includes anyone acting on behalf of any of the

foregoing.

7.      "Proved oil and gas reserves" shall include the terms "proved oil and gas reserves" and

"proved reserves" set forth in Rule 4-10(a)(2) and the Staff Outline, "proved developed oil and

gas reserves" and "proved developed reserves" set forth in Rule 4-10(a)(3) and the Staff Outline,

and "proved undeveloped oil and gas reserves" and "proved undeveloped reserves" set forth in

Rule 4-10(a)(4) and the Staff Outline.

2

8.     "PwC" shall refer to PricewaterhouseCoopers International Limited and all of its successors,

predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups,

committees, principals, officers, directors, employees, agents, independent contractors, and persons

acting on its behalf.

9.     "Rule 4-10" shall refer to Rule 4-10, Regulation S-X, 17 C.F.R. § 210.4-10, "Financial

accounting and reporting for oil and gas producing activities pursuant to the Federal securities

laws and the Energy Policy and Conservation Act of 1975."

10.     "SEC" shall refer to the United States Securities and Exchange Commission and all of its

Commissioners, divisions, groups, committees, officers, directors, employees, agents, staff, and

persons acting on its behalf.

11.     "SFAS 69" shall refer to Statement of Financial Accounting Standards No. 69,

"Disclosures about Oil and Gas Producing Activities."

12.     "Shell" shall refer to The Royal Dutch Petroleum Company NV and/or The "Shell" Transport

and Trading Company, p.l.c. and all of their successors, predecessors, subsidiaries, related corporations,

affiliates, divisions, groups, committees, principals, officers, directors, employees, agents, independent

contractors, and persons acting on their behalf.

13.     "Staff Outline" shall refer to the following documents posted on the SEC website,

www.sec.gov: (a) "Division of Corporation Finance: Current Accounting and Disclosure

Issues," dated June 30, 2000, (b) "Current Issues and Rulemaking Projects," dated November 14,

2000, and (c) "Division of Corporation Finance: Frequently Requested Accounting and Financial

Reporting Interpretations and Guidance," dated March 31, 2001, and any subsequent

amendments or versions of these documents.

3

**B.    Instructions**

1.    "And" and "or" shall be construed both conjunctively and disjunctively.

2.    "Including" shall mean including, but not limited to.

3.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other, as appropriate in the context.

4.    You are requested to produce all documents that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, partners, directors, officers, employees, attorneys, accountants, staff, representatives or agents, or any person that is subject to your custody or control.

5.    All documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container, unless that is not possible.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

6.    Documents shall be produced in such fashion as to identify the SEC department, branch or office in whose possession the documents were located and, when applicable, the person in whose possession the documents were found and the business address of each document's custodian.

**C.    Documents to be Produced**

1.    All documents concerning the term "proved oil and gas reserves" set forth in Rule 4-10, subsections (a)(2)-(4), including the following:

4

a.  All documents concerning the drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4).

b.  All drafts of Rule 4-10(a)(2)-(4).

c.  All documents concerning any actual or contemplated amendment or modification of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

d.  All documents concerning any public commentary during the rulemaking process that led to the SEC's adoption of Rule 4-10(a)(2)-(4), including any documents concerning the definition or interpretation of the term "proved oil and gas reserves."

e.  All documents, including letters, correspondence, communications, memoranda, speeches, presentations, or articles of any kind authored by or sent from or to the SEC, concerning the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

2.  All documents concerning the terms "reasonable certainty," "reasonable doubt," and "reasonably certain" set forth in Rule 4-10, subsections (a)(2)-(4), including the following:

a.  All documents concerning the drafting, editing, review, approval or application of the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4).

b.  All documents concerning any actual or contemplated amendment or modification of the definition or interpretation of the term "reasonable certainty," "reasonable

doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

    c.    All documents concerning any public commentary during the rulemaking process that led to the SEC's adoption of Rule 4-10(a)(2)-(4), including any documents concerning the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain."

    d.    All documents, including letters, correspondence, communications, memoranda, speeches, presentations or articles of any kind authored by or sent from or to the SEC, concerning the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

3.    All documents concerning the section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including the following:

    a.    All documents concerning the drafting, editing, review, approval, or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in the Staff Outline.

    b.    All drafts of the Staff Outline.

    c.    All documents concerning any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the term "proved oil and gas reserves."

    d.    All documents, including, letters, correspondence, communications, memoranda, speeches, presentations or articles of any kind authored by or sent from or to the

6

SEC, concerning the Staff Outline's definition or interpretation of the term

"proved oil and gas reserves."

4.      All documents concerning the section entitled "Definition of Proved Reserves" set forth

in the Staff Outline, including the following:

      a.      All documents concerning the drafting, editing, review, approval, or application

        of the definition or interpretation of the terms "reasonable certainty," "reasonable

        doubt" and "reasonably certain" set forth in the Staff Outline.

      b.      All documents concerning any actual or contemplated change or modification of

        the Staff Outline's definition or interpretation of the terms "reasonable certainty,"

        "reasonable doubt" and "reasonably certain."

      c.      All documents, including, letters, correspondence, communications, memoranda,

        speeches, presentations or articles of any kind authored by or sent from or to the

        SEC, concerning the Staff Outline's definition or interpretation of the terms

        "reasonable certainty," "reasonable doubt" and "reasonably certain."

5.      All documents concerning any communications with any oil and gas company

concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved

oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set

forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas

reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

6.      All documents concerning any communications with Shell and its external auditors,

including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or

interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable

7

doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

7.    All documents concerning any communications with any analyst, researcher, commentator, professional association, or any other person employed in, associated with, or reporting on the oil and gas industry concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

8.    All documents concerning any communications with members of any law firms, accounting firms, engineering firms, consulting firms, and external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

9.    All documents the SEC considered in drafting, editing, reviewing, approving, or applying the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline.

ROBERTSON, FREILICH, BRUNO & COHEN, L.L.C.
William W. Robertson
Jeffrey A. Cohen
Owen J. McKeon
1 Riverfront Plaza, 4th Floor
Newark, New Jersey 07102
Telephone: 973-848-2100
Facsimile: 973-848-2138

MAYER, BROWN, ROWE & MAW LLP
Joseph I. Goldstein
Richard J. Morvillo
Bruce M. Bettigole
Adriaen M. Morse Jr.
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202-263-3000
Facsimile: 202-263-3300

*Counsel for Defendant Sir Philip Watts*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: ) | **CIVIL ACTION NO. 04-374 (JAP)** |
| ) | |
| **ROYAL DUTCH/SHELL TRANSPORT** ) | **Notice of Subpoena** |
| **SECURITIES LITIGATION** ) | |
| ) | |
| ) | |

PLEASE TAKE NOTICE that pursuant to Rules 30, 34 and 45 of the Federal Rules of Civil Procedure, Defendant Sir Philip Watts will take the deposition of Ronald Winfrey. A subpoena directed to Mr. Winfrey is enclosed. The deposition will take place on April 7, 2006 at the offices of Mayer, Brown, Rowe & Maw LLP, 1909 K Street NW, Washington, DC, 20006, or such other place and time as may be agreed to by the parties, beginning at 10:00 a.m. and continuing from day-to-day until completed. The deposition shall be recorded both by stenographic and videographic means.

The enclosed subpoena also seeks documents in the possession, custody or control of Mr. Winfrey. The production of said documents will take place on February 22, 2006 at the offices of Mayer, Brown, Rowe & Maw LLP, 1909 K Street, NW, Washington, DC 20006, or such other location as is mutually acceptable to the parties.

Dated: 2/7/06                    By: _____
                                     Joseph I. Goldstein
                                     Richard J. Morvillo
                                     Bruce M. Bettigole
                                     Adriaen M. Morse Jr.
                                     Mayer, Brown, Rowe & Maw LLP
                                     1909 K Street, N.W.
                                     Washington, DC 20006-1101
                                     Telephone: 202-263-3000
                                     Facsimile: 202-263-3300

                                     William W. Robertson
                                     Jeffrey A. Cohen
                                     Owen J. McKeon
                                     ROBERTSON, FREILICH, BRUNO & COHEN,
                                     L.L.C.
                                     1 Riverfront Plaza, 4th Floor
                                     Newark, New Jersey 07102
                                     Telephone: 973-848-2100
                                     Facsimile: 973-848-2138

                                     *Counsel for Sir Philip Watts*

2

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2006, I caused the foregoing Sir Philip Watts' Notice of Subpoena to be served by electronic mail on:

| | |
|---|---|
| **Bernstein Liebhard & Lifshitz, LLP**<br>Stanley D. Bernstein, Esquire<br>Michael S. Bigin, Esquire<br>Keith M. Fleischman, Esquire<br>Jeffrey M. Haber, Esquire<br>Mark T. Millkey, Esquire<br>William A.K. Titelman, Esquire<br>10 East 40th Street<br>New York, New York 10016<br>Email: bernstein@bernlieb.com<br>    bigin@bernlieb.com<br>    fleischman@bernlieb.com<br>    haber@bernlieb.com<br>    millkey@bernlieb.com<br>    titelman@bernlieb.com | **Debevoise & Plimpton LLP**<br>David C. Ware, Esquire<br>Scott N. Auby, Esquire<br>Colby A. Smith, Esquire<br>555 13th Street, N.W.<br>Washington, D.C. 20004<br>Email: dcware@debevoise.com<br>    snauby@debevoise.com<br>    casmith@debevoise.com |
| **Foley & Lardner LLP**<br>Rebecca E. Wickhem, Esquire<br>Nancy J. Sennett, Esquire<br>777 East Wisconsin Avenue<br>Milwaukee, Wisconsin 53202<br>Email: rwickhem@foley.com<br>    nsennett@foley.com<br><br>Samuel J. Winer, Esquire<br>Washington Harbour<br>3000 K Street, N.W. Suite 500<br>Washington, D.C. 20007-5109<br>Email: swiner@foley.com | **Leboef, Lamb, Greene & MacRae LLP**<br>Ralph C. Ferrara, Esquire<br>Ann M. Ashton, Esquire<br>1875 Connecticut Avenue, N.W., Suite 1200<br>Washington, D.C. 20009-5715<br>Email: rferrara@llgm.com<br>    amashton@llgm.com<br><br>Jonathan Richman, Esquire<br>125 West 55th Street<br>New York, NY 10019<br>Email: jrichman@llgm.com |
| **Hogan & Hartson LLP**<br>W. Sidney Davis, Jr., Esquire<br>875 Third Avenue<br>New York, New York 10022<br>Emails: wsdavis@hhlaw.com | **Bressler, Amery & Ross, P.C.**<br>J. Michael Riordan, Esquire<br>325 Columbia Turnpike<br>Florham Park, New Jersey 07932<br>Email: mjriordan@bressler.com |
| **Robertson, Freilich, Bruno & Cohen, LLC**<br>William W. Robertson, Esquire<br>Jeffrey A. Cohen, Esquire<br>One Riverfront Plaza, 4th Floor<br>Newark, New Jersey 07102<br>Email: wrobertson@rfbclaw.com<br>    jcohen@rfbclaw.com | **Robinson & Livelli**<br>Donald A. Robinson, Esquire<br>Leda Dunn Wettre, Esquire<br>2 Penn Plaza East<br>Newark, New Jersey 07105<br>Email: drobinson@robinsonlivelli.com<br>    lwettre@robinsonlivelli.com |

| **Hughes Hubbard & Reed LLP** | **Akin Gump Strauss Hauer & Feld LLP** |
|---|---|
| John N. Poulos, Esquire<br>Wilfred P. Coronato, Esquire<br>101 Hudson Street, Suite 3601<br>Jersey City, New Jersey 07302-3918<br>Telephone: 201-536-9220<br>Email: poulos@hugheshubbard.com<br>          coronato@hugheshubbard.com<br><br>Derek J.T. Adler, Esquire<br>William R. Maguire, Esquire<br>One Battery Park Plaza<br>New York, N.Y. 10004-1482<br>Phone: (212) 837-6000<br>Email: adler@hugheshubbard.com<br>          maguire@hugheshubbard.com | John Dowd, Esquire<br>Paul W. Butler, Esquire<br>Jeffrey M. King, Esquire<br>Evangeline C. Paschal, Esquire<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Email: pbutler@akingump.com<br>       jdowd@akingump.com<br>       jking@akingump.com<br>       epaschal@akingump.com<br><br>James L. Griffith, Jr., Esquire<br>One Commerce Square<br>2005 Market Street, Suite 2200<br>Philadelphia, Pennsylvania 19103<br>Email: jgriffith@akingump.com |
| **Linklaters** | **Lynch Keefe Bartels** |
| James R. Warnot, Jr., Esquire<br>Michael J. Osnato, Jr., Esquire<br>1345 Avenue of the Americas, 19th Floor<br>New York, New York 10150<br>Telephone: 212-424-9000<br>Email: jim.warnot@linklaters.com<br>       mike.osnato@linklaters.com | Attorneys at Law<br>John E. Keefe, Esquire<br>830 Broad Street<br>Shrewsbury, New Jersey 07702<br>Email: jekeefe@lmknet.com |

Emily R. Hanks
Mayer Brown Rowe & Maw LLP
1909 K Street, NW
Washington, D.C. 20006-1101
Email: ehanks@mayerbrownrowe.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF  COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

### SUBPOENA IN A CIVIL CASE

Case Number:[1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: Ronald Winfrey
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>04/07/2006 10:00 am |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE   Mayer Brown Rowe & Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>02/22/2006 |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Sir Philip Watts | DATE<br>Feb 7, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.      Mayer Brown Rowe & Maw LLP      (202)263-3344
1909 K Street, NW
Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| 2/08/06 @ 11:45 AM SERVED: | 100 F Street, NE Washington, DC 20549 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Carnice Day, Automated Clerk of the Office of General Counsel | Authorized to Accept |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Daniel F. Portnoy | Private Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    2/08/06
                    DATE

SIGNATURE OF SERVER
Capitol Process Services, Inc.
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER    (202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## ATTACHMENT A

**A.    Definitions**

1.    "Communication(s)" shall refer to any conversation(s), meeting(s), correspondence, electronic mail ("email"), facsimile(s), telephone call(s), and any other form of oral or written communication by which information may be conveyed.

