UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
In re:                          )
                                )
ROYAL DUTCH/SHELL TRANSPORT     )
SECURITIES LITIGATION           )   1:06-mc-00248 (Kollar-Kotelly, J)
                                )   D.N.J. Civ. Action No. 04-374 (JAP)
_____)

**APPENDIX OF UNPUBLISHED DECISIONS CITED IN MEMORANDUM OF SUPPORT OF MOTION TO COMPEL COMPLIANCE OF THE SECURITIES AND EXCHANGE COMMISSION WITH RULE 45 SUBPOENA <u>DUCES TECUM</u>**

Joseph I. Goldstein (D.C. Bar No. 412240)
Andrew J. Morris (D.C. Bar No. 411865)
Adriaen M. Morse Jr. (D.C. Bar No.483347)
Aimée D. Latimer (D.C. Bar No. 476693)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1101

*Counsel for Sir Philip B. Watts*

## UNPUBLISHED DECISIONS

1. Commerce & Indus. Ins. Co. v. Grinnell Corp., Civ. Action No. 97-0775 c/w 97-0803, 2001 U.S. Dist. LEXIS 1441 (E.D. La. Feb. 2, 2001)

2. United States v. Motorola, Inc., No. Civ. A. 94-2331TFH/JMF, 1999 WL 552558, (D.D.C. May 27, 1999)

LEXSEE 2001 US DIST LEXIS 1441

**COMMERCE AND INDUSTRY INSURANCE COMPANY VERSUS GRINNELL CORPORATION, ET AL.**

CIVIL ACTION NO: 97-0775 c/w 97-0803, 98-2200 SECTION: "R" (4)

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*2001 U.S. Dist. LEXIS 1441*

**February 1, 2001, Filed; February 2, 2001, Entered**

**DISPOSITION:** [*1] Defendant's Motion for Sanctions and Contempt (doc. # 503) GRANTED IN PART and CERTIFIED TO THE DISTRICT COURT JUDGE IN PART.

**COUNSEL:** For COMMERCE AND INDUSTRY INSURANCE COMPANY, plaintiff (97-CV-775): Gary M. Zwain, Guyton Henri Valdin, Jr., Duplass, Zwain & Bourgeois, Metairie, LA.

For COMMERCE AND INDUSTRY INSURANCE COMPANY, plaintiff (97-CV-775): Miles A. Jellinek, Steven K. Gerber, Kevin J. Hughes, Cozen & O'Connor, Philadelphia, PA.

For COMMERCE AND INDUSTRY INSURANCE COMPANY, plaintiff (97-CV-775): John J. Pappas, William Roderick Lewis, Scott J. Frank, Butler, Burnette & Pappas, Tampa, FL.

For GRINNELL CORPORATION, defendant (97-CV-775): Peter A. Feringa, Jr., Marc G. Shachat, Scott Cameron Barney, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA.

For GRINNELL CORPORATION, defendant (97-CV-775): John H. Kazanjian, Mark Garbowski, Anderson Kill & Olick PC, New York, NY.

For GRINNELL CORPORATION, defendant (97-CV-775): John C. Dacus, Jeffrey S. Patterson, Hartline, Dacus, Dreyer & Kern, LLP, Dallas, TX.

For TIER-RACK CORPORATION, defendant (97-CV-775): Randall L. Kleinman, John I. Hulse, IV, Hulse & Wanek, New Orleans, LA.

For SEMCO, [*2] SWEET, & MAYERS, INC., defendant (97-CV-775): Daniel Andrew Webb, Sutterfield & Webb, LLC, New Orleans, LA.

For AMERICAN INTERNATIONAL GROUP, INC., cross-defendant (97-CV-775): Joseph Maselli, Jr., Plauche, Maselli, Landry & Parkerson, LLP, New Orleans, LA.

For AMERICAN INTERNATIONAL GROUP, INC., cross-defendant: Thorn Rosenthal, Jonathan Sherman, Cahill, Gordon & Reindel, New York, NY.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, cross-defendant (97-CV-775): Ralph Shelton Hubbard, III, Gordon Peter Wilson, Claude Frederick Bosworth, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Celeste D. Elliott, Lugenbuhl, Burke, et al, New Orleans, LA.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, cross-defendant (97-CV-775): William E. Willard, Powers & Willard, LLP, Baton Rouge, LA.

