# EXHIBIT 2





U.S. Securities and Exchange Commission

**U.S. SECURITIES AND EXCHANGE COMMISSION**

**Litigation Release No. 19693 / May 10, 2006**

***SEC v. Morgan Stanley & Co. Incorporated*, Civil Action No. 06 CV 0882 (RCL) (D.D.C.)**

**Morgan Stanley Sued for Repeated E-Mail Production Failures; Morgan Stanley Agrees to Pay a $15 Million Penalty and Undertake Reforms in Settlement**

The Securities and Exchange Commission announced the filing of a civil injunctive action against Morgan Stanley & Co. Incorporated (Morgan Stanley) for failing to produce tens of thousands of e-mails during the Commission's IPO and Research Analyst investigations from December 11, 2000 through at least July 2005. The Commission alleges in its complaint that Morgan Stanley did not diligently search for back-up tapes containing responsive e-mails until 2005. Morgan Stanley also failed to produce responsive e-mails because it over-wrote back-up tapes. The complaint further alleges that Morgan Stanley made numerous misstatements regarding the status and completeness of its productions; the unavailability of certain documents; and its efforts to preserve requested e-mail. The Commission charged Morgan Stanley with violating the provisions of the federal securities laws requiring Morgan Stanley, a regulated broker-dealer, to timely produce its records and documents to the Commission.

Morgan Stanley has agreed to settle this matter. Without admitting or denying the allegations of the complaint, Morgan Stanley has consented to a final judgment that permanently enjoins Morgan Stanley from violating Section 17(b) of the Securities Exchange Act of 1934 (Exchange Act) and Exchange Act Rule 17a-4(j) and orders the firm to pay a $15 million civil penalty, $5 million of which will be paid to NASD and the New York Stock Exchange, Inc. in separate related proceedings. Morgan Stanley also has agreed to adopt and implement policies, procedures and training focused on the preservation and production of e-mail communications. It will also hire an independent consultant to review these reforms. The settlement terms are subject to court approval.

The Commission's complaint, filed in the United States District Court for the District of Columbia, includes the following allegations:

- Beginning in December 2000 and continuing through October 2004, the Commission issued subpoenas and document requests to Morgan Stanley for e-mails and back-up tapes containing e-mail in the IPO and Research Analyst investigations. The Commission sought e-mails from 1999 through 2002.

- Morgan Stanley did not search diligently for back-up tapes containing responsive e-mails until 2005. Consequently, Morgan Stanley failed to timely produce e-mails contained on thousands of back-up tapes that were readily accessible. These tapes have yielded tens of thousands

of responsive e-mails.

- Despite Morgan Stanley's assertion in both the IPO and Research Analyst investigations that it had not retained any 1999 tapes that backed-up e-mail, numerous back-up tapes from 1999 existed and were located by Morgan Stanley beginning in May 2004. However, Morgan Stanley did not disclose its discovery of these tapes until late October 2004, after the Commission began investigating Morgan Stanley's e-mail production failures.

- Morgan Stanley also failed for months to produce e-mails sought in the Research Analyst investigation because it delayed loading millions of e-mails into its e-mail archive database (the E-Mail Archive) and searching them for responsive e-mails. In mid-2004, the firm had told the Commission staff that its e-mail productions were "complete." In fact, this process was not "complete," and Morgan Stanley made the loading of these e-mails into the E-Mail Archive a low priority.

- In addition, Morgan Stanley failed to produce responsive e-mails by over-writing back-up tapes after receiving Commission subpoenas and requests despite its repeated representations to the Commission and the staff that all over-writing had ceased in January 2001. Through at least December 2002, Morgan Stanley's continued over-writing destroyed at least two hundred thousand e-mails, including some e-mails which likely were responsive to the Commission's subpoenas and requests in the IPO and Research Analyst investigations.

- The Commission investigated Morgan Stanley's production failures after receiving an anonymous tip alleging that Morgan Stanley had destroyed e-mails and failed to produce e-mails in the IPO and Research Analyst investigations. According to the anonymous tip, Morgan Stanley had not disclosed to the Commission the existence of relevant e-mails.

