# EXHIBIT 3

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 53473 / March 13, 2006

ADMINISTRATIVE PROCEEDING
File No. 3-12236

| | |
|---|---|
| In the Matter of<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,<br><br>Respondent. | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 15(b)(4) AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER, PENALTY, AND OTHER REMEDIAL SANCTIONS |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 15(b)(4) and Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Respondent" or "Merrill Lynch").

II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over Respondent and the subject matter of these proceedings, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 15(b)(4) and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, Penalty, and Other Remedial Sanctions ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds that:

### Summary

This action concerns Merrill Lynch's systemic failure to furnish promptly to representatives of the Commission (the "staff") electronic mail communications ("e-mails") as required under Section 17(a) of the Exchange Act and Rule 17a-4(j) thereunder. During the period from October 2003 through February 2005 (the "relevant period"), Merrill Lynch repeatedly failed to promptly furnish to the staff certain e-mails related to its business as a broker, dealer, or member of an exchange. Merrill Lynch also failed to retain certain e-mails related to its business as such in violation of Section 17(a) of the Exchange Act and Rule 17a-4(b)(4) thereunder. During the relevant period, Merrill Lynch's systems, policies, and procedures designed for the prompt production and retention of e-mails were deficient and Merrill Lynch failed to ensure that it complied with its obligations as a regulated entity. Further, Merrill Lynch's inability to promptly produce e-mails contradicts statements made by Merrill Lynch that its e-mail retention systems were in compliance with Section 17(a) of the Exchange Act. Similarly, Merrill Lynch's failure to retain certain e-mails contradicts statements made by Merrill Lynch that its e-mail systems were retaining more e-mails than Exchange Act Section 17(a) and Rule 17a-4(b)(4) required.

### Respondent

1. Merrill Lynch is a Delaware corporation with its principal executive offices in New York, New York. Merrill Lynch is a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act and is a member of the NASD and the New York Stock Exchange (among other exchanges). Merrill Lynch engages in a nationwide securities business and is a wholly owned subsidiary of Merrill Lynch & Co., Inc., a Delaware corporation whose securities are registered with the Commission pursuant to Section 12(b) and Section 12(g) of the Exchange Act and whose common stock is principally traded on the New York Stock Exchange.

### Merrill Lynch Fails To Promptly Produce E-Mails To The Staff

2. During the relevant period, Merrill Lynch's employees used e-mails, in part, to conduct its business as a broker, dealer, and member of an exchange. However, Merrill Lynch lacked adequate systems, policies, and procedures to furnish these e-mails promptly when requested by the staff.

3. Throughout the relevant period, the staff made requests to Merrill Lynch to produce e-mails in connection with various investigations and inquiries. While it complied with certain requests for e-mails, in numerous instances, Merrill Lynch failed to promptly furnish e-mails responsive to the staff's requests. For example, on October 17, 2003, the staff requested production, on a rolling basis, of e-mails for six Merrill Lynch employees. Merrill Lynch was unable to produce any of the requested e-mails until May 13, 2004, nearly seven months after the initial request. The production concluded on May 25, 2004, more than seven months after the staff's request.

4. Also in October 2003, in connection with another investigation, the staff issued a request for the e-mails of five Merrill Lynch employees. Merrill Lynch failed to produce these e-mails promptly and, in each instance, required at least two months to begin furnishing e-mails in response to the staff's request. For four of the employees, Merrill Lynch did not complete its production of e-mails for five and one-half months following receipt of the staff's request.

5. Merrill Lynch similarly failed to promptly furnish e-mails in response to two requests issued by the staff in August and September 2004. In each of those instances, Merrill Lynch required over five months to furnish the requested e-mails.

6. During the relevant period, Merrill Lynch knew that regulators had significantly increased their demands for e-mails in a broad range of investigations and routine inquiries. Merrill Lynch represented to the staff that its delay in furnishing e-mails to the staff was due to the size and volume of requests made by, and Merrill Lynch's production of e-mails to, the staff, other regulators, and private litigants. However, in response to various requests from self-regulatory organizations, a state securities regulator, and investors in arbitration proceedings, Merrill Lynch also required between two and fifteen months to produce requested e-mails.

