# EXHIBIT 4

Case 1:06-mc-00248-CKK   Document 14-8   Filed 10/06/2006   Page 2 of 10



**U.S. Securities and Exchange Commission**

# Division of Corporation Finance:
# Current Accounting and Disclosure Issues

*June 30, 2000*

*Prepared by Accounting Staff Members in the Division of Corporation Finance*
*U.S. Securities and Exchange Commission*
*Washington, D.C.*

> The Securities and Exchange Commission disclaims responsibility for any private publication or statement of any of its employees. This outline was prepared by members of the staff of the Division of Corporation Finance, and does not necessarily reflect the views of the Commission, the Commissioners, or other members of the staff.

**Contents**

**Recent Financial Reporting and Disclosure Initiatives**

- Initiative to Address Improper Earnings Management
- Rules Governing Independence of the Accounting Profession
- New Rules for Audit Committees and Reviews of Interim Financial Statements
- Materiality in the Preparation or Audit of Financial Statements (SAB 99)
- Restructuring Charges, Impairments, and Related Issues (SAB 100)
- Interpretive Guidance on Revenue Recognition (SAB 101)
- Proposed Rule for Disclosure about Valuation and Loss Accruals, Long-Lived Assets
- Proposed Rule for Guarantors and Related Issuers
- Matters Involving Auditor Independence
- Recent Enforcement Action -- America Online, Inc.

**Other Commission Rules and Proposals Affecting Registration and Reporting**

- Interpretive Release on the Use of Electronic Media
- Regulation of Takeovers and Security Holder Communications
- EDGAR

**Current Accounting and Disclosure Issues**

- Segment Disclosure
- Issues Associated With SFAS 133, Accounting for Derivative Instruments and Hedging Activities
- Amortization Periods Selected for Goodwill
- Accounting for Intangibles Relating to Customer Relationships
- Purchase Adjustments to Acquired Company's Loss Accruals

Corporation Finance: Current Accounting and Disclosure Issues   Page 3 of 10

Case 1:06-mc-00248-CKK    Document 14-8    Filed 10/06/2006    Page 39 of 5[?]

Requirement for Retroactive Restatement

If a business combination is otherwise properly accounted for as a pooling of interests, a failure to retroactively restate results on a combined basis is a departure from GAAP. The staff will request restatement if the effect on any line item reported in the financial statements for any year presented would be materially different. While registrants may expect the staff to challenge a failure to retroactively restate if the effect on any line item exceeds 3%, they should be aware that effects smaller than 3% could be material to investors in some circumstances.

**Issues in the Extractive Industry**

*Mining Exploration Costs*

Recoverability of capitalized costs is likely to be insupportable under FASB Statement No. 121 prior to determining the existence of a commercially minable deposit, as contemplated by Industry Guide 7 for a mining company in the exploration stage. As a result, the staff would generally challenge capitalization of exploration costs, and believes that those costs should be expensed as incurred during the exploration stage under US GAAP.

*Definition of Proved Reserves*

Over the last several years, the estimation and classification of petroleum reserves has been impacted by the development of new technologies such as 3-D seismic interpretation and reservoir simulation. Computer processor improvements have allowed the increased use of probabilistic methods in proved reserve assessments. These have led to issues of consistency and, therefore, some confusion in the reporting of proved oil and gas reserves by public issuers in their filings with the Commission. This section discusses some issues the Division of Corporation Finance's engineering staff has identified in its review of such filings.

The definitions for proved oil and gas reserves for the SEC are found in Rule 4-10(a) of Regulation S-X of the Securities Exchange Act of 1934. The SEC definitions are below in bold italics. Under each section we have tried to explain the SEC staff's position regarding some of the more common issues that arise from each portion of the definitions. As most engineers who deal with the classification of reserves have come to realize, it is difficult, if not impossible, to write reserve definitions that easily cover all possible situations. Each case has to be studied as to its own unique issues. This is true with the Society of Petroleum Engineers' and others' reserve definitions as well as the SEC's definitions.

1. Proved oil and gas reserves are the estimated quantities of crude oil, natural gas, and natural gas liquids which geological and engineering data demonstrate with reasonable certainty to be recoverable in future years from known reservoirs under existing economic and operating conditions, i.e., prices and costs as of the date the estimate is made. Prices include consideration of changes in existing prices provided by contractual arrangements, but not on escalations based upon future conditions.

