**EXHIBIT 16**



DIVISION OF
CORPORATION FINANCE

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549-0405

March 29, 2004

via facsimile (972) 444-1221 and U.S. mail

Mr. Donald D. Humphreys
Vice President and Controller
Exxon Mobil Corporation
5959 Las Colinas Boulevard
Irving, Texas 75039-2298

Re:    **Exxon Mobil Corporation**
Form 10-K, Filed March 15, 2004
File No. 1-2256

Dear Mr. Humphreys:

We have reviewed your engineering response letter dated February 13, 2004 and accounting response letter dated March 19, 2004 and have the following comments. Our review was limited to your financial statements, selected financial data, management's discussion and analysis of financial condition and results of operations, and certain business and property information. Where indicated, we think you should revise your documents in response to these comments. If you disagree, we will consider your explanation as to why our comment is inapplicable or a revision is unnecessary. Please be as detailed as necessary in your explanation. In some of our comments, we may ask you to provide us with supplemental information so we may better understand your disclosure. After reviewing this information, we may or may not raise additional comments.

Please understand that the purpose of our review process is to assist you in your compliance with the applicable disclosure requirements and to enhance the overall disclosure in your filing. We look forward to working with you in these respects. We welcome any questions you may have about our comments or on any other aspect of our review. Feel free to call us at the telephone numbers listed at the end of this letter.

December 31, 2003 Form 10-K

SEC00484

Exxon Mobil Corporation
March 29, 2004
page 2

<u>Financial statements</u>

<u>Statement of consolidated income, page 27</u>

1.     We are considering your response to prior comment number 7 and may communicate
additional comments to you in a separate letter.

<u>Note 1 – Summary of significant accounting policies</u>

   <u>Principles of consolidation</u>

2.     We have reviewed your response to prior comment number 8 and do not agree with your
conclusions. We note your statement that: "The guidance in SFAS 144 is also useful as a
starting point in determining whether an impairment is other-than-temporary because the
two-step process takes a long-term perspective. We recognize that that loss in value of an
investment in an equity method joint venture may require further analysis than strictly
following SFAS 144, but this standard provides useful guidance for these investments."

As noted in paragraph 5(d) of SFAS 144, the statement does not apply to equity method
investments. It is not appropriate to use the asset recoverability notion of SFAS 144 that
relies on a measurement of undiscounted cash flows to determine whether or not the
carrying value of an equity method investment is recoverable. Paragraph 19(h) of APBO
No. 18 identifies the comparison of the carrying value of an investment to its *fair value* as
an indicator that an investment may have lost value.

Supplementally, provide us with a list of your equity method investments and explain in
detail how you determined the fair value of the investment and formed your conclusions
as to whether or not your equity method investment had an other than temporary loss in
value. We may have further comment.

<u>Note 19 – Disclosures about segments and related information, page 66</u>

3.     We have reviewed your response to prior comment number 2 and your disclosure
beginning on page 66. Supplementally, provide us with the following information:

•   Specifically identify each of your operating segments, as defined by paragraph 10 of
SFAS 131, and the reportable segment, as described by paragraph 16 of SFAS 131, into
which it has been aggregated. The identity of your operating segments continues to
remain unclear, based on the information provided in your recent response and your
financial statement note disclosure on page 66.

**SEC00485**

Exxon Mobil Corporation
March 29, 2004
page 3

- Identify which operating segments are under the supervision of each "contact executive" which you indicate is a member of your Management Committee and is either one of the following four individuals: CEO, President, Executive Vice President, or Senior Vice President.

## Engineering Comments

### Properties, page 2

4. Instruction 3 to Item 102 of Regulation S-K requires "In the case of an extractive enterprise, <u>material information shall be given as to production, reserves,</u> locations, development and the nature of the registrant's interest (emphasis added)". Financial Accounting Standard 69, paragraph 12 states, "Foreign geographic areas are individual countries or groups of countries as appropriate for <u>meaningful disclosure in the circumstances</u> (emphasis added)." The proved reserve figures in your current 6 areas range from .006 (Africa gas) of your total to .18 (U.S. oil). Given this thirty-fold difference, modify your presentation of geographic areas. Your 2003 Financial & Operating Review includes project descriptions with individual expected/intended recoveries and projected production rates. We believe that fulfillment of the standards above require more extensive disclosure concerning your proved reserves. To this end:

   a) Please amend your document here to also disclose your proved developed and proved undeveloped reserves with at least the same detail as that in your review;

   b) Please amend your document here to present your 2002 proved reserves with the following format: the first year's (2003) projected oil and gas sales volumes; the total for the projected volumes for the remaining successive years; the sum of the former and latter. Disclose all three figures for each of your geographic areas.