2.    "Concerning" means relating to, referring to, discussing, evidencing, reflecting, pertaining to, describing, constituting, in connection with, or commenting on, in whole or in part. A document that "concerns" a subject need not discuss that subject exclusively; it is enough that the document mentions that subject.

3.    "Documents" are defined to have the same meaning and be equal in scope to the usage of the term in Rule 34(a) of the Federal Rule of Civil Procedure, as well as "writings" as defined by Rule 1001(a) of the Federal Rules of Evidence, and shall include all records and other tangible forms of expression in your actual or constructive possession, custody, or control, including, but not limited to, drafts, encryptions, final or finished versions, originals, copies or annotated copies, backup copies, backup logs, identical copies from different files, however and by whomever created, compiled, produced, sent, received, dated, used, maintained or stored (manually, mechanically, electronically, or otherwise), and including, but not limited to, books, papers, writings, recordings, illustrations, charts, lists, numerical data, encryption keys, decryption keys, graphs, graphics, pictures, symbolic representations, files, notes, transcriptions, offers, solicitations, audio and video recordings, email, email headers, word processor documents, hypertext (text containing HTML, SGML, XHTML, DHTML, XML, or any other text formatting, markup, and/or control tags), website data, database files, electronic newsletters, computer data, confirmations, reports, presentations, memoranda, opinions, information,

packages, journals, ledgers, worksheets, telegrams, telexes, faxes, wire messages, telephone bills,

messages, logs, notes or minutes of conversations or meetings, contracts, agreements, proposals,

advice, letters of intent, calendars, date books, diaries, schedules, agendas, time tables,

itineraries, travel logs, account statements, bank statements, financial analysis, financial and

marketing reviews, press releases, news stories, summaries, budgets, invoices, bills, records of

billings, wire transfers, drafts of money, records of payment, checks, tape recordings, or

information stored on hard disk, diskette, CD-ROM, DVD or other disc, microfilm, magnetic

tape, microfiche, any electronic media, any magnetic media, any laser media, or any other

storage device.

4.     "KPMG" shall refer to KPMG International and all of its successors, predecessors,

subsidiaries, related corporations, affiliates, network members, divisions, groups, committees,

principals, officers, directors, employees, agents, independent contractors, and persons acting on its

behalf.

5.     "Oil and gas company" shall refer to any corporation, association or other entity engaged

in "oil and gas producing activities" as defined in Rule 4-10(a)(1).

6.     "Person" shall mean any natural person, corporation, firm, partnership, association or

other business, governmental or legal entity, and includes anyone acting on behalf of any of the

foregoing.

7.     "Proved oil and gas reserves" shall include the terms "proved oil and gas reserves" and

"proved reserves" set forth in Rule 4-10(a)(2) and the Staff Outline, "proved developed oil and

gas reserves" and "proved developed reserves" set forth in Rule 4-10(a)(3) and the Staff Outline,

and "proved undeveloped oil and gas reserves" and "proved undeveloped reserves" set forth in

Rule 4-10(a)(4) and the Staff Outline.

2

8.    "PwC" shall refer to PricewaterhouseCoopers International Limited and all of its successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on its behalf.

9.    "Rule 4-10" shall refer to Rule 4-10, Regulation S-X, 17 C.F.R. § 210.4-10, "Financial accounting and reporting for oil and gas producing activities pursuant to the Federal securities laws and the Energy Policy and Conservation Act of 1975."

10.    "SEC" shall refer to the United States Securities and Exchange Commission and all of its Commissioners, divisions, groups, committees, officers, directors, employees, agents, staff, and persons acting on its behalf.

11.    "SFAS 69" shall refer to Statement of Financial Accounting Standards No. 69, "Disclosures about Oil and Gas Producing Activities."

12.    "Shell" shall refer to The Royal Dutch Petroleum Company NV and/or The "Shell" Transport and Trading Company, p.l.c. and all of their successors, predecessors, subsidiaries, related corporations, affiliates, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on their behalf.

13.    "Staff Outline" shall refer to the following documents posted on the SEC website, www.sec.gov:  (a) "Division of Corporation Finance: Current Accounting and Disclosure Issues," dated June 30, 2000, (b) "Current Issues and Rulemaking Projects," dated November 14, 2000, and (c) "Division of Corporation Finance: Frequently Requested Accounting and Financial Reporting Interpretations and Guidance," dated March 31, 2001, and any subsequent amendments or versions of these documents.

3

**B.    Instructions**

1.    "And" and "or" shall be construed both conjunctively and disjunctively.

2.    "Including" shall mean including, but not limited to.

3.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other, as appropriate in the context.

4.    You are requested to produce all documents that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, partners, directors, officers, employees, attorneys, accountants, staff, representatives or agents, or any person that is subject to your custody or control.

5.    All documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container, unless that is not possible.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

6.    Documents shall be produced in such fashion as to identify the SEC department, branch or office in whose possession the documents were located and, when applicable, the person in whose possession the documents were found and the business address of each document's custodian.

**C.    Documents to be Produced**

1.    All documents concerning the term "proved oil and gas reserves" set forth in Rule 4-10, subsections (a)(2)-(4), including the following:

a.   All documents concerning the drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4).

b.   All drafts of Rule 4-10(a)(2)-(4).

c.   All documents concerning any actual or contemplated amendment or modification of the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

d.   All documents concerning any public commentary during the rulemaking process that led to the SEC's adoption of Rule 4-10(a)(2)-(4), including any documents concerning the definition or interpretation of the term "proved oil and gas reserves."

e.   All documents, including letters, correspondence, communications, memoranda, speeches, presentations, or articles of any kind authored by or sent from or to the SEC, concerning the definition or interpretation of the term "proved oil and gas reserves" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

2.   All documents concerning the terms "reasonable certainty," "reasonable doubt," and "reasonably certain" set forth in Rule 4-10, subsections (a)(2)-(4), including the following:

a.   All documents concerning the drafting, editing, review, approval or application of the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4).

b.   All documents concerning any actual or contemplated amendment or modification of the definition or interpretation of the term "reasonable certainty," "reasonable

doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

c.    All documents concerning any public commentary during the rulemaking process that led to the SEC's adoption of Rule 4-10(a)(2)-(4), including any documents concerning the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain."

d.    All documents, including letters, correspondence, communications, memoranda, speeches, presentations or articles of any kind authored by or sent from or to the SEC, concerning the definition or interpretation of the term "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

3.    All documents concerning the section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including the following:

a.    All documents concerning the drafting, editing, review, approval, or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in the Staff Outline.

b.    All drafts of the Staff Outline.

c.    All documents concerning any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the term "proved oil and gas reserves."

d.    All documents, including, letters, correspondence, communications, memoranda, speeches, presentations or articles of any kind authored by or sent from or to the

SEC, concerning the Staff Outline's definition or interpretation of the term

"proved oil and gas reserves."

4.    All documents concerning the section entitled "Definition of Proved Reserves" set forth

in the Staff Outline, including the following:

    a.    All documents concerning the drafting, editing, review, approval, or application

of the definition or interpretation of the terms "reasonable certainty," "reasonable

doubt" and "reasonably certain" set forth in the Staff Outline.

    b.    All documents concerning any actual or contemplated change or modification of

the Staff Outline's definition or interpretation of the terms "reasonable certainty,"

"reasonable doubt" and "reasonably certain."

    c.    All documents, including, letters, correspondence, communications, memoranda,

speeches, presentations or articles of any kind authored by or sent from or to the

SEC, concerning the Staff Outline's definition or interpretation of the terms

"reasonable certainty," "reasonable doubt" and "reasonably certain."

5.    All documents concerning any communications with any oil and gas company

concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved

oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set

forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas

reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

6.    All documents concerning any communications with Shell and its external auditors,

including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or

interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable

doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

7.     All documents concerning any communications with any analyst, researcher, commentator, professional association, or any other person employed in, associated with, or reporting on the oil and gas industry concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

8.     All documents concerning any communications with members of any law firms, accounting firms, engineering firms, consulting firms, and external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10(a)(2)-(4).

9.     All documents the SEC considered in drafting, editing, reviewing, approving, or applying the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline.

ROBERTSON, FREILICH, BRUNO & COHEN, L.L.C.
William W. Robertson
Jeffrey A. Cohen
Owen J. McKeon
1 Riverfront Plaza, 4th Floor
Newark, New Jersey 07102
Telephone: 973-848-2100
Facsimile: 973-848-2138

MAYER, BROWN, ROWE & MAW LLP
Joseph I. Goldstein
Richard J. Morvillo
Bruce M. Bettigole
Adriaen M. Morse Jr.
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: 202-263-3000
Facsimile: 202-263-3300

*Counsel for Defendant Sir Philip Watts*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | ) | CIVIL ACTION NO. 04-374 (JAP) |
|  | ) |  |
| **ROYAL DUTCH/SHELL TRANSPORT** | ) | Notice of Fed. R. Civ. P. |
| **SECURITIES LITIGATION** | ) | 30(b)(6) Deposition |
|  | ) |  |

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), Defendant Sir Philip

Watts will take the deposition of the United States Securities and Exchange Commission

("SEC"). In accordance with Rule 30(b)(6), the SEC shall designate and produce at the

deposition witness(es) from its officers, directors, managing agents, or others who consent to

testify on its behalf, who are most qualified to testify on the SEC's behalf with respect to

information known or reasonably available to the SEC as to each of the topics identified in

Attachment A of the enclosed subpoena.

DCDB01 20788159.1  07-Feb-06 13:48

The deposition will take place on April 3, 2006 at the offices of Mayer, Brown, Rowe & Maw LLP, 1909 K Street NW, Washington, DC, 20006, or such other place and time as may be agreed to by the parties, beginning at 10:00 a.m. and continuing from day-to-day until completed.  The deposition shall be recorded both by stenographic and videographic means.

Dated: 2/7/06        By: _____

                       Joseph I. Goldstein
                       Richard J. Morvillo
                       Bruce M. Bettigole
                       Adriaen M. Morse Jr.
                       Mayer, Brown, Rowe & Maw LLP
                       1909 K Street, N.W.
                       Washington, DC 20006-1101
                       Telephone: 202-263-3000
                       Facsimile: 202-263-3300

                       William W. Robertson
                       Jeffrey A. Cohen
                       Owen J. McKeon
                       ROBERTSON, FREILICH, BRUNO & COHEN, L.L.C.
                       1 Riverfront Plaza, 4th Floor
                       Newark, New Jersey 07102
                       Telephone: 973-848-2100
                       Facsimile: 973-848-2138

                       *Counsel for Sir Philip Watts*

| | |
|---|---|
| **Hughes Hubbard & Reed LLP**<br>John N. Poulos, Esquire<br>Wilfred P. Coronato, Esquire<br>101 Hudson Street, Suite 3601<br>Jersey City, New Jersey 07302-3918<br>Telephone: 201-536-9220<br>Email: poulos@hugheshubbard.com<br>       coronato@hugheshubbard.com<br><br>Derek J.T. Adler, Esquire<br>William R. Maguire, Esquire<br>One Battery Park Plaza<br>New York, N.Y. 10004-1482<br>Phone: (212) 837-6000<br>Email: adler@hugheshubbard.com<br>       maguire@hugheshubbard.com | **Akin Gump Strauss Hauer & Feld LLP**<br>John Dowd, Esquire<br>Paul W. Butler, Esquire<br>Jeffrey M. King, Esquire<br>Evangeline C. Paschal, Esquire<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Email: pbutler@akingump.com<br>       jdowd@akingump.com<br>       jking@akingump.com<br>       epaschal@akingump.com<br><br>James L. Griffith, Jr., Esquire<br>One Commerce Square<br>2005 Market Street, Suite 2200<br>Philadelphia, Pennsylvania 19103<br>Email: jgriffith@akingump.com |
| **Linklaters**<br>James R. Warnot, Jr., Esquire<br>Michael J. Osnato, Jr., Esquire<br>1345 Avenue of the Americas, 19th Floor<br>New York, New York 10150<br>Telephone: 212-424-9000<br>Email: jim.warnot@linklaters.com<br>       mike.osnato@linklaters.com | **Lynch Keefe Bartels**<br>Attorneys at Law<br>John E. Keefe, Esquire<br>830 Broad Street<br>Shrewsbury, New Jersey 07702<br>Email: jekeefe@lmknet.com |

_(signature)_

Emily R. Hanks
Mayer Brown Rowe & Maw LLP
1909 K Street, NW
Washington, D.C. 20006-1101
Email: ehanks@mayerbrownrowe.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF   COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

### SUBPOENA IN A CIVIL CASE

Case Number: [1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>04/03/2006 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).  **These matters are identified in Attachment A.**

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Sir Philip Watts | DATE<br>Feb 7, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.      Mayer Brown Rowe & Maw LLP        (202)263-3344
1909 K Street, NW
Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | 2/08/06 @ 11:45 AM | PLACE |
|---|---|---|
| | SERVED: | 100 F Street, NE<br>Washington, DC 20549 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Carnice Day, Automated Clerk of the Office of General Counsel | Authorized to Accept |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Daniel F. Portnoy | Private Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___2/08/06___
　　　　　　　　　DATE

SIGNATURE OF SERVER

Capital Process Services, Inc.
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER    (202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.     "Communication(s)" shall refer to any conversation(s), meeting(s),

correspondence, electronic mail ("email"), facsimile(s), telephone call(s), and any other

form of oral or written communication by which information may be conveyed.

2.     "Concerning" means relating to, referring to, discussing, evidencing, reflecting,

pertaining to, describing, constituting, in connection with, or commenting on, in whole or

in part.  A document that "concerns" a subject need not discuss that subject exclusively; it

is enough that the document mentions that subject.