For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, cross-defendant (97-CV-775): Loree Peacock LeBoeuf, Larzelere, Picou & Wells, LLC, Metairie, LA.

For UNITED STATES OF AMERICA, movant (97-CV-775): John F. Murphy, U. S. Attorney's Office, New Orleans, LA.

For SIMPLEX TME RECORDER CO., movant (97-CV-775): Joseph Brooks, Simplex Time Recorder [*3] Co., Gardner, MA.

**JUDGES:** KAREN WELLS ROBY, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** KAREN WELLS ROBY

**OPINION:**

### ORDER AND REASONS

Before the Court for its consideration is a **Motion for Sanctions and Contempt (doc. # 503)** filed by the defendant, Grinnell Fire Protection's Systems ("Grinnell"), against former third party defendant, West Coast Liquidators ("WCL"). n1

> n1 WCL was dismissed by the Court on September 20, 2000, and is therefore no longer a party to this litigation. *See* doc. # 583.

### I. Factual and Procedural Background

#### A. The Subpoena

This matter involves a subrogation claim arising out of the March 21, 1996, MacFrugal's warehouse fire in New Orleans, Louisiana. n2 On October 1, 1999, Grinnell served a document subpoena on WCL, with a return date of October 25, 1999. Exhibit "A" to the subpoena enumerated seven (7) separate categories of documents to be produced. Category Nos. 1- 4 generally sought production of all post-fire records (*i.e.*, files, documents and correspondence) [*4] relating to MacFrugal's New Orleans warehouse and sister facility in Rancho Cucamonga, California. Category Nos. 5-7 requested production of any records identifying the product inventory and storage of plastics at the New Orleans warehouse on the date of the fire. (doc. # 503, Exhibit "A").

> n2 At the time of the fire, WCL owned MacFrugal's New Orleans warehouse and sister facility in California. WCL entered into a contract with Boardmoor Corporation to design and build its New Orleans distribution center known as the MacFrugal's warehouse. Grinnell subcontracted with Broadmoor to design and install the sprinkler system for McFrugal's warehouse.

#### B. WCL's Motion to Quash

In response, WCL filed a Motion to Quash on March 25, 1996, requesting that certain portions of the subpoena be quashed. Specifically, WCL objected to Category Nos. 2 & 3 on relevancy grounds and Nos. 5, 6, & 7 on the ground that it would be unduly burdensome to require production by the subpoena's return date. WCL did not object to [*5] Category Nos. 1 or 4, but instead represented to the Court that the records requested in Category No. 1 "either do not exist, or they have already been produced via discovery" and that the records requested in Category "No. 4 have already been produced via discovery." (doc. # 420).

WCL's motion was set for hearing on November 10, 1999. Grinnell filed a timely opposition.

#### C. The Court's Order

On December 3, 1999, the undersigned Magistrate Judge denied WCL's Motion to Quash and ordered that within ten (10) days of receipt of the order, WCL must produce: (1) with respect to Category No. 1, written certification that it had produced all relevant documentation and to enumerate for which document requests it did not have responsive discovery; and (2) with respect to Category Nos. 2, 3, 5, 6 & 7, all responsive documentation in its possession, custody or control. (doc. # 478).

The undersigned's order was not timely objected to or appealed.

#### D. Grinnell's Motion for Contempt

On January 6, 2000, Grinnell filed the instant motion, contending that WCL had not complied with the undersigned's December 3, 1999 order. n3 According to

Grinnell, it wrote to WCL on December 20, 1999, requesting [*6] that WCL comply with the Court's order and that it produce all responsive documents. However, on December 27, 1999, WCL responded and advised that it possessed a copy of its broker's claims file regarding the March 1996 fire, but because the post-fire records were not covered by the subpoena, they were irrelevant and would not be produced. (doc. # 503, Exhibits "D" & "F").

> n3 Approximately one month after Grinnell filed the motion, the District Judge on February 3, 2000, issued a discovery stay order pending the resolution of a jurisdiction issue raised by a Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by the plaintiffs. On July 20, 2000, the District Judge lifted the discovery stay order upon the motion of the plaintiffs. Thereafter, Grinnell re-noticed its motion for hearing before the undersigned on October 4, 2000.