- Morgan Stanley's repeated violations of its production obligations compromised the Commission's ability to effectively investigate and determine whether Morgan Stanley had complied with the federal securities laws. Morgan Stanley's conduct delayed the Research Analyst investigation and prejudiced both the IPO and Research Analyst investigations by depriving the Commission of evidence and potential sources of information relevant to those investigations for years, and in some cases, permanently.

➤ SEC Complaint in this matter

*http://www.sec.gov/litigation/litreleases/2006/lr19693.htm*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**
**100 F Street, N.E.**
**Washington, D.C. 20549,**

**Plaintiff,**

**v.**

**MORGAN STANLEY & CO. INCORPORATED,**
**1585 Broadway**
**New York, New York 10036**

**Defendant.**

**Civ. No. 060882 (RCL)**

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges the following against defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley" or "the firm"):

1. From December 11, 2000 through at least July 2005, Morgan Stanley failed to produce tens of thousands of e-mails sought by Commission subpoenas and other requests issued in the course of two Commission investigations: an investigation into Morgan Stanley's practices in allocating shares of stock in initial public offerings ("the IPO Investigation") and an investigation into conflicts of interest between the firm's research and investment banking practices ("the Research Analyst Investigation"). As a result, Morgan Stanley violated the provisions of the federal securities laws requiring Morgan Stanley, a regulated broker-dealer, to timely produce its records and documents to the Commission.

2. Morgan Stanley did not search diligently for back-up tapes containing responsive e-mails until 2005, over four years after being served with Commission subpoenas and requests in the two investigations. As a result, Morgan Stanley failed to timely produce e-mails contained on thousands of back-up tapes. These back-up tapes were readily accessible to Morgan Stanley in its offices and the facilities of its off-site storage providers ("Storage Facilities"). To date, these tapes have yielded 14.3 million e-mails that Morgan Stanley had not previously searched in responding to the investigations.

3. During the Commission's investigations, Morgan Stanley made numerous misstatements regarding the status and completeness of its productions and the unavailability of certain documents. For example, Morgan Stanley asserted in both the IPO and the Research Analyst Investigations that it had not retained *any* 1999 tapes that backed-up e-mail. In fact, numerous back-up tapes from 1999 existed, and Morgan Stanley began producing e-mails from those back-up tapes in 2005.

4. Morgan Stanley also did not timely produce e-mails sought in the Research Analyst Investigation because it delayed loading millions of e-mails into its searchable e-mail archive database ("the E-Mail Archive") and searching them for responsive e-mails. The firm had told the Commission staff that its e-mail productions were "complete." In fact, this process was not "complete," and Morgan Stanley made the loading of these e-mails into the E-Mail Archive a low priority.

5. In addition, Morgan Stanley failed to produce responsive e-mails by over-writing back-up tapes after receiving Commission subpoenas and requests despite its repeated representations to the Commission and the staff that all over-writing had ceased in January 2001. Morgan Stanley's continued over-writing destroyed at least two hundred thousand e-mails,

including some e-mails which likely were responsive to the Commission's subpoenas and requests.

6. These repeated violations of the production obligations compromised the Commission's ability to effectively investigate and determine whether Morgan Stanley had complied with the federal securities laws. Morgan Stanley's conduct delayed the Research Analyst Investigation and prejudiced both the IPO and Research Analyst Investigations by depriving the Commission of evidence and potential sources of information relevant to those investigations for years, and in some cases, permanently.

7. By engaging in the conduct described in this Complaint, Morgan Stanley violated the production provisions of the federal securities laws, Section 17(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78q(b)] and Exchange Act Rule 17a-4(j) [17 C.F.R. § 240.17a-4(j)], and is likely to continue to engage in such conduct unless and until it is enjoined by this Court. Accordingly, the Commission seeks an Order of this Court permanently enjoining Morgan Stanley from future violations and imposing civil monetary penalties.