7. These failures to produce e-mails promptly occurred despite communications between Merrill Lynch and the staff, as early as 2002, wherein Merrill Lynch represented generally that its e-mail systems were sufficient to retain e-mail and produce it to regulators upon demand. Specifically, Merrill Lynch represented that e-mails generated through its retail branch offices were "readily retrievable," and Internet e-mails generated outside of its retail branch offices were "accessible online for review." In fact, Merrill Lynch was unable to furnish e-mails promptly to the staff on numerous occasions because Merrill Lynch's systems, policies, and procedures were insufficient to promptly produce e-mails as required by Section 17(a) of the Exchange Act and Rule 17a-4(j) thereunder.

## Merrill Lynch Fails to Retain Certain E-Mails

8. Merrill Lynch began implementing a new real-time capture e-mail system in January 2001 and completed the implementation on a Firm-wide basis in November 2004. Until November 2004, Merrill Lynch continued to rely on several systems, including monthly, and later daily, back-up tapes for retaining e-mails. As such, Merrill Lynch's e-mail systems were not capturing certain e-mail communications as required by Exchange Act Section 17(a) and Rule 17a-4(b)(4). Specifically, Merrill Lynch's e-mail systems did not capture or retain certain e-mails that were not in a user's mailbox at the time of the next scheduled tape back-up. For example, Merrill Lynch's e-mail systems did not capture certain e-mail that had been moved from a user's mailbox to a personal folder or shared drive outside the e-mail system, or moved to another medium such as a floppy disk, a hard drive, or a USB device. Similarly, Merrill Lynch's e-mail systems did not capture certain e-mails that had been hard-deleted prior to the next scheduled tape back-up. In addition, in August 2005, Merrill Lynch disclosed to the staff that its real-time capture e-mail system did not capture certain "bcc" recipient addresses on certain e-mail messages.

9. These failures occurred despite Merrill Lynch's knowledge of the limitations in its e-mail retention systems, and representations to the staff that its e-mail systems were sufficient to

3

retain, and were retaining, all e-mails as required by Exchange Act Section 17(a) and Rule 17a-4(b)(4).

### Federal Securities Law Violations

10. Section 17(a)(1) of the Exchange Act provides that each member of a national securities exchange, broker, or dealer "shall make and keep for prescribed periods such records, furnish copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this title." Pursuant to its authority under Section 17(a)(1) of the Exchange Act, the Commission promulgated Rule 17a-4. Rule 17a-4(b)(4) requires that Merrill Lynch "preserve for a period of not less than three years, the first two years in an easily accessible place . . . [o]riginals of all communications received and copies of all communications sent ... (including inter-office memoranda and communications) relating to its business as such ...." Rule 17a-4 is not, by its terms, limited to physical documents. The Commission has stated that internal e-mails relating to a broker-dealer's "business as such" fall within the purview of Rule 17a-4 and that, for the purposes of Rule 17a-4, "the content of the electronic communication is determinative" as to whether that communication is required to be retained and accessible. Reporting Requirements for Brokers or Dealers under the Securities Exchange Act of 1934, Rel. No. 34-38245 (Feb. 5, 1997); See also In the Matter of Deutsche Bank Securities, Inc., et al., Rel. No. 34-46937 (Dec. 3, 2002); In the Matter of Janney Montgomery Scott LLC, Rel. No. 34-50252 (Aug. 25, 2004); In the Matter of J.P. Morgan Securities, Inc., Rel. No. 34-51200 (Feb. 14, 2005).