The determination of reasonable certainty is generated by supporting geological and engineering data. There must be data available which indicate that assumptions such as decline rates, recovery factors, reservoir limits, recovery mechanisms and volumetric estimates, gas-oil ratios or

liquid yield are valid. If the area in question is new to exploration and there is little supporting data for decline rates, recovery factors, reservoir drive mechanisms etc., a conservative approach is appropriate until there is enough supporting data to justify the use of more liberal parameters for the estimation of proved reserves. The concept of reasonable certainty implies that, as more technical data becomes available, a positive, or upward, revision is much more likely than a negative, or downward, revision.

Existing economic and operating conditions are the product prices, operating costs, production methods, recovery techniques, transportation and marketing arrangements, ownership and/or entitlement terms and regulatory requirements that are extant on the effective date of the estimate. An anticipated change in conditions must have reasonable certainty of occurrence; the corresponding investment and operating expense to make that change must be included in the economic feasibility at the appropriate time. These conditions include estimated net abandonment costs to be incurred and duration of current licenses and permits.

If oil and gas prices are so low that production is actually shut-in because of uneconomic conditions, the reserves attributed to the shut-in properties can no longer be classified as proved and must be subtracted from the proved reserve data base as a negative revision. Those volumes may be included as positive revisions to a subsequent year's proved reserves only upon their return to economic status.

2. Reservoirs are considered proved if economic producibility is supported by either actual production or conclusive formation test. The area of a reservoir considered proved includes that portion delineated by drilling and defined by gas-oil and/or oil-water contacts, if any, and the immediately adjoining portions not yet drilled, but which can be reasonably judged as economically productive on the basis of available geological and engineering data. In the absence of information on fluid contacts, the lowest known structural occurrence of hydrocarbons controls the lower proved limits of the reservoir.

Proved reserves may be attributed to a prospective zone if a conclusive formation test has been performed or if there is production from the zone at economic rates. It is clear to the SEC staff that wireline recovery of small volumes (e.g. 100 cc) or production of a few hundred barrels per day in remote locations is not necessarily conclusive. Analyses of open-hole well logs which imply that an interval is productive are not sufficient for attribution of proved reserves. If there is an indication of economic producibility by either formation test or production, the reserves in the legal and technically justified drainage area around the well projected down to a known fluid contact or the lowest known hydrocarbons, or LKH may be considered to be proved.

In order to attribute proved reserves to legal locations adjacent to such a well (i.e. offsets), there must be conclusive, unambiguous technical data which supports reasonable certainty of production of such volumes and sufficient legal acreage to economically justify the development without going below the shallower of the fluid contact or the LKH. In the absence of a fluid contact, no offsetting reservoir volume below the LKH from a well penetration shall be classified as proved.

Upon obtaining performance history sufficient to reasonably conclude that more reserves will be recovered than those estimated volumetrically down

to LKH, positive reserve revisions should be made.

3. Reserves which can be produced economically through applications of improved recovery techniques (such as fluid injection) are included in the "proved" classification when successful testing by a pilot project, or the operation of an installed program in the reservoir, provides support for the engineering analysis on which the project or program was based.

If an improved recovery technique which has not been verified by routine commercial use in the area is to be applied, the hydrocarbon volumes estimated to be recoverable cannot be classified as proved reserves unless the technique has been demonstrated to be technically and economically successful by a pilot project or installed program in that specific rock volume. Such demonstration should validate the feasibility study leading to the project.

4. Estimates of proved reserves do not include the following:

- oil that may become available from known reservoirs but is classified separately as "indicated additional reserves";

- crude oil, natural gas, and natural gas liquids, the recovery of which is subject to reasonable doubt because of uncertainty as to geology, reservoir characteristics, or economic factors;

- crude oil, natural gas, and natural gas liquids, that may occur in undrilled prospects;

- crude oil, natural gas, and natural gas liquids, that may be recovered from oil shales, coal, gilsonite and other sources.

Geologic and reservoir characteristic uncertainties such as those relating to permeability, reservoir continuity, sealing nature of faults, structure and other unknown characteristics may prevent reserves from being classified as proved. Economic uncertainties such as the lack of a market (e.g. stranded hydrocarbons), uneconomic prices and marginal reserves that do not show a positive cash flow can also prevent reserves from being classified as proved. Hydrocarbons "manufactured" through extensive treatment of gilsonite, coal and oil shales are mining activities reportable under Industry Guide 7. They cannot be called proved oil and gas reserves. However, coal bed methane gas can be classified as proved reserves if the recovery of such is shown to be economically feasible.