### Gross and Net Undeveloped Acreage, page 4

5. In our prior comment 70, we asked for your disclosure of any material acreage expirations in each of the next three years. You declined to do so, stating "We believe that discussion about potential relinquishment of specific acreage would provide sensitive information to our competitors and other third parties and would be detrimental to Exxon Mobil. Therefore, we do not plan to disclose this data separately in our Form 10-K."

The requested disclosure appears to be material information that should be provided to investors. Paragraph 5 of SEC Industry Guide 2 requires the disclosure of "…the amounts of undeveloped acreage, both leases and concessions, if any, expressed in both gross and net acres by appropriate geographic area, together with an indication of acreage concentrations, and, <u>if material, the minimum remaining terms of leases and concessions</u>

SEC00486

Exxon Mobil Corporation
March 29, 2004
page 4

(emphasis added)."  Revise your disclosure to comply with our prior comment 70 or provide us with support for your statement regarding competitive harm.

<u>Review of Principal Ongoing Activities in Key Areas, page 11</u>
<u>Kazakhstan, page 14</u>

6.   In part, your response 72 states "Key technical <u>documents</u> supporting the [Kashagan] development were submitted and approved in 2003.  Additionally, <u>significant progress</u> was achieved on obtaining government approval of the development plan."  Describe to us these documents and the significant progress that preceded your booking of proved reserves at Kashagan.  Address the facts that final development plan approval by the Kazakh government was not achieved before the end of fiscal 2003 and that this approval is necessary for the project development to begin.  Furnish us with a list of any other significant proved reserve bookings where the authorities have not approved the final development plan.

7.   We do not concur with your attribution of proved reserves to Kashagan before the formal approval by the Kazakh government of this project's final development plan.  Since you have subsequently obtained approval, we will not object to your inclusion of these volumes as proved reserves in your 2003 Form 10-K provided you satisfy our comments below.

a)   Tell us the proved reserve volumes that are attributable only to those locations that are adjacent to the existing wells as designated by the approved development plan.

b)   Tell us the proved reserves you have claimed at Kashagan.

c)   Explain how you were able – at 12-31-03- to determine the annual production projection for these proved reserves even though the anticipated date of first production was under negotiation with known schedule slippage up to three years.

d)   Demonstrate whether your inclusion of the Kashagan proved reserves had a material effect on your 2003 financial results.

e)   Supplementally, tell us the details of the penalties you and the Kashagan consortium will pay in consideration of the government's approval of the development plan.  Disclose these terms in your next Form 10-Q.

8.   In response 74, you state, "Spot sales [of LNG] are based on market prices".  Supplementally, tell us your methodology in determining the appropriate market for these spot sales and thus the year-end price.  Compare your contracted LNG sales volumes with spot market sales.

SEC00487

Exxon Mobil Corporation
March 29, 2004
page 5

## Management's Discussion and Analysis, page 28
### Capital and Exploration Expenditures, page 32

9.     We reiterate prior comment 75.   Instruction 3 to Item 102 of Regulation S-K requires material disclosure concerning property development.  Items 303(a)(1) and 303(a)(2) of Regulation S-K require the identification and description of commitments to capital expenditures which may have a material impact on liquidity and capital resources.  Your past expenditures and future capital allocations disclose management's capability and commitment to the development and realization (actual monetization ) of these reserves.

If you "do not track capital expenditures by undeveloped/undeveloped expenditures", indicate this in your filing and discuss the implications for tracking your progress in converting proved undeveloped reserves into proved developed reserves.

## Critical Accounting Policies, page 35
### Oil and Gas Reserves, page 35

10.     In your response 76, you state "These reserve revisions would not have been <u>significantly</u> different had we been in a lower or higher price environment."  This suggests that you used a "planning price" to determine the economic producing limit for your proved reserve determinations.  Supplementally, affirm to us that you used year-end pricings – as described in Financial Accounting Standard 69, our website and you response 86 – to estimate your disclosed proved reserves.