3.     "Documents" are defined to have the same meaning and be equal in scope to the

usage of the term in Rule 34(a) of the Federal Rule of Civil Procedure, as well as

"writings" as defined by Rule 1001(a) of the Federal Rules of Evidence, and shall include

all records and other tangible forms of expression in your actual or constructive

possession, custody, or control, including, but not limited to, drafts, encryptions, final or

finished versions, originals, copies or annotated copies, backup copies, backup logs,

identical copies from different files, however and by whomever created, compiled,

produced, sent, received, dated, used, maintained or stored (manually, mechanically,

electronically, or otherwise), and including, but not limited to, books, papers, writings,

recordings, illustrations, charts, lists, numerical data, encryption keys, decryption keys,

graphs, graphics, pictures, symbolic representations, files, notes, transcriptions, offers,

solicitations, audio and video recordings, email, email headers, word processor

documents, hypertext (text containing HTML, SGML, XHTML, DHTML, XML, or any

other text formatting, markup, and/or control tags), website data, database files, electronic

newsletters, computer data, confirmations, reports, presentations, memoranda, opinions,

information, packages, journals, ledgers, worksheets, telegrams, telexes, faxes, wire

messages, telephone bills, messages, logs, notes or minutes of conversations or meetings,

contracts, agreements, proposals, advice, letters of intent, calendars, date books, diaries,

schedules, agendas, time tables, itineraries, travel logs, account statements, bank

statements, financial analysis, financial and marketing reviews, press releases, news

stories, summaries, budgets, invoices, bills, records of billings, wire transfers, drafts of

money, records of payment, checks, tape recordings, or information stored on hard disk,

diskette, CD-ROM, DVD or other disc, microfilm, magnetic tape, microfiche, any

electronic media, any magnetic media, any laser media, or any other storage device.

4.    "KPMG" shall refer to KPMG International and all of its successors, predecessors,

subsidiaries, related corporations, affiliates, network members, divisions, groups, committees,

principals, officers, directors, employees, agents, independent contractors, and persons acting

on its behalf.

5.    "Oil and gas company" shall refer to any corporation, association or other entity

engaged in "oil and gas producing activities" as defined in Rule 4-10(a)(1).

6.    "Person" shall mean any natural person, corporation, firm, partnership,

association or other business, governmental or legal entity, and includes anyone acting on

behalf of any of the foregoing.

7.    "Proved oil and gas reserves" shall include the terms "proved oil and gas

reserves" and "proved reserves" set forth in Rule 4-10(a)(2) and the Staff Outline,

"proved developed oil and gas reserves" and "proved developed reserves" set forth in

Rule 4-10(a)(3) and the Staff Outline, and "proved undeveloped oil and gas reserves" and "proved undeveloped reserves" set forth in Rule 4-10(a)(4) and the Staff Outline.

8.    "PwC" shall refer to PricewaterhouseCoopers International Limited and all of its successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on its behalf.

9.    "Rule 4-10" shall refer to Rule 4-10, Regulation S-X, 17 C.F.R. § 210.4-10, "Financial accounting and reporting for oil and gas producing activities pursuant to the Federal securities laws and the Energy Policy and Conservation Act of 1975."

10.    "SEC" shall refer to the United States Securities and Exchange Commission and all of its Commissioners, divisions, groups, committees, officers, directors, employees, agents, staff, and persons acting on its behalf.

11.    "SFAS 69" shall refer to Statement of Financial Accounting Standards No. 69, "Disclosures about Oil and Gas Producing Activities."

12.    "Shell" shall refer to The Royal Dutch Petroleum Company NV and/or The "Shell" Transport and Trading Company, p.l.c. and all of their successors, predecessors, subsidiaries, related corporations, affiliates, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on their behalf.

13.    "Staff Outline" shall refer to the following documents posted on the SEC website, www.sec.gov:  (a) "Division of Corporation Finance: Current Accounting and Disclosure Issues," dated June 30, 2000, (b) "Current Issues and Rulemaking Projects," dated November 14, 2000, and (c) "Division of Corporation Finance: Frequently Requested

3

Accounting and Financial Reporting Interpretations and Guidance," dated March 31,

2001, and any subsequent amendments or versions of these documents.

14.    "And" and "or" shall be construed both conjunctively and disjunctively.

15.    "Including" shall mean including, but not limited to.

16.    The use of the singular shall be deemed to include the plural, and the use of one

gender shall include the other, as appropriate in the context.

## TOPICS OF INQUIRY

1.    The definition or interpretation of the term "proved oil and gas reserves" set forth

in Rule 4-10, subsections (a)(2)-(4), including:

    a.    The drafting, editing, review, approval or application of the definition or

        interpretation of the term "proved oil and gas reserves" set forth in Rule 4-

        10(a)(2)-(4).

    b.    Any actual or contemplated amendment or modification of the definition

        or interpretation of the term "proved oil and gas reserves" set forth in Rule

        4-10(a)(2)-(4) from December 27, 1978 to the present.

2.    The definition or interpretation of the terms "reasonable certainty," "reasonable

doubt," and "reasonably certain" set forth in Rule 4-10, subsections (a)(2)-(4), including:

    a.    The drafting, editing, review, approval or application of the definition or

        interpretation of the terms "reasonable certainty," "reasonable doubt," and

        "reasonably certain" set forth in Rule 4-10(a)(2)-(4).

    b.    Any actual or contemplated amendment or modification of the definition

        or interpretation of the term "reasonable certainty," "reasonable doubt,"

4

and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) from December 27, 1978 to the present.

3.    The section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including:

      a.    The drafting, editing, review, approval or application of the definition or interpretation of the term "proved oil and gas reserves" set forth in the Staff Outline.

      b.    Any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the term "proved oil and gas reserves."

4.    The section entitled "Definition of Proved Reserves" set forth in the Staff Outline, including:

      a.    The drafting, editing, review, approval or application of the definition or interpretation of the terms "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in the Staff Outline.

      b.    Any actual or contemplated change or modification of the Staff Outline's definition or interpretation of the terms "reasonable certainty," "reasonable doubt" and "reasonably certain."

5.    All communications with any oil and gas company concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

6.    All communications with Shell and its external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

7.    All communications with any analyst, researcher, commentator, professional association, or any other person employed in, associated with, or reporting on the oil and gas industry, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

8.    All communications with members of any law firms, accounting firms, engineering firms, consulting firms, and external auditors, including KPMG and PwC, concerning Rule 4-10(a)(2)-(4), including (a) the definition or interpretation of the terms "proved oil and gas reserves," "reasonable certainty," "reasonable doubt" and "reasonably certain" set forth in Rule 4-10(a)(2)-(4) and the Staff Outline; and (b) the disclosure of "proved oil and gas reserves" pursuant to SFAS 69 or Rule 4-10.

9.    The subject matter of all documents produced by the SEC in response to the subpoena issued by attorneys for Sir Philip Watts in this Action.

# EXHIBIT 3

MAYER
BROWN
ROWE
& MAW

March 1, 2006

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

<u>VIA FACSIMILE AND OVERNIGHT MAIL</u>

Main Tel (202) 263-3000
Main Fax (202) 263-3300
www.mayerbrownrowe.com

Kathleen Cody, Esq.
Office of the General Counsel
United States Securities and Exchange Commission
100 F Street NE
Washington, DC 20549-9612

**Joseph I. Goldstein**
Direct Tel (202) 263-3344
Direct Fax (202) 263-5344
jgoldstein@mayerbrownrowe.com

Re:    <u>In re Royal Dutch/Shell Transport Securities</u>
       <u>Litigation, Civil Action No. 04-cv-374 (D.N.J.)</u>

Dear Ms. Cody:

We received your letter dated February 22, 2006, regarding two subpoenas that were served on the SEC and three subpoenas that were served on individual employees in the SEC's Division of Corporate Finance – Roger Schwall, James Murphy and Ronald Winfrey.

Your letter takes the following positions: (1) the subpoenas served on Messrs. Schwall, Murphy, and Winfrey ("individual subpoenas") were not served properly; (2) the SEC is not required to respond to third party subpoenas directed to the SEC ("SEC subpoenas") because the SEC is not a "person" under Rule 45 of the Federal Rules; (3) the SEC objects to the subpoenas on the grounds that they are overbroad, impose an undue burden on the SEC, and seek privileged information; (4) the General Counsel is still deciding whether to authorize Messrs. Schwall, Murphy, and Winfrey to testify at depositions pursuant to the individual subpoenas; (5) Messrs. Schwall, Murphy, and Winfrey do not have "personal documents" responsive to the subpoenas; and (6) Messrs. Schwall, Murphy, and Winfrey are not authorized to produce SEC documents pursuant to 17 C.F.R. 200.30-14 and 17 C.F.R. 735-3(b)(7)(i) and (ii).

We disagree with your positions on these issues. Nonetheless, we are hopeful that the parties can negotiate the production of documents and testimony by the SEC and the individual witnesses. We have set forth below our proposal for reaching a mutual understanding on the issues presented in the SEC and individual subpoenas.

I.    **Service of Subpoenas**

Your letter states that the subpoenas directed to Messrs. Schwall, Murphy, and Winfrey "were not served in accordance with the Federal Rules of Civil Procedure." Your letter does not

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jeuregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody
March 1, 2006
Page 2

specify the reasons why you believe service of these subpoenas was improper. We believe that
the service of the individual subpoenas complied with Rule 45 of the Federal Rules.
Specifically, Rule 45(b)(1) states:

> Service of a subpoena upon a person named therein shall be made
> by delivering a copy thereof to such person and, if the person's
> attendance is commanded, by tendering to that person the fees for
> one day's attendance and the mileage allowed by law. ... Prior
> notice of any commanded production of documents and things or
> inspection of premises before trial shall be served on each party in
> the manner prescribed by Rule 5(b).

Fed. R. Civ. P. 45(b)(1). Rule 5(b) provides that a person may be served by handing a copy to
the person or "leaving it at the person's office with a clerk or other person in charge." Fed. R.
Civ. P. 5(b).

In this case, a professional process server attempted to serve Messrs. Schwall, Murphy, and
Winfrey with the subpoenas at their place of employment at the SEC. However, the security
measures at the SEC's headquarters limit accessibility to the building and its employees. The
process server was directed to the SEC's Office of General Counsel. Carnice Day, an
Automated Clerk in the Office of General Counsel, accepted service of the subpoenas. Ms. Day
represented to the process server that she was authorized to accept service. We have attached
executed proofs of service of the subpoenas for your reference.

In addition, a check was included with each individual subpoena as required by the Federal
Rules. Each check was made out to the individual being subpoenaed, in an amount consistent
with "fees for one day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1).

It is our position that the service of the individual SEC employees was proper under the Federal
Rules. However, if you disagree, we are willing to work with you to accomplish service of the
subpoenas a second time. For example, if Ms. Day was not authorized to accept service of the
individual subpoenas, we request that you agree to accept service on behalf of Messrs. Schwall,
Murphy, and Winfrey. If you are unwilling to accept service, we ask that you permit our process
server to hand deliver the subpoenas to Messrs. Schwall, Murphy, and Winfrey at the SEC
offices. We are willing to make such arrangements at their convenience. We recognize that
these individuals might prefer to be served at their place of employment rather than at their
homes, and agree to accommodate their service preference.

II.     Objections to Subpoenas Directed to the SEC

Ms. Day also accepted service of two subpoenas directed to the SEC. These subpoenas seek
documents as well as deposition testimony pursuant to Rules 30(b)(6) and 45 of the Federal
Rules. Your letter suggests that the SEC is refusing to comply with the subpoenas because it

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody
March 1, 2006
Page 3

believes the SEC is not a "person" under Rule 45 of the Federal Rules, and subpoenas directed to the SEC are accordingly invalid.

The SEC – and the District of Columbia Circuit Court of Appeals – has acknowledged the SEC's obligation to respond to subpoenas issued pursuant to Rule 45. *See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336 (D.C. Cir. 1984) (addressing motion to compel and remanding case for determination of whether documents requested in Rule 45 subpoenas directed to SEC and CFTC were privileged from disclosure). *See also Linder v. Calero-Portocarrero,* 251 F.3d 178, 180 (D.C. Cir. 2001) (explaining that "sovereign immunity does not insulate the federal government from complying with a Rule 45 subpoena"); *Tuite v. Henry,* 98 F.3d 411 (D.C. Cir. 1996) (relying on *Friedman* in addressing motion to compel subpoena directed to Department of Justice).

We are aware of the pending appeal before the District of Columbia Circuit Court of Appeals, which last Monday heard oral argument on the issue of whether a government agency is a "person" that may be served with a subpoena under Rule 45. *Yousuf v. Samantar,* Civil Action No. 05-5197 (D.C. Cir.). We believe the Court will confirm the longstanding view that government agencies may be subpoenaed in accordance with Rule 45.

Moreover, the SEC's own regulations reflect the SEC's acknowledgement that such subpoenas are valid. The Commission delegated to your office the authority to "[a]pprove non-expert, non-privileged, factual testimony by present or former staff members, and the production of non-privileged documents, when validly subpoenaed; and assert governmental privileges on behalf of the Commission in litigation where the Commission appears as a party or in response to third party subpoenas." 17 C.F.R. 200.30-14.

Because the SEC's regulations contemplate compliance with third party subpoenas, please identify and designate appropriate witnesses for testimony and produce responsive documents, as requested in the SEC subpoenas.

We will work with you in resolving the SEC's remaining objections to the SEC subpoenas. First, your letter states that the subpoenas are overbroad and unreasonable. For example, you point out that the subpoenas seek information relating to Rule 4-10 over the last 30 years. We are willing to accommodate these concerns by narrowing the scope of the subpoenas and reducing the scope of documents and testimony we are seeking from the SEC. However, we reserve our rights to seek additional information requested in the subpoenas at a later time.