Grinnell contends that the claims file was clearly covered by both the subpoena and this Court's subsequent discovery order and that WCL's suggestion to the contrary is disengenuous. [*7] Grinnell requests that the Court find WCL in contempt of court and that it impose appropriate sanctions.

## II. The Parties' Contentions

### A. WCL

WCL filed a timely opposition to Grinnell's motion. In it, WCL submits that it should not be adjudged in contempt of court, because: (1) at the time Grinnell's subpoena was issued and at the time of the hearing on the Motion to Quash, Lloyd Thompson's claims file was beyond the Court's subpoena power; and (2) the claims file was not covered by Grinnell's subpoena and therefore was not covered by the undersigned's December 3, 1999, Discovery Order.

### B. The Plaintiffs

In addition to WCL, the plaintiffs have also filed an opposition to Grinnell's motion, suggesting to the Court that WCL should not be held in contempt and that the Court should quash Grinnell's subpoena in so far as it calls for the production of Lloyd Thompson's claims file. First, the plaintiffs contend that the post-fire information contained in the Lloyd Thompson claims file is not relevant to the issues raised in the instant case. Alternatively, the plaintiffs request the Court to issue a protective order, prohibiting production of certain documents [*8] contained in the file, which are on plaintiff counsel's letterhead and therefore subject to the attorney client and work product privileges. (doc. # 589).

### C. Grinnell

In response, Grinnell urges the Court to disregard the plaintiffs' opposition, because as non-parties to the undersigned's December 3, 1999, Discovery Order, they lack standing to challenge WCL's failure to comply. Further, Grinnell contends that the plaintiffs waived any objections it may have had, in so much as they had ample opportunity to raise any issues of interest when the Court considered the subpoena and Motion to Quash over a year ago, but instead failed to do so. Further, neither WCL or the plaintiffs filed a motion to reconsider or an appeal of the undersigned's order. As such, Grinnell maintains that the plaintiffs and WCL are now precluded from arguing the merits of the underlying document request and Motion to Quash. (doc. # 597).

Neither WCL or the plaintiffs addressed the issues of standing and waiver.

## III. Analysis

Several issues have been presented for the Court's consideration:

> (1) Whether the Lloyd Thompson claims file was in the custody, possession or control [*9] of WCL and therefore subject to the undersigned's December 3, 1999, Discovery Order;
>
> (2) Whether the Lloyd Thompson claims file was covered by Grinnell's subpoena and therefore subject to the undersigned's December 3, 1999, Discovery Order;
>
> (3) Whether the plaintiffs have standing to challenge WCL's failure to comply with the undersigned's December 3, 1999, order; and

(4) Whether the plaintiffs' objections are timely.

Having set forth the parties' contentions and the relevant issues, the Court will now proceed with its analysis. n4

> n4 WCL and the plaintiffs also contend that in June 1999, counsel for WCL and Grinnell entered into an agreement that WCL would voluntarily attempt to secure and produce Lloyd Thompson's documents regarding the placing of insurance prior the fire. They contend however that WCL never agreed to produce Lloyd Thompson's post-fire records. Grinnell, on the other hand, denies that such an agreement was ever made.
>
> The Court notes that neither WCL or the plaintiffs provided the Court with any proof, whether written or otherwise, that such an agreement was in fact made. The Court therefore finds that it is unnecessary to address what effect, if any, such an agreement would have had on WCL's obligation to comply with Grinnell's subpoena and the Court's discovery order.

[*10]

### A. Custody, Possession or Control

The threshold issue for the Court's consideration is whether the Lloyd Thompson claims file was in the custody, possession or control of WCL and therefore subject to the undersigned's December 3, 1999, Discovery Order.