**JURISDICTION AND VENUE**

8. The Commission brings this action pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to restrain and permanently enjoin Morgan Stanley from violating Section 17(b) of the Exchange Act [15 U.S.C. § 78q(b)] and Exchange Act Rule 17a-4(j) [17 C.F.R. § 240.17a-4(j)].

9. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

10. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Morgan Stanley is found and transacts business in this District.

## DEFENDANT

11. Morgan Stanley is a Delaware corporation with its headquarters and principal executive offices in New York, New York. Morgan Stanley was and continues to be registered with the Commission as a broker-dealer. Morgan Stanley is licensed to conduct securities business on a nationwide basis. Morgan Stanley is an international financial services firm that provides securities underwriting services, sales trading services, merger and acquisition advisory services, private banking services and equity research. Employees of Morgan Stanley received and sent e-mail in conducting Morgan Stanley's business as a broker-dealer.

## FACTS

### I. THE COMMISSION ISSUED SUBPOENAS AND DOCUMENT REQUESTS TO MORGAN STANLEY FOR ITS E-MAILS AND BACK-UP TAPES CONTAINING E-MAIL

12. Beginning in December 2000 and continuing through October 2004, the Commission issued subpoenas and document requests to Morgan Stanley for e-mails and back-up tapes containing e-mail in the IPO and Research Analyst Investigations. Prior to 2003, e-mail sent or received by Morgan Stanley employees was backed-up on magnetic tapes. In early 2003, Morgan Stanley began using the E-Mail Archive which preserved e-mails sent or received by Morgan Stanley employees on a going-forward basis in a database that was more readily searchable. The E-Mail Archive allowed Morgan Stanley to discontinue its use of tapes which Morgan Stanley had used to back-up and search for e-mail sent prior to January 2003. Later in 2003, Morgan Stanley began loading its pre-2003 e-mails stored on back-up tapes into the E-Mail Archive so that its pre-2003 e-mails would be more accessible and more readily searchable ("the Migration Project").

A. **The IPO Investigation**

13. On December 11, 2000, the Commission issued a subpoena to Morgan Stanley for documents, including e-mails and back-up tapes containing e-mails, relating to Morgan Stanley's allocation of IPO shares during the period 1999-2000 ("the December 2000 Subpoena"). In the cover letter to the subpoena, the Commission specifically instructed Morgan Stanley to retain all e-mails relating to its IPOs during 1999 and 2000. At that time, Morgan Stanley was also reminded that Exchange Act Release No. 38245 (February 5, 1997) states that electronic mail communications relating to a broker-dealer's "business as such" must be retained for not less than three years pursuant to Exchange Act Rule 17a-4(b)(4).

14. From March 2001 through May 2001, the Commission sent two additional document requests to Morgan Stanley seeking e-mails relating to the firm's IPOs in 1999 and 2000. Morgan Stanley made its first production of e-mails in response to the Commission's December 2000 subpoena and subsequent document requests in August 2001, consisting of approximately 350 pages.

15. In October 2001, after having produced those few e-mails, Morgan Stanley informed the Commission staff that e-mails from its 1999 back-up tapes were not recoverable because the firm had recycled its back-up tapes after one year and, in the process, had written over any e-mails on those back-up tapes prior to receiving the Commission's December 2000 Subpoena. When the Commission issued another subpoena in November 2001 seeking all e-mails and back-up tapes containing e-mail related to certain 1999 and 2000 IPOs, Morgan Stanley again told the Commission staff that no 1999 back-up tapes containing e-mail were in existence. Morgan Stanley produced e-mails, including some 1999 e-mails contained on year-2000 back-up tapes, on a rolling basis.

16. When the staff began taking testimony in late 2002, the staff told Morgan Stanley it could defer further production of e-mails responsive to the Commission's subpoenas and requests in the IPO Investigation. Although production was deferred, all responsive e-mail remained under subpoena.