11. Pursuant to Rule 17a-4(j), broker-dealers, such as Merrill Lynch, are required to "furnish promptly" to a representative of the Commission such legible, true and complete copies of records required to be preserved under Section 17(a) of the Exchange Act, as are requested by representatives of the Commission. The Commission has enforced Rule 17a-4(j) when broker-dealers have failed to furnish promptly records requested by the staff that are required to be maintained under Section 17(a) of the Exchange Act and Rule 17a-4 thereunder. See SEC v. J.W. Korth & Co., 991 F. Supp. 1468 (S.D. Fla. 1998); In the Matter of Dominick & Dominick, Inc., et al., 50 S.E.C. 571 (1991); In the Matter of Robertson Stephens, Inc., No. 3-11003 (Jan. 9, 2003).

12. The Commission has made clear that it is of "overriding importance" that broker-dealers comply with the requests of regulatory authorities during investigations. See In the Matter of Wedbush Securities, Inc., 48 S.E.C. 963, 971-2 (1988). "If a firm is ill-equipped to provide the full degree of cooperation necessitated by such an investigation . . . it has the obligation to act to correct that situation . . . . Failure to do so is certainly no defense." In the Matter of Donald T. Sheldon, 51 S.E.C. 59 (1992), aff'd, 45 F.3d 1515 (11th Cir. 1995) (internal citations omitted).

13. As a result of the conduct described above, the Commission finds that the Respondent willfully violated Section 17(a) of the Exchange Act, and Rules 17a-4(b)(4) and 17a-4(j) thereunder, by failing to retain certain e-mails and by failing to furnish e-mails promptly to the staff.[1]

---

[1] "Willfully" as used in this Order means intentionally committing the act which constitutes the violation, see Wonsover v. SEC, 205 F.3d 408, 414 (D.C. Cir. 2000); Tager v. SEC, 344 F.2d 5, 8 (2d Cir. 1965). There is no requirement that the actor also be aware that he is violating one of the Rules or Acts.

### Undertakings

14.     Merrill Lynch has undertaken to review its systems, policies, and procedures relating to the prompt production of e-mails for compliance with the federal securities laws and rules. Within one hundred twenty (120) days of the issuance of this Order, unless otherwise extended by the staff for good cause shown, Merrill Lynch undertakes and agrees to certify to the staff (the "Initial Certification"), in writing, that it has completed such a review and that Merrill Lynch has established systems, policies, and procedures reasonably designed to achieve compliance with the federal securities laws and rules concerning the prompt production of e-mails to the Commission. Merrill Lynch shall submit the Initial Certification to Richard W. Grime, Assistant Director, Division of Enforcement, Securities and Exchange Commission, 100 F Street, N.E., Washington, DC, 20549-4631;

15.     Within thirty (30) days of the submission of the Initial Certification, Merrill Lynch undertakes to retain, at its own expense, a qualified independent consultant (the "Consultant"), not unacceptable to the staff, to review Merrill Lynch's systems, policies, and procedures as they relate to compliance with the federal securities laws and rules concerning the retention and prompt production of e-mails to the Commission. Merrill Lynch shall cooperate fully with the Consultant in this review and shall provide the Consultant with access to its files, books, records, personnel and agents as reasonably requested for the review. Merrill Lynch shall permit the Consultant, at Merrill Lynch's expense, to engage the services of legal counsel or others who the Consultant determines are necessary or appropriate to carry out his/her duties relating to this undertaking;

   A.     Within one hundred and twenty (120) days of the submission of the Initial Certification by Merrill Lynch, unless otherwise extended by the staff for good cause, Merrill Lynch shall require that the Consultant complete his/her review and submit a report documenting his/her findings and making recommendations relating to Merrill Lynch's compliance with the federal securities laws and rules concerning the retention and prompt production of e-mails to the Commission (the "Report") to Merrill Lynch, a copy of which shall be transmitted contemporaneously to the staff (at the address set forth above). The Report shall include, without limitation, recommendations concerning systems, policies, and procedures necessary to remedy any deficiencies described in the Report. Merrill Lynch shall afford the Consultant the option to seek an extension of time to submit the Report by making a written request to the staff at the address set forth above, a copy of which the Consultant shall provide to Merrill Lynch;