In developing frontier areas, the existence of wells with a formation test or limited production may not be enough to classify those estimated hydrocarbon volumes as proved reserves. Issuers must demonstrate that there is reasonable certainty that a market exists for the hydrocarbons and that an economic method of extracting, treating and transporting them to market exists or is feasible and is likely to exist in the near future. A commitment by the company to develop the necessary production, treatment and transportation infrastructure is essential to the attribution of proved undeveloped reserves. Significant lack of progress on the development of such reserves may be evidence of a lack of such commitment. Affirmation of this commitment may take the form of signed sales contracts for the products; request for proposals to build facilities; signed acceptance of bid proposals; memos of understanding between the appropriate organizations and governments; firm plans and timetables established; approved authorization for expenditures to build facilities;

approved loan documents to finance the required infrastructure; initiation of construction of facilities; approved environmental permits etc. Reasonable certainty of procurement of project financing by the company is a requirement for the attribution of proved reserves. An inordinately long delay in the schedule of development may introduce doubt sufficient to preclude the attribution of proved reserves.

The history of issuance and continued recognition of permits, concessions and commerciality agreements by regulatory bodies and governments should be considered when determining whether hydrocarbon accumulations can be classified as proved reserves. Automatic renewal of such agreements cannot be expected if the regulatory body has the authority to end the agreement unless there is a long and clear track record which supports the conclusion that such approvals and renewal are a matter of course.

5. Proved developed oil and gas reserves are reserves that can be expected to be recovered through existing wells with existing equipment and operating methods. Additional oil and gas expected to be obtained through the application of fluid injection or other improved recovery techniques for supplementing the natural forces and mechanisms of primary recovery should be included as "proved developed reserves" only after testing by a pilot project or after the operation of an installed program has confirmed through production response that increased recovery will be achieved.

Currently producing wells and wells awaiting minor sales connection expenditure, recompletion, additional perforations or bore hole stimulation treatment would be examples of properties with proved developed reserves since the majority of the expenditures to develop the reserves has already been spent.

Proved developed reserves from improved recovery techniques can be assigned after either the operation of an installed pilot program shows a positive production response to the technique or the project is fully installed and operational and has shown the production response anticipated by earlier feasibility studies. In the case with a pilot, proved developed reserves can be assigned only to that volume attributable to the pilot's influence. In the case of the fully installed project, response must be seen from the full project before all the proved developed reserves estimated can be assigned. If a project is not following original forecasts, proved developed reserves can only be assigned to the extent actually supported by the current performance. An important point here is that attribution of incremental proved developed reserves from the application of improved recovery techniques requires the installation of facilities and a production increase.

6. Proved undeveloped oil and gas reserves are reserves that are expected to be recovered from new wells on undrilled acreage, or from existing wells where a relatively major expenditure is required for recompletion. Reserves on undrilled acreage shall be limited to those drilling units offsetting productive units that are reasonably certain of production when drilled. Proved reserves for other undrilled units can be claimed only where it can be demonstrated with <u>certainty</u> that there is <u>continuity of production</u> from the existing productive formation. Under no circumstances should estimates of proved undeveloped reserves be attributable to any acreage for which an application of fluid injection or other improved recovery technique is contemplated, unless such techniques have been proved effective by actual tests in the area and in the same reservoir. (Emphasis added)

The SEC staff points out that this definition contains no mitigating modifier for the word certainty. Also, continuity of production requires more than the technical indication of favorable structure alone (e.g. seismic data) to meet the test for proved undeveloped reserves. Generally, proved undeveloped reserves can be claimed only for legal and technically justified drainage areas offsetting an existing productive well (but structurally no lower than LKH). If there are at least two wells in the same reservoir which are separated by more than one legal location and which show communication (reservoir continuity), proved undeveloped reserves could be claimed between the two wells, even though the location in question might be more than an offset well location away from any of the wells. In this illustration, seismic data could be used to help support this claim by showing reservoir continuity between the wells, but the required data would be the conclusive evidence of communication from production or pressure tests. The SEC staff emphasizes that proved reserves cannot be claimed more than one offset location away from a productive well if there are no other wells in the reservoir, even though seismic data may exist. The use of high-quality, well calibrated seismic data can improve reservoir description for performing volumetrics (e.g. fluid contacts). However, seismic data is not an indicator of continuity of production and, therefore, can not be the sole indicator of additional proved reserves beyond the legal and technically justified drainage areas of wells that were drilled. Continuity of production would have to be demonstrated by something other than seismic data.