11.     Your response 77 indicates that you have attributed proved reserves to intervals below lowest known hydrocarbon.  Your position that "Based on the quality and consistency of the pressure gradient data, we believe that the hydrocarbon contact has been accurately determined." is not consistent with your disclosure that you require, as a minimum, well logs, pressure data, fluid samples and core data for proved reserve determination.  Even though that disclosure was given in the context of the deepwater Gulf of Mexico absent a production flow test, we believe it is applicable to reservoir depths that have not been penetrated and assessed as to productivity.  Amend your current documents to remove material volumes claimed as proved reserves that are attributed below lowest known hydrocarbon as determined by a well penetration and assessment.  In future documents, refrain from disclosing any such volumes.

## SUPPLEMENTAL INFORMATION ON OIL AND GAS EXPLORATION AND PRODUCTION ACTIVITIES, page 64
### Oil and Gas Reserves, page 64

12.     The purpose of our prior comment 78 is to provide the reader with the references to Rule 4-10(a) of Regulation S-X for the definitions of proved reserves which you have

SEC00488

Exxon Mobil Corporation
March 29, 2004
page 6

paraphrased here. In future documents, please include these references as stated in our prior comment 78.

13.  Your response 79 indicates you used the economic interest method to determine proved reserve volumes under non-concessionary agreements. This seems inconsistent with your response 76, "Substantially all of our proved reserve revisions over the past five years have been reservoir performance-related..." Because economic interest proved reserve volumes vary inversely with product price, we would expect substantial revisions due to price changes over the previous five years. Supplementally, explain to us how you have avoided such price-related revisions.

14.  We do not concur with your analysis regarding Rule 4-10(a)(4) and reiterate prior comment 80. Supplementally:

   a)  Furnish us with a listing – including field name and claimed proved reserves - of all properties to which you have attributed such PUD reserves in the prior three years;

   b)  Submit to us narrative engineering and geologic justification for significant 2002 PUD reserves you have claimed which are not in legal, technically justified locations offsetting (adjacent to) productive wells. Specifically address those projects - including Ormen Lange, Hoover and Usari - where you based your PUD reserve attributions on seismic interpretation. Include a discussion of your methodologies for estimating proved reservoir areal extent and thickness.

   c)  Furnish us with hindsight analyses of the impact of seismic interpretation on your proved reserve revisions at Sable Island, Hoover and any other significant negative revisions that occurred in the last three years.

   d)  Discuss the statistics of estimate revision for those properties where reservoir extent, thickness and fluid identity were determined on the basis of seismic information. Include the number of properties and the aggregate volumes involved.

   We take your statement that this issue should be discussed among industry groups under advisement.

15.  Supplementally, tell us the estimated hydrocarbon volumes, if any, you have claimed in 2002 as proved reserves in undrilled fault blocks.

16.  Your supplemental engineering support has several references to reservoir simulation for projects with no proved developed reserves. Thus, these simulations (presumably) were not history-matched. Generally, we would expect such results, i.e. no compelling history match, to be categorized as 2P (Proved + Probable). Explain to us the methodology that you use to separate the estimated proved reserves from the 2P figures. Address the

SEC00489

Exxon Mobil Corporation
March 29, 2004
page 7

specific case of Murray River, where you use of 80% and 85% reduction factors for your proved developed reserve estimates.

17.    Your positive revision to the Zafiro proved reserves relies on changes to simulation inputs - ~350% increase to estimated permeability and a 44% decrease to the assumed residual oil saturation. Supplementally, furnish us the entire field's simulation results and history match. Explain the significance of your $S_{orw}$ vs. $K_{row}$ plot in light of the (apparently) poor fit between predicted and actual data. Provide us with statistical support for the reliability of your methodology.

Closing Comments

As appropriate, please amend your filings and respond to these comments within 10 business days. You may also wish to provide us with marked copies of any amendment to expedite our review. Please furnish a cover letter with your amendment that keys your responses to our comments and provides any requested supplemental information. Detailed cover letters greatly facilitate our review. Please understand that we may have additional comments after reviewing your amendment and responses to our comments.

Direct questions concerning accounting issues and related disclosures to Jill S. Davis, Senior Staff Accountant, at (202) 942-1996, or in her absence, to Barry Stern, Senior Assistant Chief Accountant, at (202) 942-1919. Direct questions regarding engineering issues to Ronald Winfrey, Petroleum Engineer, at (202) 942-1778. Direct questions relating to all other disclosure issues to the undersigned at (202) 942-1870. All correspondence should be sent to the following ZIP code: 20549-0405.

Sincerely,

H. Roger Schwall
Assistant Director

SEC00490