As an initial matter, we agree to limit our request for information to Document Request Nos. 5, 6, 7, and 8 and Deposition Topic Nos. 5, 6, 7, and 8 (collectively, "Categories 5, 6, 7 and 8"). These Categories seek information about communications between the SEC and third parties regarding the definition of "proved oil and gas reserves" and "reasonable certainty," as set forth

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody
March 1, 2006
Page 4

in SEC Rule 4-10 and the SEC Staff Outline.[1]

The SEC's interpretation of its rules, and communications with third parties regarding these interpretations, are at the heart of the allegations in the underlying class action litigation. *See, e.g.,* Second Consolidated Amended Class Action Complaint ("Complaint") ¶¶ 126, 128, 129, 130, 136, 138, 148, 149, 179, 180, 193, 194, 195, 207, 212, 215-25, 227, 229, 232, 271, 272, 273, 277, 278, 291, 292. A primary issue in the litigation is whether defendant Royal Dutch Shell's ("Shell") supplemental information on proved oil and gas reserves ("proved reserves"), which Shell disclosed in annual SEC filings, complied with Rule 4-10's definition of proved reserves. Members of the SEC staff published the Staff Outline in June 2000 on the SEC's official web site. The Staff Outline purported to provide "guidance" in the application of Rule 4-10's definition of proved reserves. (Complaint ¶ 133.)

It is our position in the class action litigation that this Staff Outline impermissibly modified Rule 4-10 and did not comply with the requirements of the Administrative Procedures Act. In 1998, the SEC hired two petroleum engineers, Messrs. Murphy and Winfrey. Over the last eight years, Messrs. Murphy and Winfrey, as well as Mr. Schwall, communicated interpretations of Rule 4-10 by the SEC staff to members of the oil and gas industry. (*Id.*) We believe these communications impermissibly modified Rule 4-10 and caused Shell, as well as other oil and gas companies, to modify their internal guidelines that sought to apply Rule 4-10. It is our contention that this modification caused Shell to recategorize proved reserves in 2004, which in turn precipitated the underlying class action litigation.

We are seeking discovery from the SEC as part of our efforts to prove these contentions in the class action litigation. Accordingly, we request communications between the SEC and Shell and its external auditors, as reflected in Category 6 of the subpoenas. We agree to limit the scope of Categories 5, 7, and 8 by (1) limiting their range to communications that took place over the last 10 years, from January 1, 1996 to the present, rather than the last 30 years; and (2) limiting the requests to communications with the following third parties:[2]

- ExxonMobil Corp.
- BP plc
- Chevron Corp.
- ConocoPhillips

- Society of Petroleum Engineers
- Society of Petroleum Evaluation Engineers
- World Petroleum Reserves
- Ryder Scott Petroleum Consultants

---

[1]  The terms "Rule 4-10" and "Staff Outline" are defined in the attachments to the subpoenas.

[2]  This includes communications with these entities' successors, predecessors, subsidiaries, related corporations, affiliates, network members, divisions, groups, committees, principals, officers, directors, employees, agents, independent contractors, and persons acting on their behalf.

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody
March 1, 2006
Page 5

- Total SA
- El Paso Corp.
- Petróleo Brasileiro S/A (Petrobras)
- Unocal Corp.
- Repsol YPF, S.A.
- Statoil ASA
- Norsk Hydro ASA
- Eni SpA
- Lukoil Oil Co.

- Gaffney, Cline and Associates
- The Strickland Group
- DeGolyer and MacNaughton
- American Petroleum Institute
- Cambridge Energy Research Associates
- Deloitte & Touche LLP
- Ernst & Young LLP
- Arthur Anderson LLP

Again, we reserve the right to seek at a later date documents and testimony relating to communications with other third parties, as set forth in Categories 5, 7, and 8.

Second, your letter states that the subpoenas at issue seek privileged information. You identify communications between the SEC staff and the Commission as examples of such privileged information. We do not believe that the information identified in Categories 5, 6, 7, and 8 of the subpoenas can be viewed as privileged.

To the extent you are withholding such documents as privileged, please produce a privilege log explaining the nature of the privilege pursuant to Federal Rule 45(d)(2). This log should include the date, author, and recipient of each document withheld, as well as a general statement of the nature of each document and the basis for the privilege on which the document was withheld. *See Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1 (D.D.C. 1999) (explaining that a privilege log "has become, by now, the universally accepted means of asserting privileges in discovery in the federal courts," including in response to Rule 45 subpoenas, and the "[f]ailure to produce a privilege log may be deemed a waiver of the privilege") (citing, *inter alia, United States v. Exxon Corp.*, 87 F.R.D. 624, 637 (D.D.C. 1980)). The general description you provided is inadequate because it does not provide information "sufficient to enable the demanding party to contest" your claim of privilege. Fed. R. Civ. P. 45(d)(2).

We believe that our proposal addresses the SEC's concerns relating to privilege and burdensomeness. We have reduced significantly the scope of our requests in an effort to reach agreement with you. We are hopeful that our efforts will result in your willingness to cooperate

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody
March 1, 2006
Page 6

with our efforts to obtain discoverable information pursuant to the applicable SEC regulations, the Federal Rules of Civil Procedure, and governing case law.

Please confirm whether you intend to produce any documents, or designate any witnesses, in response to the subpoenas directed to the SEC.

III.     Objections to Subpoenas Directed to Messrs. Schwall, Murphy, and Winfrey

Your letter states that the SEC's General Counsel "is not inclined at this time to recommend that Messrs. Schwall, Murphy, or Winfrey be authorized to provide any testimony in this private civil action." However, you suggested that we provide the General Counsel with additional information to assist his decision-making on this point. Your letter further states that these employees are not authorized to release any SEC documents, and none of these employees has any "personal documents responsive to the subpoenas to them."

We believe that the parties can reach agreement on the production of certain categories of documents and testimony. First, we appreciate your statement that the General Counsel will further evaluate his decision regarding the individual depositions upon receipt of additional information about the subject matter of their testimony. We are happy to provide you with these details. We are most interested in the following categories of testimony with respect to these individuals:

- Their knowledge of documents produced by the SEC in response to the SEC subpoenas, and their involvement in responding to or drafting these documents;

- Their knowledge of and involvement in the Staff Outline, as defined in Categories 3 and 4 of the individual subpoenas;

- Any presentations or other communications between Messrs. Schwall, Murphy, or Winfrey, and firms or other individuals in the oil and gas industry concerning the topics identified in Categories 5 through 8 of the individual subpoenas.

You requested that we set forth in writing the questions we intended to ask Messrs. Schwall, Murphy, and Winfrey in their depositions. This request is inappropriate because it impermissibly seeks documents that are protected from disclosure by the work product doctrine. Nonetheless, we are willing to provide you with more detailed information regarding the categories of questions we would ask in the individual depositions. However, at present it is impossible for us to provide such information because we have not had an opportunity to review the SEC's documents. Once the SEC produces the documents requested in the subpoenas (as clarified in this letter), and after we have reviewed these documents, we are willing to identify for you the categories of information, and categories of documents, we would like to address during the individual depositions.

DCDB01 20790791.1 01-Mar-06 18:08

Mayer, Brown, Rowe & Maw LLP

Kathleen Cody
March 1, 2006
Page 7

Second, your letter cites to 17 .C.F.R. 200.735-3(b)(7)(i) and (ii) in stating that these individuals "do not have authority to release any SEC documents." It is unclear from your letter whether you are taking the position that (1) other individuals at the SEC would be given the authority to release the requested documents; or (2) the General Counsel has exercised his authority under 17 C.F.R. 200.30-14 and has decided not to "[a]pprove ... the production of non-privileged documents, when validly subpoenaed." If you are saying that another individual at the SEC has custody of the requested documents, we would appreciate it if you would identify this custodian. Alternatively, if you are saying that the General Counsel has exercised his regulatory authority in refusing to approve the production of these documents, we request that the General Counsel further evaluate his decision in light of the clarifying information provided in this letter.

Thank you for your time and attention to this matter. Please provide us with your response to this letter by Wednesday, March 8, 2006. Please feel free to telephone me, Andy Morris (202-263-3252), Adriaen Morse (202-263-3387), or Aimée Latimer (202-263-3453), if you would like to discuss these issues in greater detail.

Sincerely,

Joseph I. Goldstein

Enclosures

cc:   Andrew J. Morris
      Adriaen M. Morse
      Aimée D. Latimer

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF   COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   04-374 (JAP)
United States District Court for the
District of New Jersey

TO: United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw<br>1909 K Street NW Washington, DC 20006 | DATE AND TIME<br>04/03/2006 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).   These matters are identfied in Attachment A.

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant Sir Philip Watts | DATE<br>Feb 7, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.    Mayer Brown Rowe & Maw LLP    (202)263-3344
1909 K Street, NW
Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| 2/08/06 @ 11:45 AM<br>SERVED: | 100 F Street, NE<br>Washington, DC 20549 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Carnice Day, Automated Clerk of the<br>Office of General Counsel | Authorized to Accept |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Daniel F. Portnoy | Private Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    2/08/06
                    DATE

SIGNATURE OF SERVER

Capitol Process Services, Inc.
1827 18th Street, NW
Washington, DC 20009
(202) 667-0050
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

## SUBPOENA IN A CIVIL CASE

Case Number:[1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 02/28/2006 10:00 am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE   Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 02/22/2006 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6). These matters are identified in Attachment B.

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant Sir Philip Watts | Feb 7, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.     Mayer Brown Rowe & Maw LLP     (202)263-3344
1909 K Street, NW
Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE 2/08/06 @ 11:45 AM SERVED: | PLACE 100 F Street, NE Washington, DC 20549 |
|---|---|

| SERVED ON (PRINT NAME) Carnice Day, Automated Clerk of the Office of General Counsel | MANNER OF SERVICE Authorized to Accept |
|---|---|

| SERVED BY (PRINT NAME) Daniel F. Portnoy | TITLE Private Process Server |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on     2/08/06
                DATE

SIGNATURE OF SERVER
**Capitol Process Services, inc.**
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER    (202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF  COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number: [1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: Roger Schwall
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
       testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | **DATE AND TIME** |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
       in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 04/05/2006 10:00 am |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
       place, date, and time specified below (list documents or objects):
See Attachment A

| PLACE  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 02/22/2006 |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    Attorney for Defendant Sir Philip Watts *Joseph I. Goldstein* | DATE    *Feb 7, 2006* |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.       Mayer Brown Rowe & Maw LLP          (202)263-3344
                                1909 K Street, NW
                                Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE  2/08/06 @ 11:45 AM  SERVED: | PLACE  100 F Street, NE  Washington, DC 20549 |
|---|---|

| SERVED ON (PRINT NAME)  Carnice Day, Automated Clerk of the  Office of General Counsel | MANNER OF SERVICE  Authorized to Accept |
|---|---|

| SERVED BY (PRINT NAME)  Daniel F. Portnoy | TITLE  Private Process Server |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____2/08/06_____
                    DATE

SIGNATURE OF SERVER

**Capitol Process Services, Inc.**
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER
(202) 667-0050

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number: [1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: Ronald Winfrey
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
     testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
     in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 04/07/2006 10:00 am |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
     place, date, and time specified below (list documents or objects):
See Attachment A

| PLACE   Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 02/22/2006 |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant Sir Philip Watts | Feb 7, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.     Mayer Brown Rowe & Maw LLP         (202)263-3344
                             1909 K Street, NW
                             Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | |
|---|---|
| DATE 2/08/06 @ 11:45 AM<br>SERVED: | PLACE<br>100 F Street, NE<br>Washington, DC 20549 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Carnice Day, Automated Clerk of the<br>Office of General Counsel | Authorized to Accept |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Daniel F. Portnoy | Private Process Server |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____2/08/06_____
               DATE

SIGNATURE OF SERVER
Capitol Process Services, Inc.
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER (202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF   COLUMBIA

In re Royal Dutch/Shell Transport Securities Litigation

v.

## SUBPOENA IN A CIVIL CASE

Case Number: [1] 04-374 (JAP)
United States District Court for the
District of New Jersey

TO: James Murphy
United States Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Mayer Brown Rowe & Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 04/10/2006 10:00 am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE   Mayer Brown Rowe Maw | DATE AND TIME |
|---|---|
| 1909 K Street NW Washington, DC 20006 | 02/22/2006 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant Sir Philip Watts | Feb 7 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joesph I. Goldstein, Esq.      Mayer Brown Rowe & Maw LLP      (202)263-3344
1909 K Street, NW
Washington, DC 20006

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | |
|---|---|
| DATE  2/08/06 @ 11:45 AM  SERVED: | PLACE  100 F Street, NE  Washington, DC 20549 |
| SERVED ON (PRINT NAME)  Carnice Day, Automated Clerk of the Office of General Counsel | MANNER OF SERVICE  Authorized to Accept |
| SERVED BY (PRINT NAME)  Daniel F. Portnoy | TITLE  Private Process Server |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on     2/08/06
                ――――――――――――
                      DATE

SIGNATURE OF SERVER

**Capitol Process Services, Inc.**
1827 18th Street, NW
Washington, DC 20009
ADDRESS OF SERVER  (202) 667-0050

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

**EXHIBIT 4**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>IN RE ROYAL DUTCH/SHELL<br>TRANSPORT SECURITIES<br>LITIGATION | Civil Action No. 04-374 (JAP)<br>Judge Joel A. Pisano<br><br>*(Document Electronically Filed)* |

## [PROPOSED] AMENDED JOINT SCHEDULING ORDER

WHEREAS, on January 3, 2006, the Court entered a Joint Scheduling Order governing the anticipated schedule for the remainder of this consolidated class action; and

WHEREAS the Joint Scheduling Order contemplated the possibility of conducting a three-week evidentiary hearing to address "all issues related to plaintiffs' motion for class certification"; and

WHEREAS defendants Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, p.l.c. (collectively, "Shell") filed a motion to define the scope of the class-certification hearing; and

WHEREAS, on April 12, 2006, the Court held a transcribed, telephonic hearing on Shell's motion and heard extensive argument from Shell's counsel and from Lead Counsel for the putative class; and

WHEREAS, during the April 12, 2006 telephonic hearing, the Court expressed its wish to use the evidence introduced during the evidentiary hearing to make as many rulings as possible on overlapping issues, and later that day entered a Minute Order granting Shell's motion; and

WHEREAS the Court understands that some of the evidence that defendants intend to introduce relates to the so-called "conduct test" that is used when non-U.S. citizens who purchased securities on foreign markets (the "Foreign Purchasers") attempt to sue under the federal securities laws; and

WHEREAS the parties' continued dispute about whether the Foreign Purchasers satisfy the conduct test should be resolved at the earliest practicable time, to define the scope of the case; and

WHEREAS resolution of the other legal issues that Shell raised in its motion might also help define the scope of the case; and

WHEREAS the parties have requested leave to reschedule the evidentiary hearing to May 29, 2007, and also have asked the Court's permission to extend by approximately two months the subsequent dates established in the Joint Scheduling Order;

NOW, THEREFORE, it is on this 23d day of May, 2006, ORDERED that this Order shall supersede the January 3, 2006 Order and shall govern the conduct of the remainder of the case, including the evidentiary hearing contemplated by the Court's prior Order.