*Rule 34 of the Federal Rules of Civil Procedure* provides that documents or tangible things must be in the possession, custody or control of a party to be discoverable by the other party. *See* FED. R. CIV. P. *34 (a)(1)*. However, it is not necessary that a party have actual possession of the documents. *In re Folding Carton Antitrust Litigation, 76 F.R.D. 420 (N.D. Ill. 1977)*. Rather, production may be ordered even though the party has only the legal right to obtain the documents and the documents are beyond the forum court's jurisdiction. *Zervos v. S.S. Sam Houston, 79 F.R.D. 593 (S.D. N.Y. 1978)*. *See also Wallace v. Gen. Elec. Co., 1988 U.S. Dist. LEXIS 1868, No. 87-1236, 1988 WL 21909 (E.D. Pa. Mar. 4,1988); Buckley v. Vidal, 50 F.R.D. 271 (S.D. N.Y.1970)*. Furthermore, once a document (or other tangible thing) has been delivered to a party, it is reasonable to presume that the document [*11] is in that party's possession, custody or control. Moreover, documents within a party's possession, custody or control are subject to discovery even though they are owned by a non-party. *See Wright & Miller*, Fed. Prac. & Pro. § 2210 (R. 34), § 2210 Possession, Custody or Control (1993); *see also, Levin, Depositions and Discovery in Civil Actions, § 249, 23 Am. Jur.2d (1983)*.

In its opposition memorandum, WCL concedes that it wrote to Lloyd Thompson on August 11, 1999, and requested that it provide WCL with a copy of their file regarding MacFrugal's New Orleans warehouse. (doc. # 588, Exhibit "1"). WCI further concedes that in response, Lloyd Thompson (now called JLT Risk Solutions) forwarded a copy of the claims file to its counsel, which was received on November 11, 1999. (*Id.* at Exhibit "2").

Clearly the Lloyd Thompson claims file was in the possession, control or custody of WCL at the time of Grinnell's subpoena and the undersigned's December 3, 1999, Discovery Order. Therefore, under Rule 34, WCL was required to produce the Lloyd Thompson claims file within 10 days of the Court's order, unless the file was not covered by the subpoena.

### B. Scope of Subpoena [*12]

WCL further contends that it should not be held in contempt of court, because the Lloyd Thompson claims file was not included within the scope of the subpoena. The subpoena enumerated seven (7) categories of documents. Relevant to the instant motion are Category Nos. 1, 3 and 4. Specifically, Category No. 1 requested production of:

> 1.) **any and all files**, documents, correspondence, memoranda, notes, inspections, reports, reports of inspections **by... property insurers**, indexes, photographs and/or films, plans and drawings, and loss prevention reports **relating to the MacFrugal's warehouse located in New Orleans, Louisiana**

subsequent to March 21, 1996, through the current date.

Category No. 3 of the subpoena requested:

3.) **any and all... files**, proposals, requests, suggestions and/or recommendations **referencing and/or concerning, in any way, the New Orleans Distribution Center** and Rancho Cucamonga Distribution Center warehouses regarding storage of merchandise, placement of racks, fire prevention methods, fire protection systems including, but not limited to, underground and above ground water fire sprinkler systems subsequent [*13] **to March 21, 1996, through the current date**.

Finally, Category No. 4 requested:

4.) **any and all files**, documents, correspondence, memoranda, notes, inspections, reports, reports of inspections **by... property insurers**, indexes, photographs and/or films, plans and drawings and loss prevention reports **relating to all claims made by West Coast Liquidators and/or MacFrugal's against their insurers of the contents lost and/or destroyed in connection with the fire at the NODC on March 21, 1996.**

(doc. # 420, Exhibit "A") (emphasis added).

The Lloyd Thompson claims file was clearly covered by Category Nos. 1, 3, and 4. WCL's contention that the scope of the subpoena did not include the claims file is without merit.

### C. Standing

The plaintiffs have also filed an opposition to Grinnell's motion, suggesting to the Court that WCL should not be held in contempt. Grinnell however urges the Court to disregard the plaintiffs' opposition, because as non-parties to the undersigned's December 3, 1999 order, they lack standing standing to challenge WCL's failure to comply.

"Standing" is a legal term denoting the existence of a party's interest [*14] in the outcome of the litigation that will ensure sincere and rigorous advocacy. To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected. *Hoffman v. Hunt, 845 F. Supp. 340 (W.D. N.C. 1994).*

However, the order at issue was not directed to the plaintiffs. Therefore, they clearly have no interest in whether WCL actually complied or failed to comply with the Court's Discovery Order. Therefore, it is the Court's opinion that the plaintiffs lack standing to challenge the December 3, 1999, discovery order. Thus, the plaintiffs' objections are moot. n5

n5 The Court notes that the plaintiffs do not suggest that they failed to receive notice of the subpoena, the Motion to Quash, or this Court's December 3, 1999 discovery order. In fact, they have not provided the Court with any explanation as to why they did not raise their objections when the Court considered the document request over a year ago. Thus, the Court finds that alternatively the plaintiffs' objections are untimely. *See Maxey v. General Motors Corp., 1996 U.S. Dist. LEXIS 21149, No. 95-0060, 1996 WL 692222,* *1 (N.D. Miss. Nov. 18, 1996)(noting that although the express language of *Fed. R. Civ. P. 26* does not set limits within which a motion for protective order must be made, there is an implicit requirement that the motion be timely or seasonable). *See also,* Wright & Miller, 8 *Federal Practice & Procedure,* § 2035 (2nd Ed. 1994)(same).