17. Morgan Stanley repeatedly stated, both orally and in writing, that it had ceased recycling e-mail back-up tapes and was preserving all e-mails and back-up tapes containing e-mail dating from 2000 and later. For example, on October 2, 2001, Morgan Stanley represented:

> Our efforts to preserve e-mails began shortly after receiving a subpoena from the SEC late last year. At that time, we inquired internally how best to preserve and gather e-mails that had been (or might be) requested for 1999 and 2000. We learned that e-mails for Morgan Stanley individuals are backed up from servers to magnetic tapes nightly, and we concluded that preserving those magnetic tapes would ensure that e-mails were preserved and not discarded, recycled or lost. We thus requested our Information Technology group ("IT") to retain and preserve those magnetic tapes Firm-wide going forward.

18. In May 2002, the Commission staff notified Morgan Stanley that it intended to recommend that the Commission institute an enforcement action against Morgan Stanley ("Wells notice") for violating the record retention provisions by recycling back-up tapes containing e-mail less than three years old. The Commission staff offered Morgan Stanley an opportunity to submit to the Commission a written explanation of its conduct ("Wells submission"). In June 2002, prior to making its Wells submission, Morgan Stanley provided a power point presentation entitled "Morgan Stanley/SEC Discussion re: E-mail Retention" which again represented that, as of January 2001, Morgan Stanley was "*backing up and retaining all e-mails for a three-year period* and it ha[d] spent considerable resources in order to avoid future mistakes" (emphasis in original).

19. Morgan Stanley's Wells submission in July 2002 represented to the Commission that once Morgan Stanley "became aware of the full scope of the email retention issue in January

2001, [it] took immediate steps to cease the recycling of email [and] secure the remaining 24,000 magnetic tapes containing email backups from 2000 and early 2001 . . . ."

20. On December 3, 2002, the Commission sanctioned Morgan Stanley for violating the record retention provisions and ordered it to cease and desist from such violations of the record retention regulations. *See In the Matter of Deutsche Bank Securities, Inc., et al.,* Exchange Act Rel. No. 46987 (December 3, 2002).

21. It was not until late-2004 that the Commission staff learned that Morgan Stanley's representations that it had ceased over-writing back-up tapes containing e-mail and secured its e-mail back-up tapes in January 2001 were untrue.

**B. <u>The Research Analyst Investigation</u>**

22. In April 2002, the Commission commenced the Research Analyst Investigation which focused on whether certain broker-dealers, including Morgan Stanley, engaged in practices that created conflicts of interest for their research analysts' coverage of investment banking clients. NASD and the New York Stock Exchange, Inc. ("NYSE") conducted parallel investigations. On April 29, 2002, the Commission, NASD and the NYSE sent a request to Morgan Stanley seeking e-mail for certain Morgan Stanley employees for the period July 1, 1999 to June 30, 2001 ("the April 2002 Request").

23. In response, Morgan Stanley again informed the Commission staff that all of its 1999 back-up tapes containing e-mail had been over-written. Morgan Stanley subsequently provided the Commission staff with a list that purported to represent all of the e-mail back-up dates for the analysts' e-mail the staff had requested. That list did not include 1999 e-mail back-up dates.

24. In April 2003, as part of a global settlement in the research analyst conflicts of interest case, the Commission filed a settled injunctive action against Morgan Stanley. The Commission continued its investigation focusing on the conduct of supervisors at Morgan Stanley and the other eleven broker-dealers.

25. On May 30, 2003, the Commission issued a subpoena to Morgan Stanley seeking all e-mails for certain members of the firm's senior management, including certain investment banking and research supervisors, for the period July 1, 1999 through June 30, 2002 ("the May 2003 Subpoena"). NASD and the NYSE sent identical requests to Morgan Stanley in their parallel investigations. In June 2003, Morgan Stanley began to produce e-mail responsive to the May 2003 Subpoena on a rolling basis, and on November 6, 2003, Morgan Stanley advised the Commission staff that it had satisfied its production obligations, as modified by the Commission staff.