   B.     Within one hundred and twenty (120) days after receiving the Report, Merrill Lynch shall adopt and implement all recommendations set forth in the Report; provided, however, that as to any recommendation that Merrill Lynch considers unduly burdensome or impractical, Merrill Lynch may submit in writing to the Consultant and the staff (at the address set forth above), within sixty (60) days of receiving the Report, an alternative system, policy, or procedure designed to achieve the same objective or purpose. Merrill Lynch and the Consultant shall then attempt in good faith to reach an agreement relating to each recommendation that Merrill Lynch considers to be unduly burdensome or impractical and the Consultant shall reasonably evaluate any alternative

5

system, policy, or procedure proposed by Merrill Lynch. Such discussion and evaluation by Merrill Lynch and the Consultant shall conclude within ninety (90) days of Merrill Lynch's receipt of the Report, whether or not Merrill Lynch and the Consultant have reached an agreement. Within fourteen (14) days after the conclusion of the discussion and evaluation by the Consultant and Merrill Lynch, Merrill Lynch shall require that the Consultant inform Merrill Lynch and the staff (at the address set forth above) of his/her final determination concerning any recommendation that Merrill Lynch considers to be unduly burdensome or impractical. Merrill Lynch shall abide by the determinations of the Consultant and, within sixty (60) days after final agreement between Merrill Lynch and the Consultant or final determination by the Consultant, whichever occurs first, Merrill Lynch shall adopt and implement all of the recommendations that the Consultant deems appropriate;

    i. Within fourteen (14) days of Merrill Lynch's adoption of all of the recommendations that the Consultant deems appropriate, Merrill Lynch shall certify, in writing, to the Consultant and the staff (at the address set forth above), that Merrill Lynch has adopted and implemented all of the Consultant's recommendations and that Merrill Lynch has established systems, policies, and procedures reasonably designed to achieve compliance with the federal securities laws and rules concerning the retention and prompt production of e-mails to the Commission; and

    ii. To ensure the independence of the Independent Consultant, Merrill Lynch (a) shall not have the authority to terminate the Consultant without the prior written approval of the staff; and (b) shall compensate the Consultant, and the persons engaged to assist the Consultant, for services rendered at their reasonable and customary rates. Merrill Lynch will also require the Consultant to enter into an agreement that provides that for the period of engagement and for a period of two (2) years from completion of the engagement, the Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Merrill Lynch, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement will also provide that the Consultant will require that any firm with which he/she is affiliated, or of which he/she is a member, and any person engaged to assist the Consultant in performance of his/her duties under this Order shall not, without prior written consent of the staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Merrill Lynch, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two (2) years after the engagement;

C.    Merrill Lynch undertakes and agrees to certify, in writing, to the staff (at the address set forth above), in the second year following the issuance of this Order, that Merrill Lynch has established and continues to maintain systems, policies, and

6

procedures reasonably designed to achieve compliance with the federal securities laws and rules concerning the prompt production of e-mails to the Commission.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent Merrill Lynch's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A. Respondent Merrill Lynch cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Exchange Act, and Rules 17a-4(b)(4) and 17a-4(j) thereunder;

B. Respondent Merrill Lynch be, and hereby is censured pursuant to Section 15(b)(4) of the Exchange Act;

C. Respondent shall comply with the undertakings enumerated in Section III., above; and

D. Pursuant to Section 15(b)(4) and Section 21B of the Exchange Act, it is further ordered that Respondent shall, within ten (10) days of the entry of this Order, pay a civil money penalty in the amount of $2,500,000 to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check or bank money order; (2) made payable to the Securities and Exchange Commission; (3) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Alexandria, Stop 0-3, VA 22312; and (4) submitted under cover letter that identifies Merrill Lynch, Pierce, Fenner & Smith, Incorporated as the Respondent in this proceeding and includes the file number of this proceeding, a copy of which cover letter and money order or check shall be sent to Margaret S. McGuire, Division of Enforcement, Securities and Exchange Commission, 100 F Street N.E., Washington, DC, 20549-4631.

By the Commission.

Nancy M. Morris
Secretary