In a new reservoir with only a few wells, reservoir simulation or application of generalized hydrocarbon recovery correlations would not be considered a reliable method to show increased proved undeveloped reserves. With only a few wells as data points from which to build a geologic model and little performance history to validate the results with an acceptable history match, the results of a simulation or material balance model would be speculative in nature. The results of such a simulation or material balance model would not be considered to be reasonably certain to occur in the field to the extent that additional proved undeveloped reserves could be recognized. The application of recovery correlations which are not specific to the field under consideration is not reliable enough to be the sole source for proved reserve calculations.

Reserves cannot be classified as proved undeveloped reserves based on improved recovery techniques until such time that they have been proved effective in that reservoir or an analogous reservoir in the same geologic formation in the immediate area. An analogous reservoir is one having at least the same values or better for porosity, permeability, permeability distribution, thickness, continuity and hydrocarbon saturations.

7. Topic 12 of Accounting Series Release No. 257 of the Staff Accounting Bulletins states:

> In certain instances, proved reserves may be assigned to reservoirs on the basis of a combination of electrical and other type logs and core analyses which indicate the reservoirs are analogous to similar reservoirs in the same field which are producing or have demonstrated the ability to produce on a formation test.

If the combination of data from open-hole logs and core analyses is overwhelmingly in support of economic producibility and the indicated reservoir properties are analogous to similar reservoirs in the same field that have produced or demonstrated the ability to produce on a conclusive formation test, the reserves may be classified as proved. This would probably be a rare event especially in an exploratory situation. The essence

of the SEC definition is that in most cases there must at least be a conclusive formation test in a new reservoir before any reserves can be considered to be proved.

8. Statement of Financial Accounting Standards 69, paragraph 30.a. requires the following disclosure:

> Future cash inflows. These shall be computed by applying year-end prices of oil and gas relating to the enterprise's proved reserves to the year-end quantities of those reserves.

This requires the use of physical pricing determined by the market on the last day of the (fiscal) year. For instance, a west Texas oil producer should determine the posted price of crude (hub spot price for gas) on the last day of the year, apply historical adjustments (transportation, gravity, BS&W, purchaser bonuses, etc.) and use this oil or gas price on an individual property basis for proved reserve estimation and future cash flow calculation (this price is also used in the application of the full cost ceiling test). A monthly average is not the price on the last day of the year, even though that may be the price received for production on the last day of the year. Paragraph 30b) states that future production costs are to be based on year-end figures with the assumption of the continuation of existing economic conditions.

9. Probabilistic methods of reserve estimating have become more useful due to improved computing and more important because of its acceptance by professional organizations such as the SPE. The SEC staff feels that it would be premature to issue any confidence criteria at this time. The SPE has specified a 90% confidence level for the determination of proved reserves by probabilistic methods. Yet, many instances of past and current practice in deterministic methodology utilize a median or best estimate for proved reserves. Since the likelihood of a subsequent increase or positive revision to proved reserve estimates should be much greater than the likelihood of a decrease, we see an inconsistency that should be resolved. If probabilistic methods are used, the limiting criteria in the SEC definitions, such as LKH, are still in effect and shall be honored. Probabilistic aggregation of proved reserves can result in larger reserve estimates (due to the decrease in uncertainty of recovery) than simple addition would yield. We require a straight forward reconciliation of this for financial reporting purposes.

10. We have seen in press releases and web sites disclosure language by oil and gas companies which would not be allowed in a document filed with the SEC. We will request that any such disclosures be accompanied by the following cautionary language:

> Cautionary Note to U.S. Investors -- The United States Securities and Exchange Commission permits oil and gas companies, in their filings with the SEC, to disclose only proved reserves that a company has demonstrated by actual production or conclusive formation tests to be economically and legally producible under existing economic and operating conditions. We use certain terms {in this press release/on this web site}, such as [identify the terms], that the SEC's guidelines strictly prohibit us from including in filings with the SEC. U.S. Investors are urged to consider closely the disclosure in our Form XX, File No. X-XXXX, available from us at [registrant address at which investors can request the filing]. You can also obtain this form from the SEC by calling 1-800-SEC-0330.

Examples of such disclosures would be statements regarding "probable," "possible," or "recoverable" reserves among others.