I.    **EVIDENTIARY HEARING ON ISSUES RELATING TO CLASS CERTIFICATION**

The May 2007 evidentiary hearing will proceed in three sequential phases:  (*i*) a bench trial on whether the Foreign Purchasers satisfy the conduct test, (*ii*) an evidentiary hearing on Shell's proposed summary-judgment motions concerning certain causation, damages, and scienter issues described below, and (*iii*) an evidentiary hearing on plaintiffs' motion for class certification.

A.    **Bench Trial on Conduct-Test Issues Relating to Foreign Purchasers**

1.    **Procedural Issues**

a.    Pursuant to Fed. R. Civ. P. 42(b), the Court will hold a separate bench trial on whether the Foreign Purchasers satisfy the conduct test, because (*i*) the conduct-test issues are sufficiently separate from the other issues in the case; (*ii*) a separate trial would be conducive to expedition and economy; (*iii*) the question whether the Foreign Purchasers satisfy the conduct test is a legal and policy question for the Court, and (*iv*) a separate trial would not infringe on any Seventh Amendment right to a trial by jury on the merits of plaintiffs' securities-law claims.

b.    The parties may present evidence relating to whether the Foreign Purchasers satisfy the conduct test.

c.    The Court understands that defendants contend that questions about whether foreign courts would recognize any judgment or settlement in this action should inform the Court's consideration of (*i*) whether the Foreign Purchasers satisfy the conduct test and (*ii*) whether certification of a worldwide class would be appropriate. The Court also understands that defendants do *not* contend that judgment-recognition concerns *alone* should determine whether the Foreign Purchasers satisfy the conduct test. Accordingly, the Court will hear evidence relating to judgment-recognition issues as part of the class-certification phase of the May 2007 evidentiary hearing, as described below, but the Court also will consider that evidence – to the extent (if any) the Court deems appropriate – in deciding whether the Foreign Purchasers satisfy the conduct test.

d.    Plaintiffs bear the burden of proving by a preponderance of the evidence that the Foreign Purchasers satisfy the conduct test.

3

2.    **Schedule**

a.    The Court will hold a pretrial conference on March 15, 2007 to address (*i*) any matters relating to the bench trial on whether the Foreign Purchasers satisfy the conduct test and (*ii*) any other matters relating to the May 2007 evidentiary hearing.

b.    The parties shall file a Final Pretrial Order by April 20, 2007 on whether the Foreign Purchasers satisfy the conduct test.

c.    The parties shall file trial briefs on the conduct test by April 20, 2007. The trial briefs shall focus on the relevant legal issues posed by the conduct test and shall simply outline, without detailing, the factual evidence the parties intend to present at the trial. The parties should try not to engage in a lengthy recitation of the facts or to submit affidavits or declarations that will duplicate the testimony they expect to present at trial. However, to the extent the parties wish to introduce additional evidence (*e.g.*, affidavits, declarations, deposition transcripts) that will *not* be presented in court, they may include that evidence in or with the trial briefs.

d.    If any *in limine* motions are necessary for the bench trial on whether the Foreign Purchasers satisfy the conduct test, the parties shall file such motions by May 4, 2007. Opposition papers shall be filed by May 14, 2007, and any replies shall be filed by May 21, 2007.

e.    The parties shall file proposed findings of fact and conclusions of law by May 18, 2007 on whether the Foreign Purchasers satisfy the conduct test.

f.    The parties shall file by May 18, 2007 any hypothetical questions they intend to put to an expert witness on direct examination concerning the conduct test.

g.   The bench trial on whether the Foreign Purchasers satisfy the conduct test shall commence on May 29, 2007, and shall continue as necessary for a comprehensive presentation of the relevant issues.

h.   Within 30 days after the end of the May 2007 evidentiary hearing, the parties may file post-trial briefs on whether the Foreign Purchasers satisfy the conduct test. Any responding briefs shall be filed 30 days after the initial briefs.

B.   **Summary-Judgment Motions on Causation, Damages, and Scienter Issues**

1.   **Procedural Issues**

a.   As part of the May 2007 hearing, the Court will receive in-court testimonial and documentary evidence in connection with defendants' anticipated motions for summary judgment.

b.   Defendants may present evidence on the following issues:

i.   Whether plaintiffs can prove loss causation for shares purchased and sold before January 9, 2004, when Shell announced the majority of the recategorized reserves at issue in this case, and whether any shares purchased before the beginning of the putative class period (April 8, 1999) should be disregarded (or, if not disregarded, how they should be treated);

ii.   Whether plaintiffs can prove transaction causation and loss causation for shares purchased after January 9, 2004;

iii.   Whether plaintiffs can prove that Shell acted with scienter before at least June 30, 2000, when the staff of the SEC's Division of Corporation Finance issued interpretive

5

guidance on the SEC's rule concerning the reporting of proved oil and natural gas reserves, and

iv.    Whether plaintiffs can recover for shares purchased during the putative class period and held until their post-class-period price recovered to (or above) the purchaser's purchase price.

c.    Plaintiffs may present responsive evidence on those issues.

d.    For each issue on which any defendant seeks summary judgment, the defendant bears the burden of establishing under Fed. R. Civ. P. 56 that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.

e.    Nothing in this Order *requires* defendants to move for summary judgment on any or all of the issues listed above. If defendants decide *not* to seek summary judgment on any or all of those issues in connection with the Court's May 2007 hearing, they shall so inform Lead Counsel and the Court as soon as practicable, but in no event later than the date on which such summary-judgment motions would be due under this Order.

2.    **Schedule**

a.    Defendants shall file their moving papers under Fed. R. Civ. P. 56, together with the statement required by Local Rule 56.1, by April 2, 2007.

b.    Plaintiffs shall file their opposition brief and response to the Rule 56.1 statement by May 11, 2007.

c.    Any memoranda of law that the parties submit shall focus on the relevant legal issues posed by the summary-judgment motions and shall simply outline, without detailing, the factual evidence the parties intend to present at the evidentiary hearing. The parties

6

should try not to engage in a lengthy recitation of the facts or to submit affidavits or declarations that will duplicate the testimony they expect to present at the hearing. However, to the extent the parties wish to introduce additional evidence (*e.g.*, affidavits, declarations, deposition transcripts) that will *not* be presented in court, they may include that evidence in or with the pre-hearing briefs.

      d.    The Court will receive in-court evidence relating to the summary-judgment motions as part of the evidentiary hearing that will begin on May 29, 2007. Presentation of evidence relating to the summary-judgment motions shall immediately follow the evidence presented during the bench trial on whether the Foreign Purchasers satisfy the conduct test, as described above.

      e.    The parties may file post-hearing submissions on the summary-judgment motions within 30 days after the end of the May 2007 evidentiary hearing. Any responsive submissions shall be filed 30 days after the initial briefs.

C.    **Class-Certification Motion**

    1.    **Procedural Issues**

      a.    As part of the May 2007 hearing, the Court will receive in-court testimonial and documentary evidence in connection with plaintiffs' motion for certification of their putative class (and any necessary subclasses) under Fed. R. Civ. P. 23(b)(3).

      b.    The parties may present evidence on any issues they believe relate to whether the putative class can be certified under Fed. R. Civ. P. 23(a) and (b)(3), including:

      i.    Whether the putative class representatives' claims are typical of those of the putative class;

      ii.    Whether the putative class representatives adequately represent the putative class;

      iii.     Whether questions allegedly common to the putative class predominate over questions affecting individual class members;

      iv.     Whether the proposed worldwide class would be superior to other methods for the fair and efficient adjudication of this controversy, and

      v.     Whether the proposed putative class period -- which runs from April 8, 1999 through March 18, 2004 -- is appropriate.

      c.     The Court understands that defendants, in opposing class certification, intend to raise issues relating to (*i*) the issues posed by the Foreign Purchasers' claims (including, without limitation, judgment-recognition issues, as discussed above), and (*ii*) the causation, damages, and scienter issues discussed above in connection with the summary-judgment motions. The Court will consider -- to the extent (if any) it deems appropriate -- the evidence adduced in the prior two phases of the evidentiary hearing when ruling on class certification. That evidence need not be presented again in the class-certification phase of the hearing. However, the parties may use the class-certification phase to present evidence about whether foreign courts would recognize any judgment or settlement in this action. The Court also will consider that evidence -- to the extent (if any) it deems appropriate -- in ruling on whether the Foreign Purchasers satisfy the conduct test.

      d.     Plaintiffs bear the burden of demonstrating to the Court's satisfaction that their proposed class meets all the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

2.     **Schedule**

a.     Plaintiffs already have filed their motion for class certification. If they wish to supplement that motion, they must do so by March 16, 2007.

b.     Defendants shall file their responses to plaintiffs' class-certification motion by May 11, 2007.

c.     Any memoranda of law that the parties submit shall focus on the relevant legal issues posed by the class-certification motion and shall simply outline, without detailing, the factual evidence the parties intend to present at the evidentiary hearing. The parties should try not to engage in a lengthy recitation of the facts or to submit affidavits or declarations that will duplicate the testimony they expect to present at the hearing. However, to the extent the parties wish to introduce additional evidence (*e.g.*, affidavits, declarations, deposition transcripts) that will *not* be presented in court, they may include that evidence in or with the pre-hearing briefs.

d.     The Court will receive in-court evidence relating to the class-certification motion as part of the evidentiary hearing that will begin on May 29, 2007. Presentation of evidence relating to the class-certification motion shall immediately follow the evidence presented in connection with defendants' summary-judgment motions, as described above.

e.     The parties may file post-hearing briefs on the class-certification motion within 30 days after the end of the May 2007 evidentiary hearing. Any responsive submissions shall be filed 30 days after the initial briefs.

D.    **Additional Dates Common to All Issues for Evidentiary Hearing**

1.    **Experts**

a.    The parties shall exchange lists of any experts they intend to use for the May 2007 hearing by September 15, 2006.

b.    Expert reports (other than those by foreign-law experts who will synthesize the reports of country-specific experts on judgment-recognition issues) must be served by October 20, 2006.

c.    If the parties wish to submit reports by experts who will synthesize the reports of country-specific experts on judgment-recognition issues, they must do so by November 3, 2006. Country-specific experts' reports, however, shall be due on October 20, 2006.

d.    Rebuttal expert reports must be served by December 15, 2006.

2.    **Discovery**

a.    All discovery to be taken in connection with the May 2007 evidentiary hearing shall close by February 23, 2007.

b.    Nothing in this Order shall affect the continuation of discovery *not* intended for use at the May 2007 hearing. However, the Court expects the parties to work together to ensure that all discovery needed for the May 2007 hearing is completed by February 23, 2007.

II.    **AMENDED CHRONOLOGICAL SCHEDULE**

A.    This section puts in chronological order the various dates listed above, together with the other dates (as amended by this Order) governing other aspects of this action.

1.    The parties shall exchange lists of any experts they intend to use for the May 2007 evidentiary hearing by **September 15, 2006.**

10

2.     Expert reports (other than those by foreign-law experts who will synthesize the reports of country-specific experts on judgment-recognition issues) in connection with the May 2007 evidentiary hearing must be served by **October 20, 2006.**

3.     If the parties wish to submit reports by experts who will synthesize the reports of country-specific experts on judgment-recognition issues, they must do so by **November 3, 2006.**

4.     Rebuttal expert reports in connection with the May 2007 evidentiary hearing must be served by **December 15, 2006.**

5.     All discovery to be taken in connection with the May 2007 evidentiary hearing shall close by **February 23, 2007.**

6.     The Court will hold a pretrial conference on **March 15, 2007** to address any matters relating to the bench trial on (*i*) whether the Foreign Purchasers satisfy the conduct test and (*ii*) any other matters relating to the May 2007 evidentiary hearing.

7.     If plaintiffs wish to supplement their motion for class certification, they must do so by **March 16, 2007.**

8.     If defendants move for summary judgment on any of the issues discussed in this Order, defendants shall file their moving papers under Fed. R. Civ. P. 56, together with the statement required by Local Rule 56.1, by **April 2, 2007.**

9.     The parties shall file a Final Pretrial Order by **April 20, 2007** on whether the Foreign Purchasers satisfy the conduct test.

10.     The parties shall file trial briefs by **April 20, 2007** on whether the Foreign Purchasers satisfy the conduct test.

11

11.    If any *in limine* motions are necessary for the bench trial on whether the Foreign Purchasers satisfy the conduct test, the parties shall file such motions by **May 4, 2007**. Opposition papers shall be filed by **May 14, 2007**, and any replies shall be filed by **May 21, 2007**.

12.    Plaintiffs shall file their brief opposing defendants' summary-judgment motions and their response to defendants' Rule 56.1 statement by **May 11, 2007**.