[*15]

### D. Sanctions

*Rule 37(b)(2) of the Federal Rules of Civil Procedure* empowers a district court to impose "just" sanctions against a party who disobey a discovery order. *See FED. R. CIV. P. 37 (b)(2).* Under Rule 37, the court may, among other things, order the dismissal of a claim and the payment of the opposing party's expenses, including attorney's fees. Further, Rule 37 affords a district court considerable, but not unlimited, discretion

in fashioning appropriate penalties for those who disobey such an order. *Chilcutt v. United States, 4 F.3d 1313, 1320 (5th Cir. 1993), cert. denied, 513 U.S. 979 (1994).*

After much consideration, the Court finds that the sanction of reasonable attorney's fees and costs are warranted by the circumstances. n6 First, WCL concedes that in response to Grinnell's December 20, 1999, request that it comply with the Court's December 3, 1999, order and that it produce the Lloyd Thompson claims file, it instructed Grinnell that the post fire records were irrelevant to the instant case and that it would not produce the file. (doc. # 503, Exhibits "D" & "F"). However, the Court notes that in its written response [*16] to the Court's December 19, 2000, Minute Entry, WCL conceded that it promptly produced the post fire records for the Rancho Cucamonga Distribution Center. (doc. # 634). Finally, WCL concedes that it did not comply with the undersigned's order to provide written certification that it had produced all relevant documents in response to Category No. 1, until over a year later and then only in response to the Court's December 19, 2000, order.

> n6 *John v. State of Louisiana, 899 F.2d 1441 (5th Cir. 1990)* (Magistrate Judge may preside in a proceeding to determine appropriate sanctions under § 636 (b)(1)(A)). *See also* Local Rule 72.1E (stating that the following pre-trial motions shall be automatically referred to the Magistrate Judge to whom the action is allotted: "all civil discovery motions, contested motions for leave to intervene, to amend, to file a third-party complaint, for extension of time to plead, for a more definite statement and motions relative to attorney representation").

### E. [*17] Contempt

Failure to produce a pertinent document in a proceeding before a Magistrate Judge, after having been ordered to do so, constitutes a contempt of the district court for the district wherein the Magistrate sits. *See 28 U.S.C. § 636(e).* A Magistrate Judge, pursuant to Title 28 U.S.C. § 636(e), n7 may certify to the District Court Judge (or deny certification of) facts possibly constituting contempt or issue a report and recommendation pursuant to 636(b)(1)(B). The undersigned Magistrate Judge hereby attaches as Exhibit "A", its certification of facts to the presiding District Court Judge for a contempt hearing. n8

> n7 *28 U.S.C. § 636*(e) provides that: "in a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document; (4) refusal to appear after having been subpoenaed or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed before a judge of the district court would constitute contempt of such court. Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of defiance of the process of the district court or misconduct in the presence of a judge of that court."

[*18]

n8 *See, e.g. In re Hipp, Inc., 895 F.2d 1503, 1511 n. 16 (5th Cir. 1990)* (noting in dictum that, because contempt is an inherent Article III power, a Magistrate Judge does not have the authority to decide contempt motions, but must instead certify facts to the District Court Judge.)

Accordingly,

**IT IS THEREFORE ORDERED** that the defendant's **Motion for Sanctions and Contempt (doc. # 503) is hereby GRANTED IN PART and CERTIFIED TO THE DISTRICT COURT JUDGE IN PART**, as follows:

1) The defendant's motion is **GRANTED** to the extent it seeks an award of reasonable attorney's fees and costs incurred in connection with the subject motion. The defendant should submit the appropriate fee documentation to the Court, **no later than 20 days from the entry of this order**;

2) The defendant's motion is **CERTIFIED TO THE DISTRICT COURT JUDGE** to the extent it seeks an order holding WCL in contempt of court. See Exhibit "A".