26. On December 10, 2003, the Commission sent a subpoena to Morgan Stanley requesting e-mail of certain research analysts based in the United States and Asia during 1999, 2000 and 2001 ("the December 2003 Subpoena"). In January 2004, Morgan Stanley advised the Commission staff that, because of the different retention periods of overseas jurisdictions, e-mail back-up tapes were no longer available from Hong Kong, Korea, Singapore and London for some periods covered by the December 2003 Subpoena. Morgan Stanley also advised the Commission staff that Morgan Stanley was in the process of loading e-mails from its pre-2003 back-up tapes into the E-Mail Archive, which would enable Morgan Stanley to locate and produce certain e-mail between overseas personnel and personnel based in North America resulting in a more complete production. Morgan Stanley represented that the firm would complete the loading of e-mail from historical back-up tapes into the E-Mail Archive by April

2004 and requested an extension of the production schedule for e-mail of overseas-based analysts in order to complete the Migration Project. Morgan Stanley began producing the e-mail of overseas-based analysts in May 2004, after it represented that the Migration Project had been completed. In fact, the Migration Project was not completed until 2005.

27. On June 3, 2004, the Commission issued a request for e-mail of certain research supervisors in Morgan Stanley's overseas offices during 2000 and 2001 (the "June 2004 Request"). Morgan Stanley again used the E-Mail Archive to respond to this request although the Migration Project was not complete. In September 2004, Morgan Stanley represented that its production of the e-mails requested by the December 2003 Subpoena and the June 2004 Request had been completed. Relying upon Morgan Stanley's periodic representations that it had completed production of particular persons' e-mail in response to the December 2003 Subpoena and June 2004 Request, the Commission staff took testimony beginning in April 2004 and continuing through October 2004.

**C. The Anonymous Tip**

28. In Fall 2004, the Commission staff received an anonymous tip alleging that Morgan Stanley had destroyed e-mails and failed to produce e-mails in the IPO and Research Analyst Investigations. According to the anonymous tip, Morgan Stanley had not disclosed to the Commission and other regulators the existence of relevant e-mails. The Commission staff immediately conducted an investigation of these allegations.

## II. MORGAN STANLEY'S PRODUCTION FAILURES

### A. Morgan Stanley Failed for Years to Produce E-Mail to The Commission

29. In the course of investigating the allegations in the anonymous tip, the Commission staff learned for the first time that Morgan Stanley had failed for years to produce e-mail -- including 1999 e-mail on back-up tapes which the firm had claimed no longer existed. Morgan Stanley failed to conduct diligent searches for back-up tapes, including tapes that were accessible in the firm's offices and its Storage Facilities.

30. Starting in or around May 2004 through July 2005, Morgan Stanley located over 10,000 back-up tapes, many of which contained e-mails for time periods covered by subpoenas and requests in the IPO and Research Analyst Investigations. The newly-found tapes included numerous 1999 e-mail back-up tapes that Morgan Stanley had repeatedly represented no longer existed. Despite Morgan Stanley's assertions that such tapes no longer existed, Morgan Stanley found most of these back-up tapes in locations where tapes that backed-up e-mail customarily were stored.

31. The 10,000 tapes included approximately 1,400 tapes found in one of Morgan Stanley's offices in Brooklyn, New York ("the Brooklyn Tapes") in May 2004. In early June 2004, Morgan Stanley's Law Division was informed about the discovery of the Brooklyn Tapes. In early July, 2004, nine lawyers in Morgan Stanley's Law Division were informed that a preliminary analysis showed about 90 of the tapes contained e-mail and some of those tapes dated from 1999. On July 16, 2004, the firm's tape restoration vendor informed Morgan Stanley's Information Technology ("IT") group that 112 of the Brooklyn Tapes contained a total of

2,183,331 "unique e-mails" (that is, e-mails that were not duplicates of other e-mails in Morgan Stanley's E-Mail Archive).

32. Morgan Stanley failed to tell the Commission staff about the discovery of the Brooklyn Tapes at that time, although the firm was producing e-mails responsive to the December 2003 Subpoena and June 2004 Request in the Research Analyst Investigation. Instead, Morgan Stanley represented in the summer of 2004 that it had completed e-mail production in the Research Analyst Investigation.

33. On September 28, 2004, Morgan Stanley signed a certification which it provided to the Commission on October 13, 2004. Morgan Stanley certified to the Commission as part of its settlement of the IPO case that a diligent search had been made of all files that were reasonably likely to contain responsive documents.