11. The SEC staff reminds professionals engaged in the practice of reserve estimating and evaluation that the Securities Act of 1933 subjects to potential civil liability every expert who, with his or her consent, has been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation used in connection with the registration statement. These experts include accountants, attorneys, engineers or appraisers.

*Goodwill and Purchase Business Combinations*

The staff often has challenged recognition of goodwill in acquisitions of entities whose dominant business is the ownership and operation of oil and gas or mineral properties. In the absence of other substantial business activities, the staff presumes that substantially all the value of the acquired entity not otherwise accounted for by tangible and identifiable intangible assets is derived from the value of the mineral or oil and gas reserves owned by that entity. In these business combinations, the purchase price ordinarily should be allocated entirely to the properties and other net tangible and identifiable intangible assets acquired, with no allocation to goodwill. However, if an excess purchase price is clearly indicated by all reasonable valuations of the oil and gas or mineral properties and other net tangible and intangible assets, recognition of goodwill would be appropriate. Also, the staff does not view recognition of goodwill as inconsistent with business combinations involving entities that have substantial activities outside of owning and operating oil and gas or mineral properties.

*Applicability of SFAS 121*

Registrants that use the successful efforts method of accounting for oil and gas producing activities are required to assess impairment of *proved* properties using SFAS 121. The promulgation of SFAS 121 did not supersede the guidance in paragraph 28 of SFAS 19 on how to assess *unproved* properties for impairment.

Paragraph 25 of SFAS 121, which amends SFAS 19, states that its guidance applies only to proved properties and the costs of the enterprise's wells and equipment and facilities. Future net cash flows from unproved properties should not be grouped with future net cash flows from proved properties for purposes of evaluating proved properties or other related equipment and facilities for impairment.

If a registrant chooses to adopt a policy of evaluating unproved properties for impairment using future net cash flows, i.e., a methodology consistent with SFAS 121, it should consider paragraph 9 of SFAS 121. That paragraph requires a registrant to consider the likelihood of possible outcomes in determining the best estimate of future cash flows. The less objectively verifiable the source of the cash flows, the more likely those cash flows will not be fully realized.

If future net cash flows are used to evaluate unproved properties for impairment, registrants should risk adjust any unproved (sometimes referred to as probable or possible) reserves *before* estimating future cash flows associated with those resources. A "shortcut" method whereby a discount factor is applied only after calculating net cash flows derived from 100% of unproved reserves may materially overstate cash flows associated

with properties where recovery costs currently exceed cash inflows. In addition, registrants should identify the categories of reserves included in assessing impairment of unproved properties, and the extent to which they are risk adjusted, in the notes to the financial statements.

*Hedging Transactions*

Registrants with financial instruments that are appropriately designated as price hedges of oil and gas quantities under FASB Statement Nos. 80 or 133 (including designation by specific properties) should apply the hedge-adjusted prices to determine proved reserve quantities and the standardized measure of discounted future cash flows. If the impact of the agreements is material to the FASB Statement No. 69 disclosure, the impact should be quantified in a note to the SFAS 69 data. In addition, if hedging activity had a material impact on average oil and gas prices received during the year, the impact should be quantified and discussed in MD&A.

*Exploration Stage (Development Stage) Mining Companies*

Instructions to paragraph (a) of Industry Guide 7 state that "Mining companies in the exploration stage should not refer to themselves as development stage companies in the financial statements, even though such companies should comply with FASB Statement 7, if applicable." As a result, financial statement headnotes and footnotes for exploration stage companies should describe the companies as being in the "exploration stage," rather than development stage. This is because the term development stage as defined in Industry Guide 7 applies only to companies with established commercially minable deposits (reserves) for extraction, which are not in the production stage.

Top

**Internationalization of the Securities Markets**

**Foreign Issuers in the U.S. Market**

Foreign companies raising funds from the public or having their securities traded on a national exchange or the Nasdaq Stock Market are generally subject to the registration requirements of the Securities Act and the registration and reporting requirements of the Exchange Act. The Commission has provided a separate integrated disclosure system for foreign private issuers that provides a number of accommodations to foreign practices and policies. These accommodations include:

- interim reporting on the basis of home country and stock exchange practice rather than quarterly reports;

- exemption from the proxy rules and the insider reporting and short swing profit recovery provisions of Section 16;

- aggregate executive compensation disclosure rather than individual disclosure, if so permitted in an issuer's home country;

- acceptance of three International Accounting Standards relating to cash flow statements (IAS # 7), business combinations (IAS # 22) and operations in hyperinflationary economies (IAS # 21);