13.    Defendants shall file their response to plaintiffs' class-certification motion by **May 11, 2007**.

14.    The parties shall file proposed findings of fact and conclusions of law by **May 18, 2007** on whether the Foreign Purchasers satisfy the conduct test.

15.    The parties shall file by **May 18, 2007** any hypothetical questions they intend to put to an expert witness on direct examination concerning the conduct test during the May 2007 bench trial.

16.    Commencing on **May 29, 2007,** the Court will hold an evidentiary hearing consisting of three phases:  (*i*) a bench trial on whether the Foreign Purchasers satisfy the conduct test, (*ii*) an evidentiary hearing on Shell's proposed summary-judgment concerning certain causation, damages, and scienter issues described above, and (*iii*) an evidentiary hearing on plaintiffs' motion for class certification.

17.    Within **30 days** after the end of the May 2007 evidentiary hearing, the parties may file (*i*) post-trial briefs on whether the Foreign Purchasers satisfy the conduct test, (*ii*) post-hearing submissions on the summary-judgment motions, and (*iii*) post-hearing submissions on the class-certification motion.  Any responding briefs shall be filed **30 days** after the initial briefs.

12

18.    Any stipulation or motion requesting an extension of time to complete fact-related discovery (other than discovery discussed above in connection with the May 2007 evidentiary hearing) shall be submitted by **August 6, 2007.**

19.    Merits discovery (other than expert discovery, except as discussed above in connection with the May 2007 evidentiary hearing) closes by **October 5, 2007.**

20.    Expert reports on merits issues (other than those reports discussed above in connection with the May 2007 evidentiary hearing) must be served by **December 5, 2007.**

21.    Rebuttal expert reports on merits issues (other than those reports discussed above in connection with the May 2007 evidentiary hearing) must be served by **January 14, 2008.**

22.    Expert discovery on merits issues (other than discovery discussed above in connection with the May 2007 evidentiary hearing) shall close by **February 11, 2008.**

23.    Dispositive motions (other than those discussed above in connection with the May 2007 evidentiary hearing) are due by **April 14, 2008,** or at such earlier time as any party is prepared to move.

24.    Oppositions to those dispositive motions are due **60 days** from the filing of dispositive motions.

25.    Reply memoranda in support of those dispositive motions are due **60 days** from the filing of oppositions to dispositive motions.

26.    A hearing on all dispositive motions (other than those discussed above in connection with the May 2007 evidentiary hearing) shall be set for such dates and times as are ordered by the Court.

27.    Pretrial disclosures required by Fed. R. Civ. P. 26(a)(3) shall be due 60 days after entry of all orders ruling on dispositive motions.

28.    A pretrial conference (other than the conference discussed above in connection with the May 2007 evidentiary hearing) shall be set for a date and time to be ordered by the Court.

29.    Trial shall be set for a date to be ordered by the Court.

SO ORDERED.

_____

The Honorable Joel A. Pisano
United States District Judge

NYB 634285

14

# EXHIBIT 5

MAYER
BROWN
ROWE
& MAW

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel (202) 263-3000
Main Fax (202) 263-3300
www.mayerbrownrowe.com

Joseph I. Goldstein
Direct Tel (202) 263-3344
Direct Fax (202) 263-5344
jgoldstein@mayerbrownrowe.com

April 28, 2006

VIA EMAIL AND OVERNIGHT MAIL

David L. Peavler, Esq.
Assistant Director
Office of Enforcement
Fort Worth District Office
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street
Fort Worth, TX 76102-6882

Re:     In the Matter of Royal Dutch Petroleum Company
        (FW-02742)

Dear Mr. Peavler:

In connection with ongoing class action litigation, Watts subpoenaed the U.S. Securities and
Exchange Commission ("SEC") for documents and testimony regarding communications
between the SEC and Royal Dutch Shell, plc ("Shell"), and various third parties regarding Rule
4-10, Regulation S-X ("Rule 4-10"). The Office of the General Counsel began producing
responsive documents on April 4. The documents produced to date demonstrate that the
Division of Corporation Finance ("CorpFin") Staff has, through the SEC Staff Outline,[1]
speeches, and letters, created its own definition of proved oil and gas reserves in place of that
found in Rule 4-10.[2] The documents also demonstrate that the issues that contributed to Shell's
recategorization of proved reserves were common to major oil and gas industry registrants.

The CorpFin Staff's action raises serious questions about the internal functions of the agency and
its compliance with the Administrative Procedures Act. It is not surprising that the oil and gas

---

[1] As used herein, the "Staff Outline" refers to the following documents posted on the SEC website, www.sec.gov:
(1) Division of Corporation Finance: Current Accounting and Disclosure Issues (June 30, 2000); (2) Current Issues
and Rulemaking Projects (Nov. 14, 2000); and (3) Division of Corporation Finance: Frequently Requested
Accounting and Financial Reporting Interpretations and Guidance (Mar. 31, 2001), and any subsequent
amendments or versions of these documents.

[2] Commissioner Atkins' speech to the American Institute of Certified Public Accountants ("AICPA") on December
5, 2005 addressed the issue of enforcement actions based on staff interpretations. Commissioner Paul S. Atkins,
Remarks Before the American Institute of Certified Public Accountants (Dec. 5, 2005), Exhibit 1. Commissioner
Atkins stated that the SEC "should not foster a regulatory environment that relies on informal guidance as a basis for
enforcement action." Commissioner Atkins also recognized that "Enforcement actions should not be built around
staff pronouncements" and that this view "happens to be the law of the land."

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.
Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 2

industry questions whether it is appropriate that two SEC petroleum engineers should dictate the criteria to be followed by industry participants in a sector as technically challenging, dynamic, and critical to the U.S. and world economies.[3] Industry observers have noted that the major oil and gas companies have booked far fewer reserves in the past year than had been booked over the past five years.[4] This raises the question: are oil and gas companies finding fewer reserves or is this caused by the CorpFin Staff's enforcement of the restrictive definition of proved reserves in the Staff Outline?

## I.    Rule 4-10 Defines Proved Reserves

Watts' document subpoenas to the SEC, narrowed following discussions with the Office of the General Counsel,[5] sought certain documents from January 1, 1996 to the present. The produced documents indicate that, following a period of little communication on proved reserves issues, CorpFin Staff sent a flurry of comment letters to oil and gas registrants in 2002, 2003, and 2004. There appears to have been only one communication on oil and gas reserves with any of the twenty-five entities listed below since January 4, 2005. This is surprising because the correspondence reveals that listed major oil and gas companies, like Shell, disagreed with the

---

[3] The CorpFin engineers "have an unusual status at the agency. Their authority is magnified because the agency's lawyers and accountants 'won't second-guess them,' a former SEC official said. 'They are big fish in a little pond.'"  Michael Schroeder, *Tiny SEC Staff Monitors Data on Oil Reserves*. WALL ST. J. (Mar. 12, 2004), Exhibit 2.

[4] Unfortunately, most big Western oil firms are getting worse at exploration. . . . such companies had an average reserve-replacement ratio of 129% over the past five years—meaning that they found 29% more oil and gas than they pumped. . . . Strip out [additions due to takeovers and purchases] and last year's average reserve replacement falls to a meagre 87%; overall, reserves are shrinking.  The number gets even bleaker if you are interested in new discoveries, as opposed to more efficient extraction from existing fields.  Wood Mackenzie, a consultancy, estimates that the ratio then falls below 50% . . . Exxon argues that reserve-replacement ratios, as defined by America's Securities and Exchange Commission (SEC) are not the best measure of exploration success. . . . Richard Ward, of Cambridge Energy Research Associates (CERA), a consultancy, believes that the SEC's definitions not only give a distorted picture of how much oil firms have, but also deter investment by making some projects appear uneconomic.  CERA recently suggested that the Society of Petroleum Engineers, an industry group, take over the job of drawing up reserve definitions from the SEC.
Business, *Improving their fieldcraft*. THE ECONOMIST, Exhibit 3, at 73 (Apr. 15, 2006).

[5] As an initial matter, while reserving our right to seek additional responsive documents, we agreed to limit our document subpoenas to responsive documents reflecting communications between the SEC and Shell; Shell's external auditors KPMG LLP and PwC LLP; ExxonMobil Corp. ("ExxonMobil"); BP p.l.c. ("BP"); Chevron Corp.; ConocoPhillips; Total S.A. ("Total"); El Paso Corp.; Petróleo Brasileiro S/A (Petrobras); Unocal Corp.; Repsol YPF, S.A.; Statoil ASA ("Statoil"); Norsk Hydro ASA; ("Norsk Hydro") Eni SpA ("Eni"); Lukoil Oil Co.; Society of Petroleum Engineers ("SPE"); Society of Petroleum Evaluation Engineers ("SPEE"); World Petroleum Congress; Ryder Scott & Co.; Gaffney, Cline and Associates; The Strickland Group; DeGolyer and MacNaughton; American Petroleum Institute; Cambridge Energy Research Associates ("CERA"); Deloitte & Touche LLP; Ernst & Young LLP; and Arthur Andersen LLP.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 3

CorpFin Staff's interpretation and application of Rule 4-10.[6]

In the correspondence, H. Roger Schwall, Assistant Director, CorpFin, informed Shell in 2003 that, with respect to proved reserves reporting:

> The SEC has maintained its own set of proved reserves definitions because the definitions by the SPE, and other organizations, are not written for the sole objective of protection of U.S. investors. They are very generic, to be used at the discretion of the company and are described more as guidelines than as hard and fast rules that must always be adhered to.[7]

The Office of the General Counsel represents:

> that the reference in [Mr. Schwall's] letter to the SEC's "own set of proved reserves definitions" is a reference to Rule 4-10 of Regulation S-X.[8]

In addition, the Office of the General Counsel confirms that:

> Comments by the staff do not set or establish the definitions of terms in Commission rules and regulations. *See* 17 C.F.R. 202.1(d) (staff statements "do not constitute an official expression of the [SEC's] views"). *See, e.g., SEC v. National Student Mktg Corp.*, 68 F.R.D. 157, 160 (D.D.C. 1975); *Pennzoil Co. v. DOE*, 680 F.2d 156, 161-62 (Temp. Emer. Ct. App. 1982). Rule 4-10 and SFAS 69 say what they say—staff statements and opinions do not change their terms.[9]

We agree.

Rule 4-10 defines proved reserves as:

---

[6] The Office of the General Counsel has not yet produced copies of communications from oil and gas company registrants but is conducting a search for such documents. Certain of these letters and meetings with registrants are referenced in the SEC's outgoing correspondence. The Office of the General Counsel represented that CorpFin "does not maintain telephone logs or notes of telephone conversations or meetings with third parties." Letter from Katherine Cody, Esq., Assistant General Counsel to Joseph I. Goldstein (Apr. 21, 2006), Exhibit 4. It is difficult to understand how CorpFin supervises communications with registrants or conducts business in the absence of such records. Accordingly, the Office of the General Counsel was asked to "inform us what method is used by CorpFin to track what SEC Staff say to registrants, auditors, advisors, consultants, and others during telephone conversations and meetings." Letter from Joseph I. Goldstein to Katherine Cody, Esq., Assistant General Counsel (Apr. 26, 2006), Exhibit 5.

[7] Letter from H. Roger Schwall to Tim Morrison, Group Controller, Shell (July 10, 2003), Exhibit 6, at SEC00193. Mr. Schwall also stated, "We really do not wish to get into a debate of industry positions, as it is well known that an SPE paper can generally be found on any issue and support of any position on that issue." *Id.*; at SEC00192.

[8] Cody Letter (Apr. 21, 2006), *supra* note 6.

[9] *Id.* (alterations in original).

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 4

the estimated quantities of crude oil, natural gas, and natural gas liquids which geological and engineering data demonstrate with reasonable certainty to be recoverable in future years from known reservoirs under existing economic and operating conditions, i.e., prices and costs as of the date the estimate is made.[10]

Contrary to Mr. Schwall's assertion that there are "hard and fast rules that must always be adhered to," there is no definition of "reasonable certainty" in Rule 4-10 and no settled meaning for the term in the oil and gas producing industry. This is because Rule 4-10 is a principle-based standard. The SEC did not freeze the oil and gas industry's practices in the 1978 environment. Instead, after notice and public comment, the Commission issued a rule that did not define "reasonable certainty" that could adapt to evolving technology and markets. The rule remained unchanged as the oil and gas industry underwent a striking transformation in terms of technological advances, world market demands, changing political regimes, and ever-increasing oil and gas consumption patterns in North America, Europe, and Asia.

The current petroleum engineers on CorpFin Staff, Messrs. Winfrey and Murphy, joined the SEC in 1998 or 1999. In 2000, CorpFin appears to have decided that there was no settled meaning for the term "reasonable certainty" and attempted to create settled meaning by publishing the Staff Outline and requiring adherence to it without following the requirements of the Administrative Procedures Act. The CorpFin petroleum engineers told the 2000 Society of Petroleum Engineers ("SPE") conference that the SEC required compliance with the Staff Outline.[11]

Nevertheless, as recognized by the Office of the General Counsel, this attempt failed to create a new definition of proved reserves as a matter of law because SEC Staff statements cannot amend the terms of SEC rules. The SEC Staff Outline is unenforceable.

The SEC's August 24, 2004 settled, no admission no denial, enforcement action against Shell stated that Shell engaged in conduct that purportedly violated Rule 4-10.[12] CorpFin Staff sent comment letters to ExxonMobil, Total, BP, Norsk Hydro, Statoil, Eni, and others concerning the same issues. Either the reserves experts at each of these companies were also engaged in fraud or, as is the more reasonable explanation, they believed that the CorpFin Staff was improperly interpreting Rule 4-10's reasonable certainty standard for reporting proved reserves. The entire industry was at loggerheads with the CorpFin Staff on the issues criticized in the SEC Order.

## II.     CorpFin Staff Coerces Compliance With Staff Outline

The discussed documents indicate that expert professionals from major oil and gas companies disagree with the CorpFin Staff on many aspects of the definition of proved reserves. These

---

[10] Rule 4-10(a)(2), Regulation S-X, 17 C.F.R. § 210.4-10(a)(2).