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**

Exhibit "A"

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

COMMERCE [*19] AND INDUSTRY INSURANCE COMPANY VERSUS GRINNELL CORPORATION, ET AL.

CIVIL ACTION NO: 97-0775 c/w 97-0803 98-2200 SECTION: "R" (4)

CERTIFICATION OF FACTS FOR HEARING ON CONTEMPT OF COURT PURSUANT TO TITLE *28 U.S.C. § 636*(e)

2. On October 1, 1999, the defendant, Grinnell Corporation ("Grinnell") served a document subpoena on third party defendant, West Coast Liquidators ("WCL"), with a return date of October 25, 1999. Exhibit "A" to the subpoena enumerated seven (7) separate categories of documents to be produced. Category Nos. 1-4 sought production of records (*i.e.* files, documents and correspondence) regarding MacFrugal's New Orleans, Louisiana warehouse, generated subsequent to the March 21, 1996, fire. n9 (Rec. doc. # 503, Exhibit "A" ).

n9 WCL entered into a contract with Boradmoor Corporation to design and build its New Orleans distribution center known as "the MacFrugal's warehouse." Grinnell subcontracted with Broadmoor to design and install a sprinkler system in the warehouse.

[*20]

3. Category No. 1 of the subpoena requested the production of any and all files, documents, correspondence, memoranda, notes, inspections, reports, reports of inspections by consultants, experts and property insurers, indexes, photographs and/or films, plans and drawings, and loss prevention reports relating to the MacFrugal's warehouse located in New Orleans, Louisiana subsequent to March 21, 1996, through the current date.

4. Category No. 3 of the subpoena requested the production of any and all documents, correspondence, files, proposals, requests, suggestions and/or recommendations referencing and/or concerning, in any way, the New Orleans Distribution Center and Rancho Cucamonga Distribution Center warehouses regarding storage of merchandise, placement of racks, fire prevention methods, fire protection systems including, but not limited to, underground and above ground water fire sprinkler systems subsequent to March 21, 1996, through the current date.

5. Category No. 4 of the subpoena requested the production of any and all files, documents, correspondence, memoranda, notes, inspections, reports, reports of inspections by consultants, experts, and

property insurers, [*21] indexes, photographs and/or films, plans and drawings and loss prevention reports relating to all claims made by West Coast Liquidators and/or MacFrugal's against their insurers of the contents lost and/or destroyed in connection with the fire at the NODC on March 21, 1996.

6. On October 25, 1999, WCL filed a Motion to Quash, requesting that certain portions of the subpoena be quashed. (Rec. doc. # 420).

7. Specifically, WCL objected to Category Nos. 2 & 3 on relevancy grounds and Nos. 5, 6, & 7 on the ground that it would be unduly burdensome to require production by the subpoena's return date. *Id.*

8. WCL did not object to Category Nos. 1 or 4, but instead represented to the Court that the records requested in Category No. 1 "either do not exist, or they have already been produced via discovery" and that the records requested in Category No. 4 "have already been produced via discovery." *Id.*

9. On December 3, 1999, the undersigned Magistrate Judge denied WCL's Motion to Quash and ordered that within ten (10) days, WCL must produce: (1) with respect to Category No. 1, written certification that it had produced all relevant documentation and to enumerate for [*22] which document requests it did not have responsive discovery; and (2) with respect to Category Nos. 2, 3, 5, 6, & 7, all responsive documentation in its possession, custody or control. (Rec. doc. # 478).

10. The undersigned's order expressly overruled WCL's relevancy objection to Category Nos. 2 & 3. *Id.*

11. WCL did not timely file a motion to reconsider or appeal the undersigned's December 3, 1999, order.

12. WCL concedes that on August 11, 1999, it wrote to Lloyd Thompson (now called JLT Risk Solutions) and requested a copy of Lloyd's file regarding MacFrugal's New Orleans warehouse. (Rec. doc. # 588, Exhibit No. "1").

13. WCL admits that in response to WCL's August 11, 1999, letter, Lloyd Thompson sent WCL a copy of its claims file, which was received by WCL's counsel on November 11, 1999. (Rec. doc. # 588, Exhibit No. "2").