34. Morgan Stanley did not inform the Commission staff of the existence of the Brooklyn Tapes until about October 28, 2004, after the Commission staff began investigating the allegations in the anonymous tip. Morgan Stanley represented to the Commission staff that it first learned in late October 2004 that the Brooklyn Tapes contained e-mail. In fact, as noted above, Morgan Stanley's Law Division was informed in July 2004 that about 90 of the Brooklyn Tapes contained e-mail. Morgan Stanley did not load the e-mail from the Brooklyn Tapes into the E-Mail Archive until early 2005.

35. After its discovery of the Brooklyn Tapes, Morgan Stanley continued to find 1999 and 2000 back-up tapes that had not been searched in the IPO and Research Analyst Investigations. For example, in January 2005, one of Morgan Stanley's Storage Facilities informed the firm that it had located 169 back-up tapes. Those tapes contained e-mails for the period May 1999 through December 2000.

36. As late as February 2005, Morgan Stanley continued to provide inaccurate information about the status of its productions. Specifically, on February 10, 2005, Morgan Stanley made a Wells submission to the Commission ("the February 2005 Wells Submission") after receiving a notice that the staff intended to recommend an enforcement action against the firm for its production failures described in this Complaint. In its February 2005 Wells Submission, Morgan Stanley incorrectly stated that it had migrated all of its pre-2003 e-mail from back-up tapes into the E-Mail Archive.

37. However, just days after its February 2005 Wells Submission, Morgan Stanley began searching for -- and finding -- additional back-up tapes containing e-mails. Between mid-February and July 7, 2005, Morgan Stanley found approximately 8,770 additional tapes -- including back-up tapes containing e-mails from 1999 and other time periods covered by the Commission's subpoenas and requests. Morgan Stanley advised the Commission staff when it learned of these additional back-up tapes and thereafter provided regular updates regarding the status of processing these tapes.

38. By July 2005, Morgan Stanley's tape restoration vendor had extracted 14.3 million unique e-mails from newly found tapes that included time periods covered by the Commission's subpoenas and requests in the IPO and Research Analyst Investigations. The newly-located tapes have yielded thousands of responsive e-mails for the period from 1999 through 2002.

**B. Morgan Stanley Failed For Months to Produce E-Mail Because it Delayed Loading E-Mails into Its E-Mail Archive System**

39. Morgan Stanley failed for months to produce e-mail that it had located because it delayed loading e-mails into its E-Mail Archive. Morgan Stanley also told the Commission staff

in the Research Analyst Investigation that its productions of e-mails were complete, when that was inaccurate.

40. In about September 2003, Morgan Stanley began the Migration Project by directing its tape restoration vendor to harvest e-mails from pre-2003 back-up tapes and send the harvested e-mail to Morgan Stanley to be uploaded into the E-Mail Archive.

41. Contrary to Morgan Stanley's representations to the Commission staff, however, Morgan Stanley had not completed the Migration Project in April 2004. In fact, by August 2004, there was a large backlog of e-mail that had been extracted from pre-2003 back-up tapes, including the Brooklyn Tapes, at Morgan Stanley waiting to be loaded into the E-Mail Archive. At this time, Morgan Stanley was producing e-mail to the Commission in the Research Analyst Investigation. Morgan Stanley knew that the Commission staff was scheduling and conducting testimony based on Morgan Stanley's representations that e-mail production for certain witnesses had been completed. Nevertheless, Morgan Stanley treated the loading of these e-mails into the E-Mail Archive as a low priority. An Executive Director in Morgan Stanley's IT group, after consulting with senior IT staff and Morgan Stanley's compliance department, accorded the loading of those e-mails "a lower priority" -- "closer to the bottom" of a long list of priorities that included capturing e-mail on a real-time basis. Morgan Stanley elevated the uploading of those e-mails to a high priority in mid-October 2004 after the Commission staff began investigating Morgan Stanley's e-mail production failures.