[11] E.g., SEC 2000 SPE Presentation, Exhibit 7, at SEC00612.

[12] In the Matter of Royal Dutch Petroleum Company and The "Shell" Transport and Trading Co., p.l.c., Exch. Act Rel. No. 34-50233 (Aug. 24, 2004) ("SEC Order").

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 5

industry experts believe that CorpFin Staff was enforcing disclosure requirements not found in Rule 4-10 and that were more stringent than the rule's "reasonable certainty" standard.

The CorpFin Staff's correspondence with registrants generally asserts that:

> The purpose of our review process is to assist you in your compliance with the applicable disclosure requirements and to enhance the overall disclosure in your filing. We look forward to working with you in these respects. We welcome any questions you may have about our comments or on any other aspect of our review.[13]

However, the Staff does not "merely suggest" that registrants consider its views. Rather, CorpFin Staff directs oil and gas registrants to follow its restrictive interpretations of Rule 4-10's reasonable certainty requirements. The language is blunt:

> 2. . . . Unlike most of our comments, prior comment 2 was only intended as a suggestion.
>
> Unfortunately, it appears as though you misconstrued a number of our other comments, believing that they were merely suggestions.[14]

### A.     Reasonable Certainty

The CorpFin comment letters set requirements to establish "reasonable certainty" that move the standard toward "absolute certainty."[15]  For example:

- Demanding "formal approval of the [development] plan by the governing authorities" before agreeing with disclosure of proved reserves associated with a project;[16]

- Mandating that "gas sales contracts are an unavoidable requirement" for booking proved

---

[13] *E.g.*, Letter from H. Roger Schwall to Mr. Mincato, Managing Director and Chief Executive Officer, Eni S.p.A. ("Eni") (Apr. 17, 2003), Exhibit 8, at SEC00496 (directing questions regarding property disclosures to James Murphy, Petroleum Engineer).

[14] Letter from H. Roger Schwall to Charles Paris De Bollardiere, Treasurer, Total (July 11, 2003), Exhibit 9, at SEC00404 (directing questions on engineering comments to Ronald Winfrey, Petroleum Engineer)

[15] Cambridge Energy Research Associates, In Search of Reasonable Certainty: Oil and Gas Reserves Disclosure (Feb. 2005), Exhibit 10, at 15 ("2005 CERA Report). The February 2005 report by Cambridge Energy Research Associates ("CERA") was sponsored by major oil and gas companies, petroleum engineering consulting firms, and auditing firms, including: Amerada Hess; Anadarko Petroleum; Apache; BP; ChevronTexaco; ConocoPhillips; DeGolyer and MacNaughton; Deloitte & Touche; Eni; ExxonMobil; Kerr-McGee Oil and Gas; KPMG; Marathon Oil Company; Netherland, Sewell & Associates; Occidental Petroleum; PricewaterhouseCoopers; Ryder Scott; and Total.

[16] Letter from H. Roger Schwall to Daniel B. Pinkert, Corporate Secretary, BP (Dec. 9, 2003), Exhibit 11, at SEC00564 (directing questions regarding engineering comments to Ronald Winfrey, Petroleum Engineer).

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 6

reserves;[17]

- Requiring "compelling evidence" of "established, robust gas market capacity" prior to booking proved reserves;[18] and

- Refusing to recognizing the reasonable certainty of license renewals "without conclusive, unambiguous support."[19]

In light of the inherent, intended flexibility of Rule 4-10's "reasonable certainty" standard, the Staff's insistence upon strict adherence to its views—rigid, inflexible, and at odds with the views of most oil and gas industry experts—appears misplaced.

    **B.**    **Formal, Government Approvals—Kashagan Example**

Rule 4-10 does not require formal government approval of development plans to satisfy reasonable certainty. The CorpFin Staff does.

Kashagan is a large oil field project in Kazakhstan. The partners on Kashagan include Shell, ExxonMobil, BP, Total, and Eni. During 2002, the partners issued a "declaration of commerciality" for the Kashagan project. Several project partners, including Shell, booked proved reserves for Kashagan. The CorpFin Staff took exception.

In a November 2003 letter to Total, the CorpFin Staff told Total that booking proved reserves in Kashagan was improper absent formal approval of the plan of development by the host government:

    2.  In our prior comment 2, we asked, in part, that you tell us the changes in the status of development plan's approval by the Kazakh government. Your response addressed the consortium's commitment to the Kashagan project but did not address whether the Kazakh government has approved the formal plan of development. Generally, our position is that the formal plan must be approved before proved reserves can be claimed by the contractor. Without formal approval by the governing authorities, the plan's capital expenditures, timing of those expenditures and associated projected production and cash flows do not have reasonable certainty of realization. Without official approval of the consortium's formal plan of development by the Kazakh government, we will

---

[17] Letter from H. Roger Schwall to Eivind Reiten, President and Chief Executive Officer, Norsk Hydro ASA ("Norsk Hydro") (Jan. 9, 2004), Exhibit 12, at SEC00474 (directing questions regarding engineering comments to Roger Baer, Mining Engineer, and Ronald Winfrey, Petroleum Engineer).

[18] Letter from H. Roger Schwall to Daniel B. Pinkert, Corporate Secretary, BP America Inc. ("BP") (Feb. 13, 2004), Exhibit 13, at SEC00579.

[19] Letter to Total (July 11, 2003), *supra* note 14, at SEC00417.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 7

object to your claim to proved reserves in the Kashagan project.[20]

In a December 2003 letter to BP regarding proved reserves requiring government approval, the Staff commented:

> 34;e)  Where approval by the host government of a project's formal, final development plans is required, such approval generally must be accomplished before proved reserves can be validly claimed. . . . Without formal approval of the plan by the governing authorities, the estimated future production does not have reasonable certainty of realization and cannot be claimed as proved reserves.  Supplementally, affirm to us that you have not claimed significant proved reserves without such approval or amend your document to delete such volumes from your disclosed proved reserves.[21]

Following Shell's recategorization announcement in January 2004, in which Shell debooked its Kashagan reserves, industry commentators noted that Total and ExxonMobil were carrying the Kashagan reserves at year-end 2003, just as Shell was de-booking them.  Total's Chief Executive, Thierry Desmarest, commented, "We have every reason to book these reserves, we had every reason to book them last year."[22]

During a March 11, 2004 analyst meeting, an analyst asked ExxonMobil Corp. ("ExxonMobil") executives about the criteria used by for booking reserves in Kashagan.  Rex Tillerson, then ExxonMobil's President, stated:

> As you know, the standard by which the Securities and Exchange Commission holds us as to our bookings is one of 'reasonable certainty'. . . . At some point, we conclude that we are, in effect, committed to a project in terms of both our financial and technical decision to go forward. . . . There is no specific criteria regarding the government formally approving or disapproving a development plan.  Obviously, you must have the rights to the resources and you must have confidence that you can obtain all necessary approvals. . . . So our judgment—speaking directly to Kashagan—is that the issues that are outstanding, that would allow us and the consortium to make a decision to go forward, as well as the government's acceptance of the basis upon which we can go forward,—an expectation that we now have a common understanding and a common commitment to move this resource forward and confidence that, in fact, that's now in place and going to happen—that was our basis for taking the proved reserves in 2003.  We had achieved several milestones with the government—from a technical standpoint, the development concept, of which they had already indicated their approval.  The timing

---

[20] Letter from H. Roger Schwall to Charles Paris de Bollardiere, Group Treasurer, Total (Nov. 19, 2003), Exhibit 14, at SEC00425 (directing questions regarding engineering comments to Ronald Winfrey, Petroleum Engineer).

[21] Letter to BP (Dec. 9, 2003), *supra* note 16, at SEC00564.

[22] Tom Cahill, *BP Sees More Reserves Than Shell From Stake in Norwegian Field*, Bloomberg.com (Apr. 1, 2004) <http://quote.bloomberg.com/apps/news?pid=10000102&refer=uk&sid=aQcmiERGUz90#>, Exhibit 15.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 8

of their final approval of the DP&B (Development Plan and Budget) was something that was imminent. And we could see that it was imminent. We don't wait on that necessarily in every development, again, because it's a function of all those elements that I just described.[23]

Lee Raymond, ExxonMobil's then Chairman and Chief Executive Officer, added, "If what I read in the paper was correct, the statement was made that we are the most conservative and rigorous and disciplined in how we deal with the reserves issue. That applies to every decision we make on reserves. And that has been a process that has been in place for a long, long time. We make judgments on each one, consistent with that process that has been in place for a long time."[24]

At the time the SEC Staff provided comments on Kashagan in a March 29, 2006 letter to ExxonMobil, the Staff maintained that the booking was improper but appeared to have changed its mind about requiring registrants to delete the Kashagan reserves:

7. We do not concur with your attribution of proved reserves to Kashagan before the formal approval by the Kazakh government of this project's final development plan. Since you have subsequently obtained approval, we will not object to your inclusion of these reserves in your 2003 Form 10-K provided you satisfy our comments below. [Requested details regarding booked volumes.][25]

A similar concession had been made to Total in a letter dated March 11, 2004.[26]

In contrast, the SEC Order found that Shell had committed securities fraud in booking Kashagan reserves prior to the Kazakh government's formal approval of the project development plan. This is inconsistent.

### C.    Gas Contracts/Robust Gas Market

Rule 4-10 does not say that "gas sales contracts are an unavoidable requirement," "compelling evidence of established, robust gas market capacity," or "pipeline and facilities are built" are required to report proved gas reserves. The CorpFin Staff does.

---

[23] Exxon Mobil Corp., *Presentations and Q&A Session, Analyst Meeting*, at 34-35 (Mar. 10, 2004), Exhibit 16, <http://www2.exxonmobil.com/corporate/files/corporate/Transcript_2004_Analyst_Meeting.pdf>.

[24] *Id.*, at 35-36.

[25] Letter from H. Roger Schwall to Donald D. Humphreys, Vice President and Controller, ExxonMobil (Mar. 29, 2004) Exhibit 17, at SEC00487 (directing questions regarding engineering comments to Ronald Winfrey, Petroleum Engineer).

[26] Letter from H. Roger Schwall to Charles Paris de Bollardiere, Group Treasurer, Total (Mar. 11, 2004), Exhibit 18, at SEC00432 (directing questions regarding engineering comments to Ronald Winfrey, Petroleum Engineer). Based upon the produced correspondence, the Staff also seems not to have revisited with BP the issue of formal government approval of development plans.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 9

For example, during the 2000 SPE presentation, the Staff stated:

- If there is no pipeline they are stranded reserves. Not proved until:

    1) an approved sales contract exists;

    2) pipeline and facilities are built.[27]

In December 2003, the SEC Staff asked BP:

> 34.c) Affirm to us that you have gas sales contracts for those operating areas (e.g. Rest of World) that are without robust gas markets.[28]

In a February 2004 letter, the CorpFin Staff told BP:

> 39. [Y]ou have booked Australian proved gas reserves beyond the life of the sales contracts. Supplementally, tell us the portion of these claimed proved reserves that are not contracted. Explain which markets are currently available to these uncontracted volumes. Be advised that we require compelling evidence of established, robust gas market capacity for such volumes.

> You have also booked proved gas reserves in Trinidad without firm gas sales contracts. Generally, we object to such premature claims of proved reserves for those situations where a gas sales contract is necessary for a project to proceed. Affirm to us you will not claim proved reserves without an executed contract in such situations in future documents.[29]

The SEC told Statoil, concerning proved gas reserves for the Ormen Lange field, off the coast of Norway:

> 5. For the volumes that you have classified as proved reserves do you have a final approved sales contract from the purchaser(s) of the gas? If not, how many gas reserves have you contracted to sell? . . .[30]

In a letter to Norsk Hydro, also regarding Ormen Lange, CorpFin Staff stated:

> We note your statement, "Because of the increasing liquidity of the European gas market,

---

[27] SEC 2000 SPE Presentation, *supra* note 11, at SEC00607 (slide entitled "No Sales Market Established;").

[28] Letter to BP (Dec. 9, 2003), *supra* note 16, at SEC00563.

[29] Letter to BP (Feb. 13, 2004), *supra* note 18, at SEC00579.

[30] Letter from H. Roger Schwall to Eldar Saetre, Acting Chief Financial Officer, Statoil (May 24, 2004). Exhibit 19, at SEC00450 (directing questions regarding engineering comments to James Murphy, Petroleum Engineer).

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 10

Hydro no longer views having new long-term gas sales contracts in place as a prerequisite for making investment decisions for new gas fields—such as the Ormen Lange field." Be advised we believe that gas sales contracts are an unavoidable requirement for the attribution of proved gas reserves for those operating areas that are without robust gas markets.[31]

The CorpFin Staff apparently believes the North European gas market is not "robust." Meanwhile, companies make major investment decisions for gas projects without having long-term sales contracts. In any event, the requirement for gas contracts is not found in Rule 4-10 and the Staff's insistence that such contracts "are an unavoidable requirement" is wrong.

### D.    License Renewal

Production licenses and their renewal are not addressed in Rule 4-10. The only requirement is "reasonable certainty" of renewal. The SEC Staff told Norsk Hydro and Total, however, that:

We consider the history of oil and gas production license renewals by the pertinent authorities to be a prime consideration in the attribution of proved reserves. If there is an applicable record of non-renewals or no record, we would not consider the attribution of proved reserves past license expiry to be valid without conclusive, unambiguous support.[32]

There must be a standard to judge whether it is a "reasonable certainty" that a license will be renewed. But, the requirement of "conclusive, unambiguous support," not found in Rule 4-10, sets a higher bar than "reasonable certainty."

### E.    Technical Issues

In addition to the issues discussed above, there is significant industry disagreement with the CorpFin Staff regarding technical issues that arise under Rule 4-10. The SEC Order found that Shell committed fraud because of two such technical issues: reserves below the level of the lowest fluid contact, or "lowest known hydrocarbon" ("LKH") and year-end prices.