14. On December 20, 1999, Grinnell wrote to WCL and requested that it comply with the undersigned's December 3, 1999, order and that it produce all responsive documents. (doc. # 503, Exhibits "D").

15. In response to Grinnell's December 20, 1999, letter, WCL on December 27, 1999, advised Grinnell that it was in possession of Lloyd [*23] Thompson's claims file, but that because the post-fire records were not covered by the subpoena, they were irrelevant and would not be produced. (*Id.* at Exhibit "F").

16. WCL concedes that it did not produce Lloyd Thompson's claims file within the time delay provided for in the undersigned's December 3, 1999, order. (Rec. doc. # 634).

17. WCL admits however that in response to the undersigned's December 3, 1999, Discovery Order, it produced the post-fire records for MacFrugal's Rancho Cucamonga Distribution Center. *Id.*

18. On September 20, 2000, the Court dismissed WCL from the litigation. (Rec. doc. # 583).

19. On December 19, 2000, the undersigned Magistrate Judge issued a Minute Entry to WCL, ordering it to submit written proof that it complied with the undersigned's December 3, 1999, Discovery Order, in which WCL was ordered to provide the Court with written certification that it produced all relevant documents responsive to Category No. 1. and that it enumerated all documents that could not be produced because it had no responsive discovery in its possession. (Rec. doc. # 633).

20. WCL responded to the undersigned's December 19, 2000, order on [*24] December 22, 2000. (Rec. doc. # 634).

21. WCL concedes that it failed to comply with the undersigned's December 3, 1999, Discovery Order, requiring WCL to certify in writing that it had produced all relevant documents and to list all documents that could not be produced because it had no responsive discovery in its possession. *Id.*

New Orleans, Louisiana, this 31st day of January, 2001.

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**

Westlaw.

Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 1999 WL 552558 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
UNITED STATES of America, Plaintiff,
v.
MOTOROLA, INC. and Nextel Communications, Inc., Defendants.
No. Civ.A.94-2331TFH/JMF.

May 27, 1999.

MEMORANDUM ORDER

*1 In 1995, plaintiff, the United States ("the government"), and the defendants, Motorola, Inc ("Motorola") and Nextel Communications, Inc. ("Nextel"), consented to the entry of a final judgment. The government brought suit against the defendants claiming that, unless the court intervened, an agreement between the defendants would violate the Clayton Act, as amended, 15 U.S.C.A. § 18 (1997). A provision of that judgment prohibited Nextel from availing itself of a certain opportunity it currently has and Nextel now seeks modification of that provision pursuant to Fed.R.Civ.P. 60(b)(5). The window of opportunity will soon close. Judge Hogan will hold a hearing on June 14, 1999 on Nextel's motion and discovery is on an expedited schedule.

Nextel has served upon the government a notice of deposition under Fed.R.Civ.P. 30(b)(6), which demands that the Antitrust Division designate a witness to be deposed concerning that Division's knowledge and expectations concerning three specific topics.

The government now seeks a protective order prohibiting the taking of the deposition on the grounds that courts only permit a party to take the deposition of opposing counsel when (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of Nextel's case. The government claims that Nextel cannot meet any of these requirements.

The government's reliance on cases which deal with a party's deposing of opposing counsel is misplaced. This is not a case in which the Torts Division defended the government in a case premised on a collision between plaintiff's car and a postal truck where the judicial reluctance to have one party invade the thought processes of its opponent's counsel would be most understandable. While I am new to this case, the papers I have already seen convince me that this is a complicated antitrust case in which the Antitrust Division concluded that it should settle the case only after it had informed itself of the economic implications of the proposed settlement. It sought information from scientific disciplines, ascertained the consequences of its decisions for the relevant segments of the economy, and then reached a decision which it could justify as a legitimate and principled exercise of its discretion. It therefore functioned much more like an administrative agency concerned with the impact of its decision on the economy than it did a litigating arm of the government whose only concern is the federal fisc. The difference between what the government attorneys did in this case and what lawyers do in the ordinary case cautions me against equating them and relying on the cases upon which Nextel relies. Instead, that the Division's decision was animated by economic concerns weighs in favor of public disclosure rather than against it at least to the point of the distinction I have drawn. When a decision by a government agency affects entire segments of the economy and there is grounds for inquiry into the knowledge that agency had when it made the decision, the case for disclosure is always stronger than the case for secrecy and that interest overwhelms the interest in preventing lawyers from taking each other's depositions unnecessarily.