42. Morgan Stanley did not tell the Commission staff until November 23, 2004 that potentially responsive e-mail had not been loaded into the E-Mail Archive. It was not until April 1, 2005 -- almost a year after Morgan Stanley had located the Brooklyn Tapes -- that Morgan

Stanley began producing e-mails extracted from the Brooklyn Tapes and from other newly-located tapes.

**C. Morgan Stanley Failed To Produce E-Mail <u>by Recycling Back-Up Tapes Containing E-Mail</u>**

43. In the fall of 2004, the Commission staff interviewed numerous Morgan Stanley employees in connection with the Commission's investigation of the allegations in the anonymous tip. Morgan Stanley witnesses consistently stated that back-up tapes containing e-mail had been preserved since January 12, 2001 -- the date when a Morgan Stanley compliance officer sent an e-mail to IT staff instructing IT to cease recycling of back-up tapes containing e-mail that were less than three years old.

44. Nevertheless, the Commission staff asked Morgan Stanley to perform forensic testing on a number of Morgan Stanley's tapes that had backed up e-mail servers. The staff asked Morgan Stanley to test 501 tapes selected by the staff from a total of 19,000 tapes identified by Morgan Stanley. Testing determined that 341 of the tested tapes could have contained e-mail requested by subpoenas and requests in the IPO and Research Analyst Investigations. Of these 341 tapes, fifty (50) had been over-written *after* Morgan Stanley received the Commission's December 2000 Subpoena in the IPO Investigation or the April 29, 2002 Request in the Analyst Investigation. The recycling of these 50 tapes destroyed at least two hundred thousand e-mails, including some e-mails which likely were responsive to the Commission's subpoenas and requests in the IPO and Research Analyst Investigations. Recycling of back-up tapes containing e-mail continued through at least December 2002 even as Morgan Stanley was representing to the Commission and its staff that it had ceased recycling and had secured all of its remaining tapes containing e-mail.

45. Despite Morgan Stanley's assurances to the Commission and its staff in the IPO and Research Analyst Investigations that it was securing and preserving all back-up tapes containing e-mail since January 2001, Morgan Stanley failed to safeguard all potentially responsive e-mails and back-up tapes. For example, Morgan Stanley allowed low-level IT staff to implement a number of ad-hoc measures which were not sufficient to secure the existing back-up tapes containing e-mail or prevent additional recycling. In 2004, in connection with the Migration Project, Morgan Stanley's IT staff expressed concern that tapes containing e-mail had been recycled despite the January 2001 instruction from compliance to cease recycling. Morgan Stanley, however, took no action to investigate whether recycling had occurred and made no disclosure of the issue to the Commission.

**D. Morgan Stanley's E-Mail Production Failures**
**<u>Prejudiced the Commission's Investigations</u>**

46. Morgan Stanley's production failures prejudiced the IPO and Research Analyst Investigations. By failing for years to find back-up tapes containing e-mail -- including 1999 back-up tapes -- and by continuing to over-write back-up tapes containing e-mail, Morgan Stanley deprived the Commission in both investigations of potential sources of evidence for years, and in some instances, permanently.

47. In the Research Analyst Investigation, Morgan Stanley's production failures caused the Commission staff to delay the testimony of certain witnesses for a year and to recall certain witnesses for additional testimony.

48. The Commission also expended significant additional resources to investigate Morgan Stanley's e-mail production failures which also delayed the Research Analyst Investigation and the IPO case.

## FIRST CLAIM FOR RELIEF

**Violation of Section 17(b) of the Exchange Act [15 U.S.C. § 78q(b)]**
**By Failing to Produce and Failing to Promptly Produce Records**

49. Paragraphs 1 through 48 are realleged and incorporated herein by reference.

50. Under Section 17(b) of the Exchange Act [15 U.S.C. § 78q(b)], all records of Morgan Stanley were subject to reasonable periodic, special or other examinations by representatives of the Commission. Morgan Stanley also was required to respond to the Commission's lawfully issued subpoenas and requests.