#### 1.    Lowest Known Hydrocarbon

Rule 4-10 states, "In the absence of information on fluid contacts, the lowest known structural occurrence of hydrocarbons controls the lower proved limit of the reservoir."[33] The Staff Outline states:

---

[31] Letter to Norsk Hydro (Jan. 9, 2004), *supra* note 17, at SEC00474.

[32] *Id.*, at SEC00473; Letter to Total (July 11, 2003), *supra* note 14, at SEC00417.

[33] Rule 4-10(a)(2)(i).

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 11

> In order to attribute proved reserves to legal locations adjacent to such a well (i.e. offsets), there must be conclusive, unambiguous technical data which supports reasonable certainty of production of such volumes and sufficient legal acreage to economically justify the development without going below the shallower of the fluid contact or the LKH. In the absence of a fluid contact, no offsetting reservoir volume below the LKH from a well penetration shall be classified as proved.

> Upon obtaining performance history sufficient to reasonably conclude that more reserves will be recovered than those estimated volumetrically down to LKH, positive reserve revisions should be made.

Oil and gas companies disagree with the CorpFin Staff's view that no reserves below LKH may be considered as proved under Rule 4-10. The industry has been working with 3D seismic and pressure gradient methodologies for years. Using such technology, many companies developed "information on fluid contacts" below LKH, as required by Rule 4-10, sufficient to book such reserves as proved.

The SEC Staff disagreed. For example, the CorpFin Staff told Eni that pressure gradient data was insufficient and "not consistent with the intent or spirit of the SEC rules for proved reserves" and instructed Eni to "limit proved reserves to the lowest know[n] hydrocarbon from a well penetration."[34]

In a March 2004 letter to ExxonMobil, the CorpFin Staff stated:

> 11. Your response 77 indicates that you have attributed proved reserves to intervals below lowest known hydrocarbon. Your position that "Based on the quality and consistency of the pressure gradient data, we believe that the hydrocarbon contact has been accurately determined." is not consistent with your disclosure that you require, at a minimum, well logs, pressure data, fluid samples and core data for proved reserve determination. . . . Amend your current documents to remove material volumes claimed as proved reserves that are attributed below lowest known hydrocarbon as determined by a well penetration and assessment. In future documents, refrain from disclosing any such volumes.[35]

The 2005 CERA Report, in discussing the industry's technological evolution and oil and gas companies' ability to report proved reserves more accurately than in the past, stated:

---

[34] Letter from H. Roger Schwall to Mr. Mincato, Managing Director and Chief Executive Officer, Eni (June 13, 2003), Exhibit 20, at SEC00506 (directing questions regarding engineering comments to James Murphy, Petroleum Engineer). In July 2003, Mr. Schwall told Shell that the Staff viewed use of pressure gradient data to attribute proved reserves below LKH as inappropriate and commented "Nor do we agree with your contention that your view is shared widely across the industry." Letter to Shell (July 10, 2003), *supra* note 7, at SEC00192.
[35] Letter to ExxonMobil (Mar. 29, 2004), *supra* note 25, at SEC00488.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 12

Over the past quarter century, many evolutionary and even revolutionary developments have improved the quality and accuracy of the tools available in 1978, and new and alternative methods of characterizing reservoired hydrocarbon volumes have emerged. When used in combination, these methods can provide reserves estimates that are better founded, or more "reasonably certain," than was possible at the time disclosure guidelines were put in place. Many firms use an integrated combination of these methods to inform critical investment decisions. However, under the current disclosure guidelines, the reserves estimates generated using these methods cannot be disclosed to the investing public.[36]

### 2.  Year-end Pricing

Rule 4-10 requires that companies evaluate reserves "under existing economic and operating conditions, i.e., prices and costs as of the date the estimate is made."[37] The Staff Outline states:

Existing economic and operating conditions are the product prices, operating costs, production methods, recovery techniques, transportation and marketing arrangements, ownership and/or entitlement terms and regulatory requirements that are extant on the effective date of the estimate. An anticipated change in conditions must have reasonable certainty of occurrence; the corresponding investment and operating expense to make that change must be included in the economic feasibility at the appropriate time.

Neither the Rule nor the Staff Outline specifically refer to "year-end prices." The CorpFin Staff have taken the position that oil and gas companies must use the year-end oil price, the price on the last day of the year on which the oil markets are open, in reporting proved reserves.

Some oil and gas companies, on the other hand, base reserves disclosure upon "planning premises" rather than a year-end spot price. This was in part due to their experiences during the oil price collapse of 1998 and earlier occasions and in part due to the fact that such long-term prices are what oil and gas companies actually use in evaluating and making major capital investment decisions for projects that can take years to build and decades to produce.

For example, in a July 2004 letter to ExxonMobil, the CorpFin Staff stated:

5.  We cannot agree with the use of "planning prices"—in lieu of year-end pricing—to determine your disclosed proved oil and gas reserves. In part, your response 13 states, "We believe that . . . revising proved reserve estimates to reflect December 31 prices, is not prescribed by SFAS 69 or Regulation S-X, Rule 4-10". [Rule 4-10 requires "existing economic and operating conditions", SFAS 69 ¶ 30(a) states "Future cash inflows . . . shall be computed by applying year-end prices relating to the enterprise's proved reserves

---

[36] 2005 CERA Report, *supra* note 15, at 74.

[37] Rule 4-10(a)(2).

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 13

to the year-end quantities of those reserves."][38] These are all clear guidance that only the price at year-end—the date of the estimate—is appropriate.

. . .

a) Amend your document to incorporate year-end pricing into your proved reserve estimates for all your geographic areas. Disclose these prices for each of your areas.

b) Tell us the planning prices you have used for the years 1994-2003 and your justification for the particular figures you used. . . .[39]

The CERA Report discussed "the SEC's interpretative guidance that the prices in force on the last day of a company's financial year should be used" and stated:

This latter requirement illustrates how an interpretation that may have been appropriate when the rules were put in place—an era of regulated natural gas prices (without seasonality in prices) and price controls for domestically produced oil—can be overtaken by reality. Oil has become a volatile, widely traded commodity, the price of which can vary significantly on any particular day. . . . The arbitrary choice of a price on one particular day seems at odds with the longer-term nature of the development and production cycle for oil and gas reserves. . . . All participants agreed that year-end pricing was inappropriate (for both calculating the volumes of proved reserves and the Standardized Measure [known as SMOG]). . .[40]

Oil and gas industry experts do not agree with the CorpFin Staff that Rule 4-10 requires the use of year-end prices. The industry in any event has proposed scrapping such an arbitrary standard in favor of one that better represents economic reality and the criteria on which the companies themselves base their investment decisions.[41]

III.    Shift from "Reasonable Certainty" to "Absolute Certainty"

CERA says that reserves estimation should be a process of continual learning but asserts that the SEC's "1978 system has become increasingly rigid and adversarial."[42] As discussed above, the

[38] The CorpFin Staff is stretching to require compliance with the Staff Outline. It is not clear whether the language cited in SFAS 69 relates to defining proved reserves themselves or, rather, discusses a method of computing a standardized measure of discounted future cash flows from the proved reserves.

[39] Letter from H. Roger Schwall to Donald D. Humphreys, Vice President and Controller, ExxonMobil (July 2, 2004), Exhibit 21, at SEC00494 (directing questions regarding engineering comments to Ronald Winfrey, Petroleum Engineer).

[40] 2005 CERA Report, *supra* note 15, at 94.

[41] *See* CERA, Modernizing Oil and Gas Reserves Disclosures (Feb. 2006), Exhibit 22 ("2006 CERA Report").

[42] 2005 CERA Report, *supra* note 15, at 8.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 14

Staff's directives in the comment letters lend support to this view. Additionally, during public forums with oil and gas industry experts,

> petroleum engineers Ronald Winfrey and James Murphy have bluntly argued . . . that the industry's reliance on new technologies had caused many reserve write-downs over the past few years. "Prove it to us or take it out," Mr. Murphy barked at a Society of Petroleum Evaluation Engineers Forum in October. "Investors do not believe the reserve numbers anyway," he added.[43]

As noted in the CERA Report, the SEC "appears to have shifted from 'reasonable certainty' further toward 'absolute certainty' and, in so doing, has transformed a principle-based reporting system to a rule-based one, without the kind of transparency and discussion that the SEC utilizes for other kinds of rule making."[44] In discussing the Staff position, CERA said:

> Both companies and the SEC began to treat the outcome of their clarification discussions as if they were rules—provided that a company consistently applied the agreed approach, this would support a presumption that their reserves met the test of 'reasonable certainty' in a move toward a more mechanical approach to compliance. However, these new 'rules' did not benefit from prior consultation with the industry at large and applied to particular situations. This increased the likelihood that they would not be sufficiently broad to cover a wider range of situations.[45]

Because the SEC has failed to provide constructive, expert guidance to the oil and gas industry in the area of proved oil and gas reserves definitions, the industry has responded by proposing that the SEC give way to the experts. In a follow-up report, CERA has proposed that the SEC abandon the outdated application of Rule 4-10's standards as embodied in the Staff Outline. CERA suggests instead that the SEC adopt the SPE's definitions, which are in line with industry practice and reflect the factors oil and gas companies actually employ in evaluating their reserves and making investment decisions.[46] CERA proposes a regime similar to that followed by the accounting industry, with industry experts setting the standards (similar to the Financial Accounting Standards Board) and the SEC ensuring that registrants adhere to the established industry standards.

IV.    **SEC Order Against Shell Improperly Based Upon Staff Outline**

As discussed above, Shell was charged with fraud for what many in the industry thought were correct interpretations of Rule 4-10. This section briefly identifies two by way of example.

---

[43] Schroeder, *supra* note 3.

[44] 2005 CERA Report, *supra* note 15, at 15.

[45] *Id.*, at 22-23.

[46] *See* 2006 CERA Report, *supra* note 41.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 15

### A.    Government and Regulatory Approvals

The SEC Order found that,

> Despite explicit staff guidance in 2000 and 2001 that reserves subject to significant government and regulatory approvals (e.g., production license extensions) required "a long and clear track record which supports the conclusion that such approvals and renewal are a matter of course," Shell's guidelines through 2002 failed to require sufficient assurance of such approvals and, as a result, Shell booked proved reserves for certain projects for which governmental or regulatory approvals were not sufficiently assured for there to be "reasonable certainty" of the recovery of those reserves in future years. These deficiencies impacted reserves bookings in Kazakhstan (Kashagan field) . . . .[47]

Rule 4-10 is silent on the subject of government and regulatory approvals. Rule 4-10 requires that such approvals be "reasonably certain" but does not set forth a requirement that "reasonable certainty" can only be satisfied by "a long and clear track record which supports . . . renewal [as] a matter of course."

Again, Shell was not alone in booking Kashagan reserves. As the SEC knew, prior to the issuance of the SEC Order, the reserves experts at ExxonMobil and Total had done the same.

### B.    Gas Contracts and Final Investment Decisions

The SEC Order stated that Shell's booking of proved reserves in relation to the Gorgon gas fields violated Rule 4-10 because

> Shell did not have a contract to sell Gorgon gas, had no firm development plan and had not made a Final Investment Decision.[48]

Again, Rule 4-10 does not require that there have to be contracts to sell gas, firm development plans, or final investment decision in place to establish reasonable certainty for booking proved reserves.

### V.    Conclusion

Each of the issues that contributed to Shell's recategorization of proved reserves were common to other major oil and gas industry registrants, such as formal government approvals, gas contracts/robust gas markets, license renewal, LKH, and year-end pricing. None of the key reserves issues cited as violations in the SEC Order was unique to Shell. The SEC Order against Shell is based on the Staff Outline, not Rule 4-10.

---

[47] SEC Order, at 7.

[48] *Id.*, at 9-10.

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 16

Documents produced by the Office of the General Counsel confirm what Watts has maintained in his previous submissions to the SEC.

During Project Rockford, Shell retrospectively applied its tightened October 2003 Shell Reserves Guidelines to all prior bookings. The revised guidelines were the product of three successive revisions of the guidelines by Shell's petroleum engineering staff with review by Shell's external auditors. The successive revisions represented Shell's experts' best efforts to comply with their understanding of the SEC Staff Outline. Whether or not the Staff Outline was enforceable, Shell's experts attempted to comply with it as if it were.

Shell originally intended to make the recategorization a current-period revision because it was triggered by new information from Nigeria and Oman learned during 2003. However, the CorpFin Staff insisted that Shell needed to restate earlier period filings. As an SEC filer, the company carried out the restatement as dictated by the CorpFin Staff.

Recent evidence that has come to light confirms Watts' position regarding the effect of the CorpFin Staff's actions on Shell and the oil and gas industry. As additional evidence is obtained, the SEC's burden will become more difficult to maintain and Watts' case will continue to strengthen.

We respectfully suggest that the SEC Staff end its investigation and recommend that no enforcement action be taken against Watts, a decision already taken by the United Kingdom's Financial Services Authority ("FSA") based on the same facts developed in the joint SEC/FSA investigation.

We ask that you forward a copy of this letter to the Commission along with Watts' Wells and Supplemental Wells submissions.

\* \* \*

We request that this letter be afforded confidential treatment pursuant to 17 C.F.R. § 200.83 and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Please note that this letter does not constitute a waiver of Sir Philip's attorney-client privilege. In addition, please return this letter to us at the conclusion of this inquiry.

Sincerely,

Joseph I. Goldstein

Enclosures

DCDB01 20801715.8   28-Apr-06 12:20

Mayer, Brown, Rowe & Maw LLP

David L. Peavler, Esq.
April 28, 2006
Page 17

cc: Linda C. Thomsen, Esq.
  Director, Division of Enforcement

  Brian Cartwright, Esq.
  General Counsel

  John W. White, Esq.
  Director, Division of Corporation Finance

DCDB01 20801715 8  28-Apr-06 12.20