*2 If I am correct in my perception that this case cannot be equated to the ordinary case, then the restrictions the government would impose on discovery do not apply and we are returned to the liberal standard of Fed.R.Civ.P. 26(b)(1). To grant the government's motion, I would have to conclude that it is impossible for Nextel to ask the Antitrust Division's designated witness a single question that has the reasonable likelihood of leading to the discovery of admissible evidence. While the government may ultimately be proven correct in its protest that only what *Nextel* anticipated might occur is relevant to whether Nextel should escape from the consent decree, it cannot be said at this point that what the Division itself knew is irrelevant. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1999 WL 552558 (D.D.C.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

Division's knowledge may cast light on what Nextel knew or at least provide Judge Hogan with the vital understanding of what the parties contemplated and anticipated when they agreed to the final judgment. I note in this context that in opposing the relief Nextel has requested, the government discusses the parties mutual awareness that "wireless service markets were changing as a result of technological innovation and modification in FCC regulations," and the government's analysis (contemporaneous with the consent decree) compelling it to conclude that there would not be "competitively significant entry into the dispatch markets by firms outside of the 900 MHZ band post-decree." *Memorandum of the United States in Opposition to Nextel's Motion to Vacate the 1995 Consent Decree* at 7-8. Nextel can understandably argue that before the government relies on assertions such as this, bearing on the parties' mutual awareness of the government's expectations, it must be permitted discovery into the government's knowledge and expectations when the consent decree was entered. Given the broad discovery standard, it cannot be said, with the certainty that would permit the extraordinary relief of prohibiting all discovery into this topic, that it is impossible for the discovery Nextel seeks to lead to admissible evidence.

The government is also quite correct to point out that the deposition of the Antitrust Division may raise issues of attorney work product and deliberative process. As to the former, it applies under the Federal Rules only to "documents and tangible things." Fed.R.Civ.P 26(b)(3). Assuming that the penumbra of that rule reaches an attorney's testimony, the privilege has temporal and motivational dimensions and may yield to a showing of need and the inability to secure the information from any other means. *See Evans v. Atwood,* 177 F.R.D. 1 (D.D.C.1997). We also know that the deliberative process privilege applies only to pre-decisional discussions, that it pertains to the "give and take" of the consultative process, and that it cannot be used to shield the reasoning behind a final governmental decision. This privilege may also yield to a showing of need. *See, e.g., Hinckley v. United States,* 140 F.3d 277 (D.C.Cir.1998); *Tax Analysts v. Internal Revenue Service,* 117 F.3d 607, 615-617 ( D.C.Cir.1997); *Army Times Publishing Co. v. Department of the Air Force,* 998 F.2d 1067 (D.C.Cir.1993); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854 (D.C.Cir.1980). The application of these privileges, of course, depends entirely on the facts of each case as to the creation of the document and its use. The pleadings filed raise only the possibility that these privileges may apply to the questions to be asked during the deposition. It would be a gross abuse of my responsibilities to say on this record that it is impossible for Nextel to ask questions that will not be covered by either or both privileges. Instead, I am obliged to rule on the application of each privilege on a question by question basis as I would on their application to each document if the discovery involved documents or if this were a Freedom of Information case. *See, e.g., Evans v. Atwood, supra; Samuel Gruber Education Project v. United States Department of Justice,* 24 F.Supp.2d 1 (D.D.C.1998). I cannot excuse myself from the responsibilities of ruling on the application to each specific inquiry and restricting the application of the privilege to its proper scope merely because the form of the inquiry, a deposition, is different from the forms more frequently encountered.

*3 Accordingly, it is hereby,

ORDERED that the government's motion for a protective order [# 68] is DENIED.

It is FURTHER ORDERED that the deposition of the Antitrust Division shall be taken before me on Tuesday, June 1, 1999, beginning at 9 a.m. at the United States District Courthouse, in courtroom 27. Nextel shall provide a court reporter.

SO ORDERED.

D.D.C.,1999.  
U.S. v. Motorola, Inc.  
Not Reported in F.Supp.2d, 1999 WL 552558 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:94cv02331 (Docket) (Oct. 27, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.