51. As alleged above, from December 11, 2000 through at least July 2005, Morgan Stanley failed to produce and failed to promptly produce e-mails sought by the Commission's subpoenas and requests in the IPO and Research Analyst Investigations. Specifically, after receiving the Commission's subpoenas and requests beginning on December 11, 2000, Morgan Stanley: (1) failed timely to produce e-mail -- including 1999 e-mail from 1999 back-up tapes which it wrongly represented no longer existed -- because it failed for years to search for thousands of back-up tapes containing e-mail which were accessible at the firm and Storage Facilities; (2) failed timely to produce e-mail because it delayed loading e-mail extracted from back-up tapes into its E-Mail Archive; and (3) failed to produce e-mails by over-writing back-up tapes containing e-mail, thereby destroying potentially responsive e-mails.

52. By reason of the foregoing, Morgan Stanley violated Section 17(b) of the Exchange Act [15 U.S.C. § 78q(b)].

**SECOND CLAIM FOR RELIEF**

**Violation of Exchange Act Rule 17a-4(j) [17 C.F.R. § 240.17a-4(j)] By Failing to Produce and Failing Promptly to Produce Records**

53. Paragraphs 1 through 48 are realleged and incorporated herein by reference.

54. Exchange Act Rule 17a-4(j) [17 C.F.R. § 240.17a-4(j)] requires members, brokers and dealers "to furnish promptly to a representative of the Commission . . . copies of those records . . . which are required to be preserved [under Rule 17a-4 and] are requested by the representative of the Commission." After May 3, 2003, Rule 17a-4(j) was amended to also require members, brokers and dealers to furnish promptly "any other records of the member, broker or dealer subject to examination under Section 17(b) of the Exchange Act [15 U.S.C. § 78q(b)] that are requested by the representative of the Commission."

55. Morgan Stanley violated Rule 17a-4(j) by failing to produce and failing promptly to produce e-mails less than three years old (*i.e.*, records required to be preserved under Rule 17a-4) which were requested by the Commission's subpoenas and requests in the IPO and Research Analyst Investigations because it did not conduct diligent searches for back-up tapes containing e-mail and over-wrote back-up tapes containing potentially responsive e-mails. After May 3, 2003, Morgan Stanley also violated Rule 17a-4(j) by failing promptly to produce e-mails requested by the Commission's subpoenas and requests in the Research Analyst Investigation because it did not conduct diligent searches for back-up tapes containing e-mail and delayed loading e-mails into its E-Mail Archive.

56. By reason of the foregoing, Morgan Stanley violated Rule17a-4(j) of the Exchange Act [17 C.F.R. § 240.17a-4(j)].

**RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests that this Court enter an Order that:

I.

Permanently restrains and enjoins Morgan Stanley from violating, directly or indirectly, Section 17(b) of the Exchange Act [15 U.S.C. § 78q(b)] and Exchange Act Rule 17a-4(j) [17 C.F.R. § 240.17a-4(j)];

II.

Requires Morgan Stanley to pay a civil money penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

III.

Grants such other and further relief as the Court may deem just and proper including, but not limited to, directing Morgan Stanley to: (a) institute policies, procedures and training reasonably designed to prevent future violations of Section 17(b) of the Exchange Act and Exchange Act Rule 17a-4(j); and (b) retain an independent consultant to audit the implementation and effectiveness of such policies, procedures and training and provide a report of its comments, conclusions and recommendations to the Commission; and

IV.

Retains jurisdiction of this action in order to implement and carry out the terms of any Orders that may be entered herein.

Dated: May 10, 2006.

Respectfully submitted,

______________________________
Antonia Chion (DC Bar #358014)
chiona@sec.gov

______________________________
Arthur S. Lowry (DC Bar #421266)
lowrya@sec.gov
ATTORNEY TO BE NOTICED

Christopher R. Conte (D.C. Bar #419774)
Yuri B. Zelinsky
Lisa Deitch
Kara Brockmeyer
Ann Rosenfield (DC Bar #418316)
Michael Fuchs (DC Bar #431440)

Attorneys for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E.
Washington D.C. 20549-4030
Telephone: (202) 551-4918 (Lowry)
Facsimile: (202) 772-9245 (